# UNITED STATES COURT OF APPEALS
*for the*
## THIRD CIRCUIT

### Docket No. 16-2465

### M.R. AND J.R., PARENTS OF E.R, A MINOR,
*Appellants*

v.

### RIDLEY SCHOOL DISTRICT,
*Appellee*

(E.D.Pa. Crim. No. 11-cv-02235)

# *APPENDIX*
## VOLUME II

**Alan L. Yatvin**
Suite 503
230 South Broad Street
Philadelphia, PA 19102
(215) 546-5700
Fax (215)546-5701
E-mail: *popper.yatvin@verizon.net*
Attorney for the Appellants

## Appendix Table of Contents

**Volume I**

Notice of Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Order (4/28/16). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-3

**Volume II**

District Court Docket. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-12

Complaint of M.R. and J.R... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-19

Answer of Ridley School District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-27

Order (8/12/13). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-33

Memorandum Opinion (8/12/13). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-35

Amended Order (9/10/12). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-63

Judgment (10/1/12) with Stipulation.. . . . . . . . . . . . . . . . . . . . . . . . . . . A-64

Motion for Award of Counsel Fees (with only Exhibits F and G). . . . . . . . . . . A-68

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:11-cv-02235-MSG

M.R. et al v. RIDLEY SCHOOL DISTRICT
Assigned to: HONORABLE MITCHELL S. GOLDBERG
related Case: 2:09-cv-02503-MSG
Case in other court: USCA FOR THE THIRD CIRCUIT, 12-04137
          U.S.C.A., 16-02465
Cause: 20:1401 Appeal From The Decision Of The Special Education Appeals Panel (IDEIA)

Date Filed: 03/29/2011
Date Terminated: 08/13/2012
Jury Demand: None
Nature of Suit: 890 Other Statutes: Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**M.R.**

represented by **ALAN L. YATVIN**
POPPER & YATVIN
230 S. BROAD ST
STE 503
PHILADELPHIA, PA 19102
215-546-5700
Fax: 215-546-5701
Email: popper.yatvin@verizon.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**J.R.**
*PARENTS OF MINOR CHILD E.R.*

represented by **ALAN L. YATVIN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**RIDLEY SCHOOL DISTRICT**

represented by **JOHN F.X. REILLY**
230 N. MONROE STREET
MEDIA, PA 19063-2908
610-565-0975
Email: reillyjfx@drexel.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/29/2011 | 1 | COMPLAINT against RIDLEY SCHOOL DISTRICT ( Filing fee $ 350 receipt number 040494.), filed by M.R., J.R.. (Attachments: # 1 Civil Cover Sheet)(jwl, ) (Entered: 03/30/2011) |

**A-012**

| 03/29/2011 | | Summons Issued as to RIDLEY SCHOOL DISTRICT. One Forwarded To: Counsel on 3/30/11 (jwl, ) (Entered: 03/30/2011) |
|---|---|---|
| 04/06/2011 | 2 | ACCEPTANCE OF SERVICE Re: accepted summons and complaint for RIDLEY SCHOOL DISTRICT on 4/5/2011, answer due 4/26/2011. (YATVIN, ALAN) (Entered: 04/06/2011) |
| 04/25/2011 | 3 | STIPULATION re 1 Complaint *to extend time to answer* by RIDLEY SCHOOL DISTRICT. (REILLY, JOHN) (FILED IN ERROR BY ATTORNEY; COPY FORWARDED TO CLERK/JUDGE FOR APPROVAL) Modified on 4/26/2011 (nd, ). (Entered: 04/25/2011) |
| 04/25/2011 | 4 | Stipulation Extending Time to Answer the complaint. RIDLEY SCHOOL DISTRICT answer due 4/27/2011, with Clerk's approval. 4/26/11 copies mailed. (kw, ) (Entered: 04/26/2011) |
| 04/26/2011 | 5 | *Defendant's* ANSWER to 1 Complaint by RIDLEY SCHOOL DISTRICT with Affirmative Defenses, Certificate of Service. (REILLY, JOHN) Modified on 4/27/2011 (nd, ). (Entered: 04/26/2011) |
| 04/26/2011 | 6 | NOTICE of Appearance by JOHN F.X. REILLY on behalf of RIDLEY SCHOOL DISTRICT (REILLY, JOHN) (Entered: 04/26/2011) |
| 04/26/2011 | 7 | STIPULATION AND ORDER THAT DEFT RIDLEY SCHOOL DISTRICT SHALL HAVE AN EXTENSION TO ANSWER PLFFS' COMPLAINT UNTIL 4/27/2011, INCLUSIVE. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 4/26/11. 4/26/11 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 04/26/2011) |
| 05/04/2011 | 8 | MOTION for Judgment on the Pleadings filed by J.R., M.R..Memorandum, Brief, Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(YATVIN, ALAN) Modified on 5/5/2011 (lisad, ). (Entered: 05/04/2011) |
| 05/19/2011 | 9 | STIPULATION *to extend time to answer motion* by RIDLEY SCHOOL DISTRICT. (REILLY, JOHN) (FILED IN ERROR BY ATTORNEY; COPY FORWARDED TO CLERK/JUDGE FOR APPROVAL) Modified on 5/19/2011 (nd, ). (Entered: 05/19/2011) |
| 05/23/2011 | 10 | STIPULATION AND ORDER THAT PLAINTIFFS AND DEFENDANT, BY THEIR RESPECTIVE UNDERSIGNED COUNSEL, STIPULATE THAT DEFENDANT RIDLEY SCHOOL DISTRICT SHALL HAVE AN EXTENSION TO ANSWER PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS UNTIL 5/25/2011, INCLUSIVE. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 5/18/2011. 5/23/2011 ENTERED AND COPIES E-MAILED. (ems) (Entered: 05/23/2011) |
| 05/25/2011 | 11 | BRIEF in Opposition re 8 MOTION for Judgment on the Pleadings filed by RIDLEY SCHOOL DISTRICT, Certificate of Service. (REILLY, JOHN) Modified on 5/26/2011 (nd). (Entered: 05/25/2011) |
| 06/02/2011 | 12 | MOTION for Leave to File *Reply to Response in Opposition to Motion for Judgment on the Pleadings* filed by J.R., M.R..Memorandum, Proposed Reply and Certificate of Service.(YATVIN, ALAN) (Entered: 06/02/2011) |
| 06/03/2011 | 13 | ORDER THAT PLFFS' MOTION FOR LEAVE TO FILE A REPLY TO THE RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS IS GRANTED. THE REPLY ACCOMPANYING PLFFS' MOTION IS DEEMED FILED OF RECORD. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 6/3/11.6/6/11 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 06/06/2011) |

**A-013**

| | | |
|---|---|---|
| 06/03/2011 | 14 | Reply Memorandum in support of motion of M.R. and J.R., parents of minor child E.R., for judgment on the pleadings, Certificate of Service, filed by PLFFS J.R., M.R. (kw, ) (Entered: 06/06/2011) |
| 06/10/2011 | 15 | MOTION for Judgment on the Pleadings filed by RIDLEY SCHOOL DISTRICT.Memorandum, Certificate of Service.(REILLY, JOHN) (Entered: 06/10/2011) |
| 06/24/2011 | 16 | RESPONSE in Opposition re 15 MOTION for Judgment on the Pleadings filed by J.R., M.R.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(YATVIN, ALAN) (Entered: 06/24/2011) |
| 07/08/2011 | 17 | MOTION for Leave to File *Reply to Response to MOTION FOR JUDGMENT ON THE PLEADINGS* filed by RIDLEY SCHOOL DISTRICT.Memorandum, Certificate of Service.(REILLY, JOHN) (Entered: 07/08/2011) |
| 07/12/2011 | 18 | ORDER THAT DEFENDANT RIDLEY SCHOOL DISTRICTS MOTION FOR LEAVE TO FILE A REPLY TO PARENTS ANSWER TO MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. NO. 17 ) IS GRANTED. THE REPLY ACCOMPANYING THE MOTION IS DEEMED FILED OF RECORD. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 7/12/11. 7/12/11 ENTERED AND COPIES E-MAILED.(mas, ) (Entered: 07/12/2011) |
| 07/12/2011 | 19 | Defendant Ridley School Districts Reply Memorandum In Support Of Its 15 Motion For Judgment On The Pleadings filed by RIDLEY SCHOOL DISTRICT. Certificate of Service. (mas, ) (Entered: 07/12/2011) |
| 03/14/2012 | 20 | ORDER THAT ORAL ARGUMENT ON PARTIES' CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS WILL BE HELD ON 4/4/2012 AT 10:00 A.M. IN COURTROOM 4B. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 3/14/12. 3/14/12 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 03/14/2012) |
| 04/04/2012 | 21 | Minute Entry, re: Oral Argument held before HONORABLE MITCHELL S. GOLDBERG on 4/4/12. Matter taken under advisement. Court Reporter: ESR. (kw, ) (Entered: 04/05/2012) |
| 04/06/2012 | 22 | TRANSCRIPT of Oral Argument held on 4/4/2012 before Judge Mitchell S. Goldberg. Court Reporter: ESR. (kw, ) (Entered: 04/06/2012) |
| 08/13/2012 | 23 | MEMORANDUM AND/OR OPINION SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 8/13/12. 8/13/12 ENTERED AND COPIES E-MAILED.(ti, ) (Entered: 08/13/2012) |
| 08/13/2012 | 24 | ORDER THAT M.R. AND J.R.'S MOTION FOR JUDGMENT ON THE PLEADINGS IS GRANTED. RIDLEY SCHOOL DISTRICT'S MOTION FOR JUDGMENT ON THE PLEADINGS IS DENIED, ETC. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 8/13/12. 8/13/12 ENTERED AND COPIES E-MAILED.(ti, ) (Entered: 08/13/2012) |
| 09/10/2012 | 25 | AMENDED ORDER THAT OUR 8/13/2012 ORDER (DOC. NO. 24) IS AMENDED SUCH THAT IT DOES NOT CONSTITUTE ENTRY OF JUDGMENT PURSUANT TO F.R.C.P. 58, NOR DO WE VIEW THE 8/13/2012 ORDER AS AN APPEALABLE FINAL DECISION PURSUANT TO 28 U.S.C. SEC. 1291. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 9/10/12. 9/11/12 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 09/11/2012) |
| 09/14/2012 | 26 | STIPULATION *Pursuant to Order of 8/13/12* by J.R., M.R.. (YATVIN, ALAN) (FILED IN ERROR BY ATTORNEY; COPY FORWARDED TO JUDGE FOR |

| | | |
|---|---|---|
| | | APPROVAL) Modified on 9/17/2012 (nd, ). (Entered: 09/14/2012) |
| 10/02/2012 | 27 | STIPULATION AND ORDER THAT PARTIES' STIPULATION IS APPROVED & ADOPTED. IT IS FURTHER ORDERED THAT JUDGMENT IS ENTERED IN FAVOR OF M.R. AND J.R. & AGAINST RIDLEY SCHOOL DISTRICT IN THE AMOUNT OF $57,658.38, EXCLUSIVE OF ANY PETITION FOR COUNSEL FEES. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 10/1/12. 10/2/12 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 10/02/2012) |
| 10/15/2012 | 28 | MOTION for Attorney Fees filed by J.R., M.R..Memorandum, Declarations and Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W)(YATVIN, ALAN) (Entered: 10/15/2012) |
| 10/19/2012 | 29 | SUPPLEMENT to 28 Motion for Attorney Fees filed by J.R., M.R. (Attachments: # 1 Exhibit X)(YATVIN, ALAN) Modified on 10/22/2012 (md). (Entered: 10/19/2012) |
| 10/29/2012 | 30 | NOTICE OF APPEAL as to 27 Judgment, by RIDLEY SCHOOL DISTRICT. Copies to Judge, Clerk USCA, Appeals Clerk and Certificate of Service. (REILLY, JOHN) Modified on 10/31/2012 (nd, ). (Entered: 10/29/2012) |
| 10/29/2012 | 31 | Clerk's Notice to USCA re 30 Notice of Appeal : (jl, ) (Entered: 10/31/2012) |
| 10/31/2012 | 32 | First MOTION for Extension of Time to File Response/Reply as to 28 MOTION for Attorney Fees filed by RIDLEY SCHOOL DISTRICT.Certificate of Service.(REILLY, JOHN) (Entered: 10/31/2012) |
| 11/01/2012 | 33 | EXHIBIT *J (Complete) to Fee Motion* by J.R., M.R... (YATVIN, ALAN) (Entered: 11/01/2012) |
| 11/01/2012 | | USCA Appeal Fees received $455.00 receipt number PPE071711, re: 30 Notice of Appeal filed by RIDLEY SCHOOL DISTRICT. (kw, ) (Entered: 11/01/2012) |
| 11/02/2012 | 34 | ORDER THAT DEFT'S UNCONTESTED MOTION FOR EXTENSION OF TIME TO RESPOND TO MOTION FOR COUNSEL FEES AND COSTS (DOC. #32) IS GRANTED. DEFT SHALL FILE ITS RESPONSE TO PLAINTIFFS' MOTION ON OR BEFORE 11/8/2012. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 11/1/2012.11/2/2012 ENTERED AND COPIES E-MAILED.(tomg, ) (Entered: 11/02/2012) |
| 11/08/2012 | 35 | RESPONSE in Opposition re 28 MOTION for Attorney Fees filed by RIDLEY SCHOOL DISTRICT. Brief, Certificate of Service. (Attachments: # 1 Affidavit, # 2 Affidavit, # 3 Affidavit, # 4 Affidavit, # 5 Exhibit)(REILLY, JOHN) Modified on 11/9/2012 (lisad, ). (Entered: 11/08/2012) |
| 11/16/2012 | 36 | MOTION for Extension of Time to File Response/Reply as to 35 Response in Opposition to Motion, *Unopposed* filed by J.R., M.R..Certificate of Service.(YATVIN, ALAN) (Entered: 11/16/2012) |
| 11/20/2012 | 37 | ORDER THAT PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO FILE RESPONSE/REPLY IS HEREBY GRANTED. PLAINTIFF SHALL FILE ANY MOTION FOR LEAVE TO FILE ON OR BEFORE 12/7/2012. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 11/20/2012.11/21/2012 ENTERED AND COPIES E-MAILED.(kp, ) (Entered: 11/21/2012) |
| 11/27/2012 | | NOTICE of Docketing Record on Appeal from USCA re 30 Notice of Appeal filed by RIDLEY SCHOOL DISTRICT. USCA Case Number 12-4137 (ems) (Entered: |

**A-015**

| | | 11/27/2012) |
|---|---|---|
| 11/29/2012 | 38 | MOTION to Stay re 27 Judgment, *Unopposed* filed by RIDLEY SCHOOL DISTRICT.Declaration; Certificate of Service. (Attachments: # 1 Declaration)(REILLY, JOHN) (Entered: 11/29/2012) |
| 12/03/2012 | 39 | ORDER THAT DEFT'S UNOPPOSED MOTION FOR STAY WITHOUT BOND PENDING APPEAL IS GRANTED & JUDGMENT IS STAYED WITHOUT BOND PENDING APPEAL. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 12/3/12.12/4/12 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 12/04/2012) |
| 12/07/2012 | 40 | MOTION for Leave to File *Reply* filed by J.R., M.R. Memorandum, Certificate of Service. (Attachments: # 1 Exhibit J (Complete), # 2 Exhibit Y, # 3 Exhibit Z, # 4 Exhibit AA)(YATVIN, ALAN) Modified on 12/10/2012 (lisad, ). (Entered: 12/07/2012) |
| 12/11/2012 | 41 | NOTICE by RIDLEY SCHOOL DISTRICT *of Transcript Purchase Order* (REILLY, JOHN) (FILED IN ERROR BY ATTORNEY; ATTORNEY WILL RE-SUMBIT IN HARD COPY) Modified on 12/12/2012 (nd, ). (Entered: 12/11/2012) |
| 12/27/2012 | 42 | Copy of TPO Form, re: 30 Notice of Appeal. (kw, ) (Entered: 12/27/2012) |
| 12/27/2012 | | Record Complete for Purposes of Appeal re 30 Notice of Appeal. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (afm, ) (Entered: 12/27/2012) |
| 01/10/2013 | 43 | ORDER THAT PLFFS' MOTION FOR LEAVE TO FILE A REPLY TO THE RESPONSE TO THE MOTION FOR AWARD OF FEES & COSTS IS GRANTED. THE REPLY ACCOMPANYING PLFFS' MOTION IS DEEMED FILED OF RECORD. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 1/10/13.1/11/13 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 01/11/2013) |
| 01/10/2013 | 44 | Reply Memorandum in support of motion of M.R. and J.R., Parents of Minor Child E.R., for award of fees and costs, Certificate of Service, filed by PLFFS J.R., M.R. (kw, ) (Entered: 01/11/2013) |
| 09/30/2013 | 45 | ORDER THAT PLFFS' MOTION FOR AN AWARD OF COUNSEL FEES & COSTS IS DENIED WITHOUT PREJUDICE, ETC. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 9/30/13.9/30/13 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 09/30/2013) |
| 03/21/2014 | 46 | Certified copy of Order of USCA, dated 2/20/14, together with Opinion, as to 30 Notice of Appeal filed by RIDLEY SCHOOL DISTRICT, that the judgment of the District Court entered 10/2/2012, be and the same is hereby affirmed. Costs taxed against Appellant, etc. (kw, ) (Entered: 03/21/2014) |
| 03/31/2014 | 47 | MOTION for Extension of Time to File / *Refile Motion for Award of Fees* filed by J.R., M.R..Certificate of Service.(YATVIN, ALAN) (Entered: 03/31/2014) |
| 04/04/2014 | 48 | ORDER THAT PLFFS' MOTION TO EXTEND TIME FOR FILING MOTION FOR AWARD OF COUNSEL FEES IS GRANTED. PLFFS MAY RE-FILE THEIR MOTION FOR AWARD OF COUNSEL FEES WITHIN 30 DAYS OF THE CONCLUSION OF ANY PROCEEDINGS IN THE SUPREME COURT, OR ON REMAND, IF ANY. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 4/4/14.4/4/14 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 04/04/2014) |
| 05/27/2015 | 49 | ORDER THAT PLAINTIFF'S SHALL FILE THEIR MOTION FOR AWARD OF COUNSEL FEES BY 7/17/2015.. SIGNED BY HONORABLE MITCHELL S. |

**A-016**

| | | |
|---|---|---|
| | | GOLDBERG ON 5/27/2015. 5/27/2015 ENTERED AND COPIES E-MAILED.(kp, ) (Entered: 05/27/2015) |
| 07/17/2015 | 50 | Exhibit List *to Plaintiffs' Motion for Award of Counsel Fees and Costs* by J.R., M.R... (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit E-1, # 7 Exhibit E-2, # 8 Exhibit E-3, # 9 Exhibit E-4, # 10 Exhibit E-5, # 11 Exhibit E-6, # 12 Exhibit E-7, # 13 Exhibit E-8, # 14 Exhibit E-9, # 15 Exhibit F, # 16 Exhibit G, # 17 Exhibit H, # 18 Exhibit I, # 19 Exhibit I-1, # 20 Exhibit I-2, # 21 Exhibit J, # 22 Exhibit K, # 23 Exhibit L, # 24 Exhibit M, # 25 Exhibit N, # 26 Exhibit O, # 27 Exhibit P, # 28 Exhibit Q, # 29 Exhibit R, # 30 Exhibit S, # 31 Exhibit T, # 32 Exhibit U, # 33 Exhibit V, # 34 Exhibit W, # 35 Exhibit X, # 36 Exhibit Y, # 37 Exhibit Z)(YATVIN, ALAN) (Entered: 07/17/2015) |
| 07/17/2015 | 51 | Second MOTION for Attorney Fees filed by J.R., M.R..Memorandum and Certificate of Service.(YATVIN, ALAN) (Entered: 07/17/2015) |
| 07/29/2015 | 52 | ORDER THAT DEFT'S REQUEST FOR AN EXTENSION OF TIME TO FILE ITS RESPONSE TO PLFF'S MOTION FOR COUNSEL FEES AND COSTS IS GRANTED. DEFT SHALL FILE ITS RESPONSE NO LATER THAN 9/2/2015. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 7/29/15. 7/30/15 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 07/30/2015) |
| 07/30/2015 | 53 | ORDER THAT DEFTS' UNOPPOSED REQUEST FOR AN EXTENSION OF TIME IS GRANTED. DEFTS SHALL FILE THEIR REQUEST FOR LEAVE TO FILE A REPLY BRIEF NO LATER THAN 10/2/2015. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 7/30/15. 7/30/15 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 07/30/2015) |
| 09/02/2015 | 54 | RESPONSE in Opposition re 51 Second MOTION for Attorney Fees filed by RIDLEY SCHOOL DISTRICT. (Attachments: # 1 Exhibit Ex. A Faust Declaration, # 2 Exhibit Ex. B Sereni Declaration, # 3 Exhibit Ex. C Basch Declaration, # 4 Exhibit Ex. D Palumbo Declaration)(REILLY, JOHN) (Entered: 09/02/2015) |
| 10/01/2015 | 55 | MOTION for Leave to File *Reply in Support of Motion for Fees* filed by J.R., M.R..Memorandum with Proposed Reply. (Attachments: # 1 Exhibit AA, # 2 Exhibit BB, # 3 Exhibit CC)(YATVIN, ALAN) (Entered: 10/01/2015) |
| 10/06/2015 | 56 | ORDER THAT PLAINTIFFS' MOTION FOR LEAVE TO FILE A REPLY TO THE RESPONSE TO THE MOTION FOR AWARD OF FEES AND COSTS IS GRANTED. THE REPLY ACCOMPANYING PLAINTIFFS' MOTION IS DEEMED FILED OF RECORD. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 10/6/2015.10/6/2015 ENTERED AND COPIES E-MAILED.(ahf) (Entered: 10/06/2015) |
| 10/06/2015 | 57 | Reply Memorandum in Support re 51 Second MOTION for Attorney Fees filed by J.R., M.R. Certificate of Service. (ahf) (Entered: 10/06/2015) |
| 10/15/2015 | 58 | MOTION for Leave to File *Surreply* filed by RIDLEY SCHOOL DISTRICT.Memorandum, Certificate of Service.(REILLY, JOHN) (Entered: 10/15/2015) |
| 10/16/2015 | 59 | ORDER THAT DEFT'S MOTION FOR LEAVE TO FILE SURREPLY IS GRANTED. SIGNED BY HONORABLE MITCHELL S. GOLDBERG ON 10/16/15.10/19/15 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 10/19/2015) |
| 10/16/2015 | 60 | Surreply Memorandum in opposition to plffs' motion for award of counsel fees and costs, filed by DEFT RIDLEY SCHOOL DISTRICT. (kw, ) (Entered: 10/19/2015) |
| 04/28/2016 | 61 | ORDER THAT PLFFS' MOTION FOR ATTORNEY'S FEES IS DENIED. SIGNED |

| | | BY HONORABLE MITCHELL S. GOLDBERG ON 4/28/16.4/29/16 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 04/29/2016) |
|---|---|---|
| 05/16/2016 | 62 | NOTICE OF APPEAL as to 61 Order on Motion for Attorney Fees by J.R., M.R.. Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (YATVIN, ALAN) Modified on 5/16/2016 (lisad, ). (Entered: 05/16/2016) |
| 05/16/2016 | 63 | Clerk's Notice to USCA, re: 62 Notice of Appeal. (kw, ) (Entered: 05/16/2016) |
| 05/16/2016 | | USCA Appeal Fees received $505.00 receipt number PPE140515, re: 62 Notice of Appeal filed by J.R., M.R. (kw, ) (Entered: 05/17/2016) |
| 05/18/2016 | | NOTICE of Docketing Record on Appeal from USCA, re: 62 Notice of Appeal filed by J.R., M.R.. USCA Case Number 16-2465 (kw, ) (Entered: 05/19/2016) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 10/18/2016 11:06:09 | | | |
| PACER Login: | py0005:2618530:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:11-cv-02235-MSG |
| Billable Pages: | 6 | Cost: | 0.60 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


**M.R. and J.R.,**
Parents of minor child **E.R.,**                    :
      Plaintiffs

                                  :      CIVIL ACTION NO. 11-cv-_____

      v.

**RIDLEY SCHOOL DISTRICT**
901 Morton Avenue                    :
Folsom, PA 19033,
          Defendant.                    :

## COMPLAINT

## INTRODUCTION

1.      E.R. (hereinafter "E.R." or "Student"), through her parents, M.R. and J.R., as E.R.'s parents and natural guardians (hereinafter "Parents" or "Plaintiffs"), brings this action for declaratory and injunctive relief against the Ridley School District (hereinafter "District" or "School District") for its failure to pay for E.R.'s pendent placement, tuition at the Benchmark School, including transportation, as determined by the April 21, 2009 decision of a Pennsylvania Due Process Hearing Officer that the District had failed to offer E.R. a free appropriate public education (hereinafter "FAPE") for the 2008-2009 School Year.

2.      Plaintiffs bring this action pursuant to the Individuals with Disabilities Education Improvement Act, (hereinafter "IDEIA"), 20 U.S.C. § 1401 *et seq*.

3.      Plaintiffs seek payment for E.R.'s pendent placement at the Benchmark School commencing on April 21, 2009, the date of the decision of the Pennsylvania Due Process Hearing Officer.

4.      Plaintiffs also seek to recover the attorney's fees and costs which they have incurred and will incur in their effort to secure payment for E.R.'s pendent placement at the Benchmark School.

## JURISDICTION AND VENUE

5.      This action is brought pursuant to 20 U.S.C. §§ 1401 *et seq*., . Jurisdiction is based upon 28 U.S.C. §§1331 and 1343 and the aforementioned statutory provisions.

**A-019**

6.      This Court has jurisdiction to enter a declaratory judgment on the rights and legal relations of the parties and provide appropriate relief based upon such declarations, pursuant to 20 U.S.C. § 1415 and 28 U.S.C. §§ 2201 and 2202, providing for declaratory and any further relief deemed necessary and proper.

7.       This Court has jurisdiction to award attorney's fees and costs.  20 U.S. C. § 1415(I),  34 C.F.R. § 300.517.

8.      Venue in this district is proper under 28 U.S.C. § 1391(b), as the School District is located within the Eastern District of Pennsylvania and all the acts and omissions complained of took place within the Eastern District of Pennsylvania.

**PARTIES**

9.      E.R. is a nine (9) year old student residing within the Ridley School District ("District"), born April 20, 2001.  She has been identified with specific learning disabilities in the areas of reading decoding and comprehension, math computation and reasoning, written language, writing and spelling; with the additional disability categories of fine motor delay and language disability. Additionally, she has been identified as suffering disability in visual perception (including severe deficits in visual memory, visual spatial relationships, visual sequential memory, visual figure ground and visual closure).

10.      E.R. also has other health impairments, including severe food allergies, especially to milk and eggs; severe eczema; Eosinophilic Esopahagitis Disorder; and Asthma.  She also has contact allergies, including to epoxy resin.  An Epi Pen (epinephrine) must be available at all times due to the risk of anaphylactic shock from her allergies.  She is required to wear loose cotton clothing to avoid irritation of her sensitive skin.

11.      E.R. is a "child with a disability" within the meaning of IDEIA, 20 U.S.C. § 1402(3)(A).

12.      M.R. and J.R., are E.R.'s parents and natural guardians.

13.      Student and her parents are not expressly named in this Complaint by their given names, or further identified by their actual address within the School District, because of privacy guarantees

2

**A-020**

provided in the IDEIA, as well as in the Family Education Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. 99 (FERPA). F.R.Civ.P. 5.2 and E.D.Pa. Loc.R.Civ.P. 5.1.3 also provide for the privacy of minors in filings with the court.

14.     The School District is a local educational agency (hereinafter "LEA") within the meaning of the IDEIA and Section 504. As such, the School District receives federal funds for the purpose of educating children with disabilities within its boundaries. The District is responsible for providing special education services to students with disabilities who reside in the school district.

15.     As an LEA within the meaning of the IDEIA, the School District is responsible for providing for the free and appropriate public education (hereinafter "FAPE") of children with disabilities within its jurisdiction, to have in effect policies, procedures, and programs that are consistent with the State policies and procedures established under the Act, 20 U.S.C. § 1412. See 20 U.S.C. § 1413(a)(1).

## STATEMENT OF FACTS

16.     In June of 2008, E.R. was a first grade student in the District, attending the Grace Park Elementary School.

17.     On June 9, 2008 the District convened an IEP team to write/update E.R.'s IEP for the 2008-2009 school year, and thereafter the District issued a Notice of Recommended Educational Placement (NOREP) for the 2008-2009 school year.

18.      The District had previously issued a NOREP for E.R. to receive Extended School Year (ESY) services at the Benchmark School through the five (5) weeks summer program with supplemental math tutoring at Benchmark.

19.     Parents rejected the District's 2008-2009 placement and thereafter enrolled E.R. in the Benchmark School.

20.     Parents filed a Due Process Complaint Notice on December 4, 2008.

21.     Following a multi-day hearing and written submissions of the parties, the Pennsylvania Due Process Hearing Officer issued her decision on April 21, 2009.

3

22.     The Hearing Officer ruled, inter alia, that:

> 4.     The Ridley School District failed to provide an appropriate educational program for [E.R.] for the 2008-2009 school year, and therefore is required to reimburse Mr. and Mrs. [R] for tuition at the Benchmark School, including transportation, for the 2008-2009 school year .

Hearing Officer Decision and Order of April 21, 2009, p. 21.

23.     The District appealed the Hearing Officer's Decision to the Pennsylvania Commonwealth Court, from whence parents removed it to the United States District Court for the Eastern District of Pennsylvania.  *Ridley School District v. M.R. and J.R.*, Civil Action No. 09-cv-02503-MSG, assigned to the Honorable Mitchell S. Goldberg.

24.     The issues relating to the decision of the Hearing Officer were submitted to the District Court by cross-motions for judgment on the administrative record, with all filings being complete and the matter ripe for decision on or about December 7, 2009.

25.     On February 14, 2011, the District Court reversed the hearing officer and entered judgment for the District on all claims.

26.     On February 16, 2011, parents filed a notice of appeal to the United States Court of Appeals for the Third Circuit, which appeal is pending.

27.     On March 17, 2011, counsel for parents made demand upon the District, by letter mailed and e-mailed to its counsel, for payment for E.R.'s pendent placement, including, transportation.

28.     On March 25, 2011, counsel for parents sent a second demand by letter mailed and emailed to counsel for the District, clarifying the periods and amounts for which payment for E.R.'s pendent placement was sought.

29.     Later on March 25, 2011, parents' counsel received a March 24, 2011 letter in the mail from the District's counsel declining the request for payment.

4

**A-022**

## COUNT I: DECLARATORY RELIEF

30.     The averments set forth in the paragraphs above are re-alleged and incorporated herein by reference.

31.     20 U.S.C. 1415(j), of the IDEIA provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child...until all such proceedings have been completed."  See also 34 CFR § 300.518(a).

32.     34 CFR § 300.518(d) provides that "if a hearing officer in a due process hearing ... agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purpose of paragraph (a) of this section."

33.     As the Third Circuit has noted, "the purpose of the [IDEA], which is to ensure that every child receive a 'free and appropriate education' is not advanced by requiring parents, who have succeeded in obtaining a ruling that a proposed IEP is inadequate, to front the funds for continued private education…[and] [w]hile parents who reject a proposed IEP bear the initial expenses of a unilateral placement, the school district's financial responsibility should begin when there is an administrative or judicial decision vindicating the parents' position." *Susquenita School Dist. v. Raelee*, 96 F.3d 78 at 86-87 (3d Cir. 1996).

34.     The Hearing Officer's finding of a denial of FAPE and grant of tuition (including transportation) at Benchmark created an "agreement" between the state and the parents for purposes of 20 U.S.C. § 1415(j), which rendered Benchmark E.R.'s pendent placement and entitling her Parents to have the cost of her placement paid through final resolution of the dispute over her educational placement.  34 CFR § 300.518(d).  See also *Susquenita School Dist.*, 96 F.3d at 83-84(3rd Cir.1996).

5

**A-023**

35.    Tuition, to date, is due as follows:

| Periods | Days | Amount Due |
|---------|------|-----------|
| 4/21/09 - 6/12/09 | 40 days<br>($23,000 ÷ 180 = $127.78/day) | $5,111.20 |
| Summer 2009 ESY | 25 days (complete) | $1,030.00 |
| 2009-2010 SY | 180 days (complete) | $10,400.00 |
| Summer 2010 ESY<br>(including Math tutor) | 25 days (complete) | $1,420.00 |
| 2010-2011 SY | 110 days<br>($15,600 ÷ 180 = $86.67/day) | $9,533.70 |
| **Pendency Tuition Due** | **380 days** | **$27,494.90** |

36.    Parents have paid all of the tuition amounts reflected in the foregoing table.

37.    The distance from E.R.'s home to Benchmark is 6 miles each way, per Mapquest.

38.    Travel to drop off and pick up E.R. at Benchmark is 24 miles for each of the 380 school days for which transportation to E.R.'s pendent placement is due (see table, above).

39.    The District's standard mileage rate is unknown, accordingly the amount due for transportation cannot be calculated at this time, however the formula will be $.__ x 24 miles x 380 days.

40.    Whether a private parental placement continues to remain the pendent placement during the period of appeal from the decision of the district court has not been decided by the Third Circuit Court of Appeals, but there appears to be a split among the Circuits and among the District Court's in this Circuit.

41.    In reliance upon the plain language of 20 U.S.C. § 1415(j) ("during the pendency of any proceedings ...") and 34 CFR § 300.518(a) ("during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing ... "), Parents also seek tuition and transportation for E.R.'s pendent placement for the period from the February

6

**A-024**

14, 2011 decision of the district court through the exhaustion of appeals.

42.     Parents demand reasonable interest on all amounts they have paid for the pendent placement.

## COUNT II: ATTORNEYS FEES AND COSTS

43.     The averments set forth in the paragraphs above and below are re-alleged and incorporated herein by reference.

44.     Parents who succeed on any significant issue in any action or proceeding brought under the IDEIA are prevailing parties and thereby entitled to recover their reasonable attorney's fees and costs. See, e.g., 20 U.S.C. § 1415(i)(3)(B); 34 CFR § 300.517.

45.     If Parents' prevail on their claims seeking payment from the District for E.R.'s pendent placement, they will be entitled to attorney's fees and costs associated with their prosecution of those claims.

46.     Parents' attorney has expended time and incurred attorney's fees and will do so in the future in the course of seeking District payment for E.R.'s pendent placement.  Parents' has also incurred litigation costs, and will continue to do so in the future..

47.     The expenditure of attorney time and the litigation costs expended, were and will be necessary in order to secure the District's payment for E.R.'s pendent placement and/or secure additional relief in this Court.

**WHEREFORE**, Plaintiffs M.R. and J.R., parents of minor child E.R., pray this Honorable Court:

(a) Declare that the Benchmark School became E.R.'s pendent placement at the time of the Hearing Officer's decision on April 21, 2009;

(b) Declare that the District is responsible for payment of the costs of E.R.'s pendent placement, including tuition and transportation, commencing April 21, 2009;

(c) Order the District to immediately pay Parents for the amounts expended by them for tuition, including interest, and reimburse the costs of transportation, commencing of April 21, 2009;

(d) Order the District to pay the costs of E.R.'s pendent placement going forward until all appeals of the decision of April 21, 2009 have been exhausted;

(e) Award Parents reasonable attorney fees and costs; and

(f) Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

March 29, 2011

/s/ALY7563
**ALAN L. YATVIN**
*Popper & Yatvin*
230 South Broad Street, Suite 503
Philadelphia, PA 19102
(215)546-5700
E-mail: *popper.yatvin@verizon.net*

8

**A-026**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M.R. & J.R.<br>    Parents of minor child E.R.<br>                           Plaintiffs<br><br>             v.<br><br>Ridley School District<br>                          Defendant | No. 11-cv-02235-MSG |

**DEFENDANT RIDLEY SCHOOL DISTRICT'S
ANSWER AND AFFIRMATIVE DEFENSES**

1. This paragraph characterizes the plaintiffs' lawsuit or litigation goals, and requires no response.

2. This paragraph characterizes the plaintiffs' lawsuit or litigation goals, and requires no response.

3. This paragraph characterizes the plaintiffs' lawsuit or litigation goals, and requires no response.

4. This paragraph characterizes the plaintiffs' lawsuit or litigation goals, and requires no response.

5. These allegations are legal conclusions to which no response is required.

6. These allegations are legal conclusions to which no response is required.

7. This allegation is a legal conclusion to which no response is required.

8. This allegation is a legal conclusion to which no response is required.

9. Admitted.

**A-027**

10. Admitted.

11. Admitted that as of the date of the complaint, E.R. is a "child with a disability" as defined by IDEIA.

12. Admitted.

13. This paragraph characterizes the plaintiffs' manner of pleading, and requires no response.

14. The first two sentences are admitted; the third is denied.

15. This allegation is a legal conclusion to which no response is required.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. This allegation quotes or paraphrases the decision of a Pennsylvania Special Education Hearing Officer, and the defendant refers the Court to the decision itself. It is admitted that the decision contains the language reproduced at this paragraph.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted that parents filed a notice of appeal to the United States Court of Appeals for the Third Circuit on February 15, 2010.

27. Admitted.

**A-028**

28. Admitted.

29. Admitted.

**Count One: Declaratory Relief**

30. This paragraph realleges and incorporates the previous paragraphs, and no response is required.

31. This allegation quotes or paraphrases a statute or regulation, and the defendant refers the Court to the source for a true statement of its contents. To the extent that plaintiffs' allegation is inconsistent with this language, the defendant denies it.

32. This allegation quotes or paraphrases a statute or regulation, and the defendant refers the Court to the source for a true statement of its contents. To the extent that plaintiffs' allegation is inconsistent with this language, the defendant denies it.

33. This allegation quotes or paraphrases a statute or regulation, and the defendant refers the Court to the source for a true statement of its contents. To the extent that plaintiffs' allegation is inconsistent with this language, the defendant denies it.

34. This allegation is a legal conclusion to which no response is required.

35. This allegation is a legal conclusion to which no response is required. To the extent that the plaintiffs' allege facts, the defendant has insufficient knowledge or information to form a belief as to the truth or falsity of this allegation.

36. The defendant has insufficient knowledge or information to form a belief as to

the truth or falsity of this allegation.

37. The defendant has insufficient knowledge or information to form a belief as to the truth or falsity of this allegation.

38. The defendant has insufficient knowledge or information to form a belief as to the truth or falsity of this allegation.

39. This allegation is a legal conclusion to which no response is required. To the extent the plaintiffs allege facts, the defendant has insufficient knowledge or information to form a belief as to the truth or falsity of this allegation.

40. This allegation is a legal conclusion to which no response is required.

41. This allegation is a legal conclusion to which no response is required.

42. This allegation is a legal conclusion to which no response is required.

**Count Two: Attorney's Fees and Costs**

43. This paragraph realleges and incorporates the previous paragraphs, and no response is required.

44. This allegation is a legal conclusion to which no response is required.

45. This allegation is a legal conclusion to which no response is required.

46. The defendant has insufficient knowledge or information to form a belief as to the truth or falsity of this allegation.

47. This allegation is a legal conclusion to which no response is required.

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense**

The plaintiffs have failed to state a claim upon which relief can be granted.

**A-030**

### Second Affirmative Defense

The plaintiffs' claims are barred by the statute of limitations.

### Third Affirmative Defense

The plaintiffs' claims are barred by the doctrines of claim preclusion and/or *res judicata*.

### Fourth Affirmative Defense

The plaintiffs' claims are barred by waiver.

### Fifth Affirmative Defense

The plaintiffs' claims are barred by laches.

### Sixth Affirmative Defense

The plaintiffs are not entitled to injunctive relief.

### Seventh Affirmative Defense

The plaintiffs are not prevailing parties entitled to attorneys' fees.

WHEREFORE, the Ridley School District requests that this court enter an order dismissing plaintiffs' complaint, and such other and further relief, including costs and attorney fees, as is deemed just and proper by this Court.

Dated: April 26, 2011                    Respectfully submitted,

<u>/s/ John F.X. Reilly</u>
John F.X. Reilly
101 W. Baltimore Ave. Second Floor
Media, PA 19063-3225
reillyjfx@drexel.edu
(610) 565-0975
Pa. Attorney I.D. No. 60146
*Attorney for Ridley School District*

**A-031**

## CERTIFICATE OF SERVICE

I hereby certify that this day I served a copy of the foregoing Answer and Affirmative Defenses via First-Class Mail and via the court's ECF system to the person below, which satisfies the Federal Rules of Civil Procedure.

Alan. L. Yatvin
Popper & Yatvin
230 S. Broad St. Suite 503
Philadelphia, PA 19102

Dated: April 26, 2011                    /s/ John F.X. Reilly
                                         John F.X. Reilly
                                         101 W. Baltimore Ave. Second Floor
                                         Media, PA 19063-3225
                                         reillyjfx@drexel.edu
                                         (610) 565-0975
                                         Pa. Attorney I.D. No. 60146
                                         *Attorney for Ridley School District*

**A-032**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
|                                        |
| M.R. and J.R., Parents of minor    :   | CIVIL ACTION
| child, E.R.,                        :   |
|                    Plaintiffs,      :   |
|                                     :   |
|            v.                       :   | NO.  11-2235
|                                     :   |
| RIDLEY SCHOOL DISTRICT              :   |
|                    Defendant.       :   |
|_____:    |

## <u>ORDER</u>

**AND NOW**, this 13th day of August, 2012, upon consideration of the "Motion of M.R. and J.R. Parents of Minor Child E.R., for Judgment on the Pleadings" (Doc. No. 8) and the responses and replies thereto; "Defendant Ridley School District's Motion for Judgment on the Pleadings" (Doc. No. 15) and the responses and replies thereto; and for reasons stated in the accompanying Memorandum Opinion, it is hereby **ORDERED** that:

1.  M.R. and J.R.'s Motion for Judgment on the Pleadings is **GRANTED**, such that:

    -   Defendant Ridley School District shall pay the costs of E.R.'s placement at the Benchmark School, including transportation, from April 21, 2009 through the exhaustion of all appeals from the decision of the Administrative Hearing Officer;

    -   Counsel for the parties are directed to confer and attempt to reach a stipulation as to the amounts due within thirty (30) days from the date of this Order. Counsel may request a hearing if a stipulation cannot be reached;

**A-033**

- Any petition for counsel fees shall be submitted after entry of a final order

determining the amounts due for the pendent placement.

2.  Ridley School District's Motion for Judgment on the Pleadings is **DENIED**.

**WHEREFORE**, judgment is entered in favor of M.R. and J.R. and against Ridley School

District.

**BY THE COURT:**

**/s/ Mitchell S. Goldberg**

_____

**MITCHELL S. GOLDBERG, J.**

**A-034**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **M.R. and J.R., Parents of minor child, E.R.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **NO. 11-2235** |
| | : | |
| **RIDLEY SCHOOL DISTRICT,** | : | |
| **Defendant.** | : | |
| | : | |

**Goldberg, J.**                                                                                 **August 13, 2012**

### <u>Memorandum Opinion</u>

This matter arises under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1401 <u>et seq.</u>, and requires us to interpret what is commonly referred to as the stay-put provision of that Act, § 1415(j).

The dispute between the parties initially and primarily involved allegations by Plaintiffs, M.R. and J.R. (hereinafter "Parents"), that Defendant, Ridley School District (hereinafter "Ridley"), had violated the IDEA in failing to timely identify their daughter, E.R., as a child with a disability. Parents also claimed that Ridley had not developed an appropriate individualized education program ("IEP") for E.R. and had engaged in discrimination by failing to comply with E.R.'s § 504 health plan.[1] In disagreeing with the Administrative Hearing Officer's conclusions, we resolved the IDEA and § 504 issues in Ridley's favor. <u>Ridley Sch. Dist. v. M.R.</u>, 2011 WL 499966 (E.D. Pa. Feb. 14, 2011)

---

[1] § 504 of the Rehabilitation Act prohibits discrimination in federally-funded programs, including public schools, on the basis of disability. 29 U.S.C. § 794.

(hereinafter "Ridley I"). Parents appealed and the United States Court of Appeals for the Third Circuit recently affirmed this ruling. Ridley Sch. Dist. v. M.R., 680 F.3d 260 (3d Cir. 2012).

Presently before the Court is Parents' claim that Ridley has failed to fund the pendent placement of E.R. pursuant to § 1415(j) of the IDEA. Under this subsection, Parents seek payment for tuition and transportation costs from April 21, 2009 (the date of the Administrative Hearing Officer's ruling) through the exhaustion of their appeal in Ridley I. This dispute comes before us through cross motions for judgment on the pleadings, and raises the following issues:

- Whether Parents timely raised their request for stay-put compensation;

- Whether an unfavorable district court decision on the merits of Parents' underlying IDEA claim precludes stay-put relief; and

- If stay-put relief is warranted, whether Parents are entitled to have E.R.'s private school placement funded by Ridley during the pendency of their federal appeal.

For the reasons set forth below, we will grant Parents' motion and deny Ridley's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

E.R. is a special needs student who attended the Ridley School District through first grade (2007-2008). After first grade, having rejected Ridley's recommended placement for the 2008-2009 school year, Parents removed E.R. from Ridley and enrolled her in the Benchmark School (hereinafter, "Benchmark"), a private school that specializes in teaching

2

students with learning disabilities.

On December 4, 2008, Parents filed a due process complaint with the Pennsylvania Department of Education, which primarily challenged Ridley's IEP. On April 21, 2009, following a multi-day hearing, the Administrative Hearing Officer ruled, inter alia, that Ridley failed to provide an appropriate educational program for E.R. for the 2008-2009 school year, and was thus required to reimburse Parents for tuition at the Benchmark School for that year. The Hearing Officer also awarded Parents compensatory education for the 2007-2008 school year.

Ridley filed a petition for review in the Pennsylvania Commonwealth Court pursuant to 20 U.S.C. § 1415(i)(2), and Parents subsequently removed the action to this Court. Parents properly treated Ridley's petition as a complaint,[2] and filed an answer and counterclaims, which alleged that: (1) Ridley had violated the IDEA in failing to provide a free and appropriate education for E.R. in the 2006-2007 academic year; (2) Ridley had violated § 504 of the Rehabilitation Act; (3) Ridley had violated the Americans with Disabilities Act; and (4) Parents were entitled to attorneys' fees and costs on the Hearing Officer's decision and their counterclaims if they prevailed. Parents' responsive pleading did not assert a counterclaim for funding of E.R.'s private school placement under the stay-put provision.

---

[2] A federal action brought pursuant to the IDEA is "properly characterized as an original 'civil action,' not an 'appeal.'" Jonathan H. v. Souderton Area Sch. Dist., 562 F.3d 527, 529 (3d Cir. 2009).

The parties subsequently filed cross motions for judgment on the administrative record.  On February 14, 2011, we granted Ridley's motion, denied Parents' motion and entered judgment in favor of Ridley.  Ridley Sch. Dist., 2011 WL 499966.  On February 15, 2011, Parents filed a notice of appeal to the Third Circuit.  As noted above, the Third Circuit affirmed our ruling on May 17, 2012.  Ridley Sch. Dist., 680 F.3d at 260.

After filing their appeal, and through correspondence dated March 17, 2011, Parents requested that Ridley provide compensation for E.R.'s placement at the Benchmark School pursuant to § 1415(j) of the IDEA.  Ridley responded shortly thereafter, declining Parents' request.  Parents subsequently filed the instant lawsuit on March 29, 2011.  In their complaint, Parents seek a declaration that Ridley is obligated to reimburse them for E.R.'s tuition and travel to Benchmark from the date of the Hearing Officer's decision through the exhaustion of appeals.  The cross motions for judgment on the pleadings currently before the Court were filed on May 4, 2011 and June 10, 2011.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(c), judgment on the pleadings "will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988) (internal quotation marks omitted)).  When ruling on a Rule 12(c) motion, the court must view the facts presented in the pleadings and the inferences to

4

**A-038**

be drawn therefrom in the light most favorable to the non-moving party.[3]  Jablonski, 863 F.2d

at 290-91.

## III.  DISCUSSION

### A.  20 U.S.C. § 1415(j) - Statutory and Precedential Background

The IDEA mandates that children with disabilities have access to "free appropriate

public education" ("FAPE").  20 U.S.C. § 1400(d)(1)(A).  To provide FAPE, school districts

are obligated to design and administer a program of individualized instruction that is set forth

in an individualized education program, or IEP.   Id. § 1414(d).   The IEP must be

"'reasonably calculated' to enable the child to receive 'meaningful education benefits' in

light of the student's 'intellectual potential.'"  Shore Regional High Sch. Bd. of Educ. v. P.S.,

381 F.3d 194, 198 (3d Cir. 2004) (quoting Polk v. Cent. Susquehanna Interm. Unit 16, 853

F.2d 171, 181 (3d Cir. 1988)).

Compliance with the IDEA is monitored by federal review and through procedural

safeguards provided to disabled children and their parents.  Susquenita Sch. Dist. v. Raelee

S., 96 F.3d 78, 82 (3d Cir. 1996).  These safeguards are intended to "guarantee parents both

an opportunity for meaningful input into all decisions affecting their child's education and

---

[3]  We note that where, as here, a moving party asserts that the complaint fails to state a claim upon which relief may be granted, the court applies the same standards to its review as those applied in a Rule 12(b)(6) motion.  See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).  However, because Ridley's motion does not challenge the sufficiency of Parents' complaint, the standard of review is identical for both Parents' and Ridley's motions.

the right to seek review of any decisions they think inappropriate." Honig v. Doe, 484 U.S. 305, 311-12 (1988). Procedural safeguards include, but are not limited to: the right to challenge the identification, evaluation or educational placement of a child, or the provision of FAPE by filing a due process complaint; the right to an impartial due process hearing on that complaint; the right to bring an action seeking state or federal judicial review of the administrative decision; and the right of the child to remain in his or her current educational placement during the pendency of such proceedings. 20 U.S.C. § 1415(b)(6), (f), (i)(2), (j).

The pendent placement safeguard—or stay-put provision—currently at issue provides, in relevant part, that: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." Id. § 1415(j). The United States Supreme Court has described this language as "unequivocal," in that it plainly states that "the child *shall* remain in the then current educational placement." Honig, 484 U.S. at 323 (internal quotation marks omitted). The provision functions, in essence, as an automatic preliminary injunction. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996) (citing Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982)). "Once a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief." Id.

A-040

In determining what constitutes the student's current placement, courts generally look to the operative placement actually functioning at the time the dispute arose—that is, the placement indicated in the IEP. Id. at 867. However, where, as here, parents have removed their child from a placement and a hearing officer agrees that the change of placement is appropriate, that change of placement "must be treated as an agreement between the State and the parents" for purposes of the stay-put provision.[4] 34 C.F.R. § 300.518(d); see also Raelee S., 96 F.3d at 84, 86 (finding that special appeals panel's ruling in favor of parents must be treated as an agreement of the state and noting that "[w]hile parents who reject a proposed IEP bear the initial expenses of a unilateral placement, the school district's financial responsibility should begin when there is an administrative or judicial decision vindicating the parents' position."). Although § 1415(j) does not address which party bears the cost of maintaining the pendent placement, the Third Circuit has held that the provision "requires a school district to pay for a private pendent placement at least through the date of a district court's final order in an IDEA case." J.E. ex rel. J.E. v. Boyertown Area Sch. Dist., 2011 WL 5838479, at *3 (3d Cir. Nov. 21, 2011) (citing Drinker, 78 F.3d at 867 (internal

---

[4] Based on our review of precedent regarding § 1415(j), it appears that the case before us may differ somewhat from other cases in which the stay-put provision is implicated. Here, Parents advocated for change of E.R.'s placement, and then removed her from the school district. It was not until the Hearing Officer's decision in their favor that Parents sought stay-put relief. In other factual scenarios, parents immediately invoke § 1415(j) upon disagreeing with a change of placement—whether it be a new school or a different classroom setting—recommended by a school district. See e.g., Drinker, 78 F.3d at 859. Regardless, the same principles apply to both scenarios.

quotation marks omitted)).

The Third Circuit has also noted that the stay-put provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." Drinker, 78 F.3d at 864. Importantly, the purpose of the provision is to prevent disruption of the child's education by preserving the status quo during disputes about the child's placement, L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ., 384 Fed. Appx. 58, 62 (3d Cir. 2010); Ringwood Bd. of Educ. v. K.H.J., 469 F. Supp. 2d 267, 270 (D.N.J. 2006) (citing N. Kitsap Sch. Dist. v. K.W., 123 P.3d 469, 482 (Wash. Ct. App. 2005)), and to "strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." Honig, 484 U.S. at 323. Parents cannot "lose their stay put protection except by affirmative agreement to give it up." Drinker, 78 F.3d at 868 (in addressing whether parents had waived their stay-put right, the court stated that it found no cases that have interpreted the stay-put provision as being waiveable except by parents' explicit agreement).

### B. The Parties' Respective Positions

Parents argue that the Hearing Officer's April 21, 2009 decision in their favor established the Benchmark School as E.R.'s pendent placement, which, by operation of law, triggered Ridley's stay-put obligations. Parents contend that Ridley is thus liable for the cost of E.R.'s tuition and transportation from the date of the Hearing Officer's decision through

the exhaustion of their appeals. (Pls.' Br. in Support of Pls.' Mot. for Judgment on the Pleadings 3-6.)

Ridley counters that Parents did not timely raise their claim for pendent placement, arguing that such a claim is barred by res judicata and the statute of limitations, and should have been raised as a compulsory counterclaim under FED. R. CIV. P. 13 in Ridley I. Ridley also contends that it would be inappropriate under the IDEA to award Parents relief in light of the fact that this Court determined that Parents were not entitled to relief on the merits.[5] Lastly, Ridley argues that the current educational placement should be deemed to be Ridley School District given that Parents' request for stay-put relief occurred after this Court's finding that Ridley did not violate the IDEA. (Def.'s Br. in Opp'n 5-9.)

Parents respond that res judicata does not apply because the current complaint is not based on the same cause of action as Ridley I. Parents further argue that their stay-put claim was not a compulsory counterclaim because such claim was not available at the time they filed their answer and counterclaims in the previous suit. Specifically, Parents contend that there was no dispute over the pendent placement at the time Ridley I was filed, and it was not until Ridley refused to honor its obligation to fund the placement that Parents' stay-put claim became viable. Finally, Parents assert that the statute of limitations referenced by Ridley does not apply to their claim. (Pls.' Br. in Opp'n 8-15.)

---

[5] Briefing on this issue was received prior to the Third Circuit's opinion. Presumably, Ridley would point to the Third Circuit decision as further support for their position.

**C. Parents' Claim Is Not Barred by the Doctrine of <u>Res Judicata</u>.**

<u>Res judicata</u>, or claim preclusion, bars a party from bringing a second suit against the same adversary based on the same cause of action as the first suit. <u>Duhaney v. Att'y. Gen. of the U.S.</u>, 621 F.3d 340, 347 (3d Cir. 2010). A party seeking to invoke <u>res judicata</u> as a defense must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." <u>Id.</u> (internal quotation marks omitted). "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." <u>In re Mullarkey</u>, 536 F.3d 215, 225 (3d Cir. 2008).

Here, the first two elements of <u>res judicata</u> have been satisfied: a final judgment on the merits was entered in <u>Ridley I</u>; and both cases involve the same parties. Therefore, we need only address whether this case and <u>Ridley I</u> involve the same cause of action.

Whether two lawsuits are based on the same cause of action turns on the "essential similarity of the underlying events giving rise to the various legal claims." <u>Duhaney</u>, 621 F.3d at 348 (quoting <u>Lubrizol Corp. v. Exxon Corp.</u>, 929 F.2d 960, 963 (3d Cir. 1991) (internal quotation marks omitted)). The focal point of this analysis is "whether the acts complained of [are] the same, whether the material facts alleged in each suit [are] the same and whether the witnesses and documentation required to prove such allegations [are] the same." <u>United States v. Athlone Indus., Inc.</u>, 746 F.2d 977, 984 (3d Cir. 1984). An examination of these factors leads us to conclude that <u>res judicata</u> does not preclude Parents'

request for stay-put compensation.

First, the acts complained of in the two suits are different. In <u>Ridley I</u>, Parents were dissatisfied with the disability services provided to E.R., and a hearing on this issue challenged whether E.R. was provided with FAPE. Thereafter, pursuant to § 1415(i)(2)(A), Ridley challenged the Hearing Officer's conclusions that the IEP was deficient. Conversely, in the case currently before the Court, Parents are challenging Ridley's act of refusing to honor its stay-put obligations under § 1415(j), a separate provision of the IDEA. While the theory of recovery in both cases is generally premised upon the IDEA, the two suits rely upon different provisions of that statute, requiring two distinct analyses. <u>See</u> <u>Susquenita Sch. Dist.</u> <u>v. Raelee S.</u>, 96 F.3d 78, 81 n.4 (3d Cir. 1996) (stating that "resolution of [a pendent placement issue] is completely separate from the merits issues which focus on the adequacy of the proposed IEP").

Second, the facts in question in the two cases are different. <u>Ridley I</u> involved events from Spring 2007 through April 2009, the educational evaluation of E.R., the assistance provided by Ridley during the 2007-2008 school year, the IEP provided for the 2008-2009 school year, the subsequent due process complaint filed by Parents and the Hearing Officer's decision regarding these issues. The present case does not entail an examination of any of these facts, but seeks only to enforce Parents' rights under the IDEA's stay-put provision.

Lastly, the evidence necessary to maintain the instant action is different than the evidence that was required in <u>Ridley I</u>. The witnesses and documents to support a § 1415(j)

11

claim seem to be minimal and, under the present facts, entail the Hearing Officer's decision in favor of Parents, tuition bills from the private placement and evidence related to transportation costs. At oral argument, counsel for Ridley implicitly acknowledged this point when he agreed that the only evidence necessary to obtain stay-put relief was the Hearing Officer's ruling in Parents' favor.[6] On the other hand, <u>Ridley I</u> involved numerous witnesses who testified regarding Ridley's evaluation of E.R.,[7] the IEP designed for E.R. and the services provided to her, exhibits used during the due process hearing and the Hearing Officer's decision.

---

[6] THE COURT: What would [Parents] have to show me in order to get the stay put compensation? I think it could be just a hearing officer's ruling in [their] favor and a subsequent proceeding in front of me. I mean, if we look at the language, before you answer, it says during the pendency of any proceeding conducted pursuant to this section. Unless there's an agreement, the child should remain in [the] then current placement.

MR. REILLY: Right. You --

THE COURT: [They've] got available [the] hearing officer ruling and [they've] got [Ridley's] appeal to me. What more would [they] need, according to you, to have me say [they're] entitled to it?

MR. REILLY: Well, I don't think [they] need anything else, Your Honor. . . .

(Oral Argument Apr. 4, 2012, p. 12.)

[7] The witnesses included, but were not limited to: Parents, E.R.'s kindergarten teacher, E.R.'s first grade teacher, E.R.'s resource room teacher, Ridley's Director of Special Education and Ridley's school psychologist.

Because the acts complained of, and the material facts and witnesses in the two lawsuits are not the same, we conclude that <u>res</u> <u>judicata</u> does not bar Parents' request for stay-put compensation.

### D. Parents' Claim Is Not Barred by the Compulsory Counterclaim Rule.

Federal Rule of Civil Procedure 13(a) requires that a pleader assert as a counterclaim any claim that the pleader has against the opposing party that is mature at the time of the pleading and "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(a)(1)(A); <u>Am. Packaging Corp. v. Golden Valley Microwave Foods, Inc.</u>, 1995 WL 262522, at *3 (E.D. Pa. May 1, 1995). The purpose of this rule is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." <u>S. Constr. Co. v. Pickard</u>, 371 U.S. 57, 60 (1962). Accordingly, the Third Circuit has instructed that the term "transaction or occurrence" be construed liberally to promote judicial economy. <u>Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.</u>, 292 F.3d 384, 390 (3d Cir. 2002).

"For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" <u>Id.</u> at 389 (quoting <u>Xerox Corp. v. SMC Corp.</u>, 576 F.2d 1057, 1059 (3d Cir. 1978)). A logical relationship exists "where separate trials on each of [the] respective claims would involve a substantial duplication of effort and time by the parties and the courts."

Vukich v. Nationwide Mut. Ins. Co., 68 Fed. Appx. 317, 319 (3d Cir. 2003); see also Bondach v. Faust, 2011 WL 3919917, at *4-5 (E.D. Pa. Sept. 7, 2011) (applying the logical relationship test). "Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." Transamerica, 292 F.3d at 390. "Failure to assert a compulsory counterclaim before the related claim proceeds to judgment results in the barring of the counterclaim." Stanton v. City of Phila., 2011 WL 710481, at *4 (E.D. Pa. Mar. 1, 2011) (quoting James E. McFadden, Inc. v. Bechtel Power Corp., 1986 WL 4195, at *3 (E.D. Pa. Apr. 3, 1986) (internal quotation marks omitted)).

Because the compulsory counterclaim rule effectively operates as a waiver, we find at the outset that the rule is inapplicable here. See 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1417 (3d ed. 2010) (noting that, while it is not precisely clear on what authority Rule 13(a)'s compulsory counterclaim bar is based, several courts have relied on theories of "waiver" or "estoppel" as the basis for precluding a second suit on the omitted counterclaim). The Third Circuit has ruled that parents cannot waive their stay-put protection except by affirmative agreement. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 868 (3d Cir. 1996). Because there is no evidence that Parents and Ridley agreed that Benchmark would not be E.R.'s pendent placement for purposes of § 1415(j), Parents did not waive that protection.

14

In any event, we find that Parents' stay-put claim was not a compulsory counterclaim that needed to be raised in the prior suit. The dispute over Parents' right to stay-put compensation was not mature at the time the pleadings were filed in <u>Ridley I</u> and thus the claim cannot be compulsory. While Parents' right to compensation existed when <u>Ridley I</u> was filed, it was not until Ridley refused to honor its stay-put obligation that Parents' instant claim arose. Further, in comparing the two lawsuits, we conclude that Parents' current claim is not logically related to the claims raised by Ridley in the prior suit. Separate proceedings on the FAPE claims and the stay-put claim would not involve a substantial duplication of effort and time by the parties and the Court because the claims do not involve the same factual or legal issues. As discussed previously, the factual issues in <u>Ridley I</u> focused on events revolving around FAPE, which led to the Hearing Officer's decision and this Court's subsequent review of that decision. The factual issues in the instant matter involve whether Parents are entitled to stay-put compensation. In addition, the legal issues are distinct as the two actions rely upon different provisions of the IDEA.

### E. Parents' Claim is Not Barred by the Statute of Limitations.

Ridley also asserts that Parents' claim is barred by the statute of limitations set forth in 20 U.S.C. § 1415(i)(2)(B), which requires a party to bring a civil action within 90 days of the date of a hearing officer's decision. The right to bring a civil action under § 1415(i)(2) lies with "any party aggrieved by the findings and decisions" of a hearing officer. 20 U.S.C. § 1415(i)(2)(A).

15

Relying on the statute of limitations provision, Ridley argues that, because the instant action was not filed within 90 days of the Hearing Officer's decision, Parents' claim is time barred. (Def.'s Br. in Support of Def.'s Mot. for Judgment on the Pleadings 8-9.) Parents counter that § 1415(i)(2)(B) only applies to actions by a "party aggrieved by the findings and decisions" of a hearing officer, which is not the case here. Specifically, Parents contend that because the Hearing Officer's decision created an agreement establishing Benchmark as E.R.'s pendent placement, they were not aggrieved by the decision, and the 90-day statute of limitations does not apply to their claim. (Pls.' Reply Br. 1-2.)

We agree with Parents that the statute of limitations in § 1415(i)(2)(B) does not apply to their stay-put claim. At the due process hearing, the Hearing Officer found in favor of Parents with regard to most of their claims. Importantly, the Hearing Officer concluded that Ridley failed to provide an appropriate educational program for E.R. for the 2008-2009 school year, which by operation of law, created an agreement between Parents and Ridley that Benchmark was E.R.'s pendent placement. Because Parents were not aggrieved by the Hearing Officer's decision on this issue, Parents were not subject to the 90-day statute of limitations.

### F. Parents Are Entitled to Judgment on Their Claim, Including Reimbursement for Tuition Paid During the District Court Proceedings and During the Pendency of Their Appeal.

Having determined that Parents' stay-put claim is not barred under the various defenses asserted by Ridley, we next turn to the merits of their claim.

16

1.  <u>E.R.'s Pendent Placement is Benchmark.</u>

As previously discussed, the stay-put provision essentially functions as an automatic preliminary injunction. <u>Drinker v. Colonial Sch. Dist.</u>, 78 F.3d 859, 864 (3d Cir. 1996). Once a court determines a student's current educational placement, the party requesting stay-put relief is "entitled to an order without satisfaction of the usual prerequisites to injunctive relief." <u>Id.</u>

Here, the parties dispute which school is E.R.'s current placement for purposes of Parents' claim. Parents urge that Benchmark is E.R.'s pendent placement because the Hearing Officer's decision in their favor created a change of placement agreement with the state. (Pls.' Br. in Support of Pls.' Mot. for Judgment on the Pleadings 3-5.) Ridley counters that Ridley School District should be deemed E.R.'s placement given that Parents' request for stay-put protection occurred after this Court's finding that Ridley did not violate the IDEA. (Def.'s Br. in Opp'n 5.)

We agree with Parents that Benchmark is E.R.'s pendent placement. Precedent dictates that Ridley's stay-put obligations began once there was state agreement with respect to E.R.'s placement—that is, when the Hearing Officer issued her decision in Parents' favor. <u>See</u> <u>Susquenita Sch. Dist. v. Raelee S.</u>, 96 F.3d 78, 84 (3d Cir. 1996) ("It is undisputed that once there is state agreement with respect to pendent placement, *a fortiori*, financial responsibility on the part of the local school district follows.") At oral argument, Ridley acknowledged the creation of this agreement at the time of the Hearing Officer's decision,

17

but contended that Parents were required to affirmatively seek stay-put relief.[8]  (Oral Argument Apr. 4, 2012, pp. 6-7.)  We do not read § 1415(j) to require parents to request compensation in order for their stay-put protection to begin.  Ridley's interpretation of the provision does not comport with its plain language, which instructs that "the child *shall* remain in [her] then-current educational placement" during the pendency of proceedings.  See 20 U.S.C. § 1415(j) (emphasis added).  Nor is Ridley's position consistent with the

---

[8] Ridley also conceded that, had the stay-put claim been raised as a counterclaim in Ridley I, Parents would have been entitled to stay-put compensation:

| | |
|---|---|
| THE COURT: | . . . [H]ad the parents filed the counterclaim [for stay-put protection], as you say they should have, on June 30th, '09, would you agree that you owe them money under the stay put provision? |
| MR. REILLY: | Yes. |
| THE COURT: | Okay. |
| MR. REILLY: | If the parents had filed the counter -- if the parents had filed a timely counterclaim in the first proceeding then, under [Susquenita School District v. Raelee S., 96 F.3d 78, 82 (3d Cir. 1996)], they could have requested you to require the district to pay the interim tuition.  They would have requested of you and had you have us respond but you would have been within your rights to grant it under [Raelee S.]. |
| | . . . |
| MR. REILLY: | . . . I believe, under [Raelee S.], ultimately, you would have been obliged to give it to them because that's what [Raelee S.] says. |

(Oral Argument Apr. 4, 2012, pp. 6-7.)

18

**A-052**

underlying policy of the provision, which is to preserve the status quo during disputes regardless of whether parents will ultimately be meritorious. L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ., 384 Fed. Appx. 58, 62 (3d Cir. 2010). Once an agreement was created, Ridley was required to honor it. Parents' failure to request funding until after this Court ruled against them does not obviate Ridley's obligation.

### 2. Stay-Put Protection Extends to Appeal.

The remaining issue concerns whether stay-put protection continues through the completion of the appeals process. While the Third Circuit has not yet decided this issue, that court has observed that it is a "difficult question" to resolve. J.E. ex rel. J.E. v. Boyertown Area Sch. Dist., 452 Fed. Appx. 172, 176 n.2 (3d Cir. 2011). We agree, particularly in light of the factual scenario before us.

As noted previously, the stay-put provision provides, in relevant part, that: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j). It is well-established that § 1415(j) "requires a school district to pay for a private pendent placement at least through the date of a district court's final order." J.E., 452 Fed. Appx. at 176. However, there is a split in authority among the federal circuits, as well as district courts in this circuit, regarding whether the stay-put provision applies during the pendency of appeals.

### a. Relevant Case Law

The D.C. Circuit, Sixth Circuit, and district courts in Delaware and the Eastern District of Pennsylvania have held that a school district need not continue to fund a student's pendent placement beyond district court review.  See Andersen v. Dist. of Columbia, 877 F.2d 1018 (D.C. Cir. 1989); Kari H. v. Franklin Special Sch. Dist., 1997 WL 468326 (6th Cir. Aug. 12, 1997) (unpublished opinion); Bd. of Educ. of the Appoquinimink Sch. Dist. v. Johnson, 2008 WL 5043472 (D. Del. Nov. 25, 2008); J.E. v. Boyertown Area Sch. Dist., 807 F. Supp. 2d 236 (E.D. Pa. 2011).

Conversely, the Ninth Circuit and a New Jersey district court have ruled that a school district's stay-put obligation extends through appeal to a circuit court.  See Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036 (9th Cir. 2009); Ringwood Bd. of Educ. v. K.H.J., 469 F. Supp. 2d 267 (D.N.J. 2006).  We review these varying opinions below.

In Andersen v. Dist. of Columbia, 877 F.2d 1018 (D.C. Cir. 1989), the D.C. Circuit denied a request to apply § 1415(j) on appeal.  In reaching this decision, the court found that the statutory language at issue demonstrated that Congress did not anticipate the continuation of stay-put relief through appellate review.  The court noted that, although an appeal is part of a "civil action," Congress did not explicitly include such review as a proceeding under § 1415 and was instead focused on the trial stage of proceedings when it enacted the stay-put provision.  Andersen, 877 F.2d at 1023.

20

Turning to the policies of the provision, the D.C. Circuit also concluded that application of § 1415(j) beyond district court review would run counter to the provision's purpose of preventing school districts from unilaterally changing the educational placement of students pending completion of the dispute process.  Id. at 1023-24 (citing Honig v. Doe, 484 U.S. 305, 323 (1988)).  The court reasoned that, once a district court rules, a school district's action is no longer unilateral, but carries judicial approval.  Consequently, the "automatic injunction perpetuating the prior placement would not serve the section's purpose."  Id. at 1024.  The Sixth Circuit and the District of Delaware and Eastern District of Pennsylvania cases noted above reached the same conclusion for substantially the same reasons.  See Kari H., 1997 WL 468326 (unpublished opinion); Johnson, 2008 WL 5043472; Boyertown Area Sch. Dist., 807 F. Supp. 2d at 236.

A different outcome was reached by the United States Court of Appeals for the Ninth Circuit in Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036 (9th Cir. 2009).  There, the court held that the stay-put provision applies during the pendency of an appeal.  In examining the statutory language of the IDEA, the court determined that a plain reading of the text supports application of § 1415(j) on appeal.  The court reasoned that, because Congress provided the parties with the option for district court review, it was presumably aware that the parties would be entitled to seek an appeal from a district court ruling.  Joshua A., 559 F.3d at 1038.  In addition, the court relied upon a Department of Education regulation, requiring that the current educational placement be maintained "during the pendency of *any*

**A-055**

. . . judicial proceeding," in reaching its decision.  Id. (citing 34 C.F.R. § 300.518(a)).

The Ninth Circuit also focused upon the policy considerations of § 1415(j).  First, it rejected the policy analysis articulated in Andersen, finding that the D.C. Circuit's reliance on Honig v. Doe, 484 U.S. 305 (1988), was misplaced.  Specifically, the Ninth Circuit opined that, while Honig did mention that Congress was aware of the need to prevent school districts from unilaterally changing a student's placement, that issue was "a tangential policy argument" in that Honig involved a potentially dangerous disabled student and the placement issues that arose from that particular situation.  Id. at 1038-39.  Because the facts before the court did not involve a similar exigency, it found Andersen's reliance on Honig's policy rationale unpersuasive.

In further distinguishing Andersen, the Ninth Circuit emphasized that the policy considerations, in fact, favor application of § 1415(j) during appeal.  The court noted that the stay-put provision "acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process" and that "[i]t is unlikely that Congress intended this protective measure to end suddenly and arbitrarily before the dispute is fully resolved." Id. at 1040.  Relying on similar reasoning, the District of New Jersey court reached the same conclusion.  See Ringwood Bd. of Educ. v. K.H.J., 469 F. Supp. 2d 267, 270 (D.N.J. 2006).

### b.  Statutory Construction

Tasked with interpreting the scope of the stay-put provision, we first examine the statutory language.  In re Phila. Newspapers, LLC, 599 F.3d 298, 304 (3d Cir. 2010).  It is

well-settled that the initial step in interpreting a statute is to determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Valansi v. Ashcroft, 278 F.3d 203, 209 (3d Cir. 2002) (quoting Marshak v. Treadwell, 240 F.3d 184, 192 (3d Cir. 2001) (internal citations omitted)). Where the language of the statute is clear, our inquiry is complete. In re Phila. Newspapers, LLC, 599 F.3d at 304. However, if the language is ambiguous—that is, "reasonably susceptible of different interpretations"—we must attempt to discern Congress' intent. Dobrek v. Phelan, 419 F.3d 259, 264 (3d Cir. 2005) (quoting Nat'l R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co., 470 U.S. 451, 473 n.27 (1985)).

Courts traditionally examine "the legislative history and the atmosphere in which the statute was enacted" to determine congressional intent. United States v. Gregg, 226 F.3d 253, 257 (3d Cir. 2000). Courts should also "look to the reading [of the language] that 'best accords with the overall purposes of the statute.'" United States v. Introcaso, 506 F.3d 260, 267 (3d Cir. 2007) (quoting Nugent v. Ashcroft, 367 F.3d 162, 170 (3d Cir. 2004)). Additionally, where, as here, the statute at issue is within the scope of an agency's rulemaking and lawmaking authority, that agency's reasonable interpretation should be deferred to in resolving the ambiguity. Mehboob v. Att'y Gen. of the United States, 549 F.3d 272, 275 (3d Cir. 2008); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).

A-057

c. **Analysis**

With the above precepts in mind, and after careful examination of the statutory language, the purposes of § 1415(j) and the Department of Education regulations, we conclude that the stay-put provision applies during the pendency of a federal appeal.

First, we agree with the Ninth Circuit that the plain language of the stay-put provision contemplates an appeal to a circuit court. Section 1415(j) mandates that a child shall remain in his or her current educational placement "during the pendency of any proceedings conducted pursuant to this section." The "section" referred to, § 1415, articulates four kinds of proceedings: (1) mediation; (2) due process hearings; (3) state administrative review; and (4) civil actions for review "in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(e), (f), (g), (i). Although Congress did not explicitly articulate that an appeal is a "proceeding" under § 1415, it seems intuitive that an appeal is part of a "civil action . . . in a district court of the United States." Indeed, 28 U.S.C. § 1291, specifically states that "the courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." In drafting § 1415(j), Congress surely understood that district court review would necessarily include an appeal to a circuit court. As such, reading the language at issue in its ordinary sense, we find it clear that the stay-put provision applies during appellate review.[9]

---

[9] Although the Ninth Circuit did not reach the issue of whether stay-put protection extends to Supreme Court review, for the same reasons stated herein, we conclude that the language of the provision also encompasses such proceedings. While an appeal to the

Even if the language of § 1415(j) does not unambiguously extend stay-put protection through appeal, our reading is nevertheless in accord with the provision's protective purposes. While cutting off stay-put compensation at the district court level arguably achieves § 1415(j)'s purpose to prevent unilateral exclusion of disabled students by school districts, that is just one goal of the provision. See Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 373 (1985) ("We think *at least* one purpose of [the stay-put provision] was to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings.") (emphasis added). The broader policy goal of § 1415(j) is the desire not to disturb a student's educational placement until the statutorily-mandated dispute process has concluded. L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ., 384 Fed. Appx. 58, 62 (3d Cir. 2010); Ringwood Bd. of Educ v. K.H.J., 469 F. Supp. 2d 267, 270 (D.N.J. 2006) (citing N. Kitsap Sch. Dist. v. K.W., 123 P.3d 469, 482 (Wash. Ct. App. 2005)). This purpose would not be achieved by limiting stay-put relief to district court review.

Indeed, refusing to enforce the stay-put provision after a district court ruling and during the appeals process could force parents to choose between maintaining their child in a private school at their own cost—which may or may not be within their financial means—or placing their child back into an educational setting which, depending on the outcome of appeal, could

Supreme Court is not an appeal of right, Congress presumably knew that a civil action brought in federal court could ultimately be reviewed by the Supreme Court.

25

potentially fail to meet minimum legal standards.[10]  The Third Circuit noted this dilemma in Susquenita School District v. Raelee S., where the court stated that, "[w]ithout interim financial support [provided through a motion for stay put], a parent's 'choice' to have his child remain in what the state has determined to be an appropriate . . . placement amounts to no choice at all.  The prospect of reimbursement at the end of the litigation turnpike is of little consolation to a parent who cannot pay the toll at the outset."  96 F.3d at 87.

This undesirable outcome could have been reached under the circumstances of the present case.  If Parents had not been able to afford E.R.'s private school placement, they would have been confronted with the decision to place E.R. back in the Ridley School District even though our decision was subject to reversal on appellate review.  This predicament runs counter to the Third Circuit's view that § 1415(j) represents "Congress' policy choice that all handicapped children, *regardless of whether their case is meritorious or not*, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved."  Pardini v. Allegheny Interm. Unit, 420 F.3d 181, 190 (3d Cir. 2005) (emphasis added) (citing Drinker, 78 F.3d at 864).

Ultimately, we agree with the court in Joshua A. that the "automatic" nature of a stay-put order evidences "Congress's sense that there is a heightened risk of irreparable harm

---

[10] We also note that cutting off stay-put protection after district court review has potential negative consequences in other factual scenarios besides private school placement.  For instance, the stay-put provision could have been invoked during the pendency of an appeal to maintain a child's special services within the school district or to maintain a child's placement in a mainstream rather than a self-contained classroom.

26

inherent in the premature removal of a disabled child to a potentially inappropriate educational setting" and thus any risk, financial or otherwise, should be placed on the school district, not the parents or child. 559 F.3d at 1040. While we understand that the Third Circuit has declined to address the issue of whether § 1415(j) applies during a federal appeal, we believe the policy concerns consistently articulated by that court support the conclusion that Congress did not intend stay-put protection to end suddenly before the dispute is finally resolved. See Raelee S., 96 F.3d at 83.

Lastly, our reading also comports with the Department of Education's reasonable interpretation of the provision. In implementing § 1415(j), the Department of Education has mandated that a child's placement be maintained "during the pendency of *any* . . . judicial proceeding regarding a due process complaint," not just district court proceedings. See 34 C.F.R. § 300.518(a) (emphasis added). The broad language used by the Department of Education, noting that the placement be maintained during "any" judicial proceeding, supports our decision that the stay-put provision extends through appeal.

In reaching this conclusion, we have grappled mightily with the practical, or perhaps impractical, implications of our decision. Although Parents may disagree, we do not view this case as one where a school district turned a blind eye to the disabilities of one of their students. Rather, Ridley provided significant services to E.R. and was prepared to continue to do so had E.R. remained in the school district. Ridley has also expended substantial resources defending the FAPE provided to E.R., which has now been challenged through three levels of review.

A-061

Ridley's position has been deemed to be correct by the Third Circuit, and absent a reversal by the United States Supreme Court, the sufficiency of Ridley's FAPE will be the law of the case. To now apply the stay-put provision through appeal creates a situation where the prevailing party is nonetheless required to compensate Parents from April 21, 2009 (the date of the Hearing Officer's decision) through to potentially the completion of litigation in the Supreme Court. As noted by the district court in <u>Boyertown</u>, this type of outcome could appear to have created an absurd result. <u>J.E. v. Boyertown Area Sch. Dist.,</u> 807 F. Supp. 2d at 240.

Having expressed our frustration, we rule as we do because we are compelled to do so by the statutory language. Rectifying the dilemma created here, where Ridley, the prevailing party is still obligated to compensate Parents, is, in our view, best left to Congress.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **M.R. and J.R., Parents of minor child, E.R.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **NO. 11-2235** |
| | : | |
| **RIDLEY SCHOOL DISTRICT,** | : | |
| **Defendant.** | : | |

## AMENDED ORDER

**AND NOW**, this 10th day of September, 2012, because the costs of E.R.'s placement

have not been determined, it is hereby **ORDERED** that our August 13, 2012 Order (Doc. No.

24) is **AMENDED** such that it does not constitute entry of judgment pursuant to FED. R. CIV. P.

58, nor do we view the August 13, 2012 Order as an appealable final decision pursuant to 28

U.S.C. § 1291.


                                        **BY THE COURT:**

                                        **/s/ Mitchell S. Goldberg**
                                        _____
                                        **MITCHELL S. GOLDBERG, J.**

**A-063**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **M.R. and J.R., Parents of minor child, E.R.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **NO. 11-2235** |
| | : | |
| **RIDLEY SCHOOL DISTRICT** | : | |
| **Defendant.** | : | |
| | : | |

## <u>ORDER</u>

**AND NOW**, this 1st day of October, 2012, it is hereby **ORDERED** that the parties' Stipulation (Doc. No. 26) is **APPROVED and ADOPTED**. It is **FURTHER ORDERED** that judgment is entered in favor of M.R. and J.R. and against Ridley School District in the amount of $57,658.38, exclusive of any petition for counsel fees.

BY THE COURT:

**/s/ Mitchell S. Goldberg**

_____
**MITCHELL S. GOLDBERG, J.**

**A-064**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

M.R. and J.R.,
Parents of minor child E.R.,          :        CIVIL ACTION NO. 11-cv-2235
      Plaintiffs,
                          :        HON. MITCHELL S. GOLDBERG

      v.                        :

RIDLEY SCHOOL DISTRICT,
      Defendant.                :

## STIPULATION

**IT IS** hereby **STIPULATED** by and between Plaintiffs, M.R. and J.R., parents of minor

child E.R., and Defendant, Ridley School District, by their undersigned counsel, pursuant to the

Court's Order of August 13, 2012, that the amounts expended by Plaintiffs M.R. and J.R. for E.R.'s

placement at the Benchmark School, including transportation, from April 21, 2009 through the

exhaustion of all appeals from the decision of the Administrative Hearing Officer, total $57,658.38,

as more fully set forth in the attached table, which is made part of this Stipulation.

**SO STIPULATED.**

_____
**ALAN L. YATVIN**
Counsel for Plaintiffs, M.R. and J.R.,
parents of minor child E.R.

                   8/14/12

_____
**JOHN F.X. REILLY**
Counsel for Defendant,
Ridley School District

**A-065**

| **Stipulated E.R. Pendent Placement Costs** **Page 1** | | | |
|---|---|---|---|
| **Item** | **Time Period** | **Rate/Charge** | **Amount** |
| Partial 2008-2009 School Year (SY) Benchmark Tuition (From Hearing Officer (HO) Decision to end of SY) | 4/21/09-6/12/09 (38 days) | Tuition $23,320 ÷ 180 days = $129.56/day x 38 days | $4,923.28 |
| Transportation Partial 2008-2009 SY | 4/21/09-6/12/09 (38 days) | 16 mi. RT x 2 Roundtrip (RT) /day 32 mi/day x $.55 x 38 days | $668.80 |
| 2009 Extended School Year (ESY) Tuition | Summer 2009 | ESY Tuition $1,030. | $1,030.00 |
| Transportation 2009 ESY | Summer 2009 (25 days) | 16 mi. RT x 2 RT/day 32 mi/day x $.55 x 25 days | $440.00 |
| 2009-2010 SY Benchmark Tuition | 2009-2010 SY | Tuition $10,400. (after Benchmark School assistance awards) | $10,400.00 |
| 2009-2010 Guided Study | 2009-2010 | $690. | $690.00 |
| 2009-2010 Books & Fees | 2009-2010 | $88. | $88.00 |
| 2009-2010 SY Transportation | 2009-2010 SY (180 days - 10 sick days = 170 days) | 16 mi. RT x 2 RT/day 32 mi/day x $.55 x 170 days (10 sick days) | $2,992.00 |
| 2010 ESY Tuition | Summer 2010 | ESY Tuition $1,420. (including math tutor) | $1,420.00 |
| 2010 ESY Transportation | Summer 2010 (25 days) | 16 mi. RT x 2 RT/day 32 mi/day x $.55 x 25 days | $440.00 |
| 2010-2011 SY Benchmark Tuition | 2010-2011 SY | Tuition $15,600. (after Benchmark School assistance awards) | $15,600.00 |

Page 1

| Stipulated E.R. Pendent Placement Costs Page 2 | | | |
|---|---|---|---|
| 2010-2011 Guided Study | 2010-2011 | $880. | $880.00 |
| 2010-2011 Books & Fees | 2010-2011 | $88. | $88.00 |
| 2010-2011 SY Transportation | 2010-2011 SY (180 days - 8 sick days = 172 days) | 16 mi. RT x 2 RT/day 32 mi/day x $.55 x 172 days | $3,027.30 |
| 2011-2012 SY Benchmark Tuition | 2011-2012 SY | Tuition $10,900. (after Benchmark School assistance awards) | $10,900.00 |
| 2011-2012 Guided Study | 2011-2012 | $990. ($330/trimester x 3) | $990.00 |
| 2011-2012 Books & Fees | 2011-2012 | $89. | $89.00 |
| 2011-2012 SY Transportation | 2011-2012 SY (180 days - 10 sick days = 170 days) | 16 mi. RT x 2 RT/day 32 mi/day x $.55 x 170 days | $2,992.00 |
| **Total:** | | | **$57,658.38** |

**A-067**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

M.R. and J.R.,
Parents of minor child E.R.,      :     CIVIL ACTION NO. 11-cv-2235
        Plaintiffs,

                               :     HON. MITCHELL S. GOLDBERG

        v.

                               :

RIDLEY SCHOOL DISTRICT,
        Defendant.            :

### ORDER

    **AND NOW**, this       day of             , 2015, upon consideration of the Motion of Plaintiffs, M.R. and J.R., Parents of minor child E.R., for an Award of Counsel Fees and Expenses, and the response thereto, it is hereby **ORDERED** and **DECREED** that the Motion is **GRANTED** and Judgment is entered in favor of Plaintiffs and against Defendant Ridley School District in the amount of $_____, which shall be paid within thirty (30) days of the date of this Order.

                                 BY THE COURT:

                                 _____
                                 Goldberg, U.S. District Judge

**A-068**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

M.R. and J.R.,
Parents of minor child E.R.,                    :          CIVIL ACTION NO. 11-cv-2235
       Plaintiffs,

                        :          HON. MITCHELL S. GOLDBERG

     v.
                        :

RIDLEY SCHOOL DISTRICT,
       Defendant.                        :

### MOTION OF  M.R. AND J.R., PARENTS OF MINOR CHILD E.R.,
### FOR AN AWARD OF COUNSEL FEES AND COSTS

M.R. and J.R., Parents of minor child, E.R. ("Parents"), move that this Honorable Court

award them counsel fees and costs, as follows:

1.      E.R. is a student with a disability.  Plaintiff's Complaint (Document 1), attached hereto as

Exhibit A, ¶ 9, 11, 12.

2.      Parents filed a Due Process Complaint Notice on December 4, 2008, seeking, *inter alia*,

tuition reimbursement for Student's parental placement at the Benchmark School and related

services.  Exhibit A, ¶ 20; Memorandum Opinion and Order (Documents 23 and 24) attached

as Exhibit B, collectively, p. 3.

3.      Following a multi-day hearing and written submissions of the parties, the Pennsylvania Due

Process Hearing Officer issued her decision on April 21, 2009.  Exhibit A, ¶21;  Exhibit B,

p. 3.

4.      The Hearing Officer's ruling included:

> 4.     The Ridley School District failed to provide an appropriate
> educational program for [E.R.] for the 2008-2009 school year, and therefore
> is required to reimburse Mr. and Mrs. [R] for tuition at the Benchmark
> School, including transportation, for the 2008-2009 school year.

Exhibit A, ¶22.

5.    Ridley appealed the Hearing Officer's Decision to the Pennsylvania Commonwealth Court, from whence Parents removed it to the United States District Court for the Eastern District of Pennsylvania.    *Ridley School District v. M.R. and J.R.*, Civil Action No. 09-cv-02503-MSG, assigned to the Honorable Mitchell S. Goldberg.    Exhibit A, ¶23; Exhibit B, p. 3.

6.    The issues relating to the decision of the Hearing Officer were submitted to the District Court by cross-motions for judgment on the administrative record.    Exhibit A, ¶24.

7.    On February 14, 2011, the District Court reversed the hearing officer and entered judgment for Ridley on all claims.    Exhibit A, ¶25;  Exhibit B, p. 4.

8.    On February 15, 2011, Parents filed a notice of appeal to the United States Court of Appeals for the Third Circuit.    Exhibit A, ¶ 26.

9.    On March 17, 2011, counsel for Parents made demand upon Ridley, by letter mailed and e-mailed to its counsel, for reimbursement for E.R.'s pendent placement, including, related services.    Exhibit A, ¶27;  Exhibit B, p. 4.

10.    On March 25, 2011, counsel for Parents sent a second demand by letter mailed and emailed to counsel for Ridley, clarifying the periods and amounts for which payment for E.R.'s pendent placement was sought.    Exhibit A, ¶28;  Exhibit B, p. 4.

11.    Later on March 25, 2011, Parents' counsel received a March 24, 2011 letter in the mail from Ridley's counsel declining the request for payment.    Exhibit A, ¶29; Exhibit B,p. 4.

12.    The instant action was filed to compel Ridley to repay Parents for the cost of E.R.'s pendent placement from the April 21, 2009 hearing officer decision, through exhaustion of proceedings in federal court.    Exhibit A;  Exhibit B, p. 4.

13.     On May 17, 2012, the Court of Appeals affirmed the judgment of the District Court in the underlying action.  *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260 (3d Cir. 2012).

14.     The issues in the instant action were submitted to the Court on cross motions for judgment on the pleadings.  Documents 8, 11, 14, 15, 16, 19;  Exhibit B, p. 4.

15.     On August 13, 2012, the Court granted judgment in favor of Parents and denied Ridley's motion for judgment on the pleadings, issuing a Memorandum Opinion and Order.  Exhibit B; *M.R. v. Ridley Sch. Dist*., 2012 U.S. Dist. LEXIS 113600 (E.D. Pa. Aug. 13, 2012).

16.     On September 14, 2012, the parties filed a stipulation as to the Parents' expenditures for the pendent placement and related services.  Stipulation (Document 26) attached as Exhibit C.

17.     On October 1, 2012 the Court approved and adopted the stipulation and "ORDERED that judgment is entered in favor of M.R. and J.R. and against Ridley School District in the amount of $57,658.38, exclusive of any petition for counsel fees."  The Order (Document 27), which was docketed on October 2, 2012, is attached as Exhibit D.

18.     On October 15, 2012, Plaintiff's filed a fee motion ( Document 28); on November 8, 2012, Ridley filed an answer (Document 35); and Parents filed a motion for leave to reply, with reply, on December 7, 2012 (Document 40); the reply was filed on January 10, 2013, by leave of Court (Documents 43 and 44).

19.     On September 30, 2013, this Court denied the motion without prejudice and with leave to refile at the conclusion of the appeal (Document 45), extending the time for filing the fee motion until after conclusion of proceedings in the Supreme Court by order dated April 4, 2014 (Document 48), and further extending the filing date to July 17, 2015, by order dated May 27, 2015 (Document 49).

20. On October 28, 2012, Defendant Ridley filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit (Document 30).

21. The parties briefed the issues, and the case was argued in the Court of Appeals on October 17, 2013.

22. On February 20, 2014, the Court of Appeals found in favor of Parents on all grounds and affirmed the judgment of the District Court in its entirety. *M.R. V. Ridley Sch. Dist.*, 744 F.3d 112 ($3^d$ Cir. 2014).

23. On June 20, 2014, Ridley filed a petition for a writ of certiorari with the Supreme Court. http://sblog.s3.amazonaws.com/wp-content/uploads/2014/08/13-1547.pdf (last viewed 7/15/15).

24. On August 27, 2014, Parents filed a brief in opposition. Exhibit E-2 (http://sblog.s3.amazonaws.com/wp-content/uploads/2014/09/13-1547-bio.pdf (last viewed 7/15/15)). See Declaration of Brian Wolfman, Exhibit E, for detailed history of proceedings on certiorari.

25. On May 18, 2015, the Supreme Court denied the petition for a writ of certiorari.

26. Parents prevailed on all issues and defenses raised in this litigation. Exhibits B and D.

27. Interest continued to accrue on the judgment from the October 2, 2012, entry on the docket. Document 27.

28. Demand for payment of the judgment, plus accrued interest, was made by email on May 27, 2015. Exhibit F.

29. The judgment in the amount of $ 57,658.38, plus interest in the amount of $ 260.07, was paid by Ridley by check dated June 9, 2015, in the total amount of $ 57,918.45. Exhibit G.

Page 4

**A-072**

30.  Parents are prevailing parties under the IDEA.

31.  Under the IDEA, Parents are entitled to their reasonable attorney's fees and costs as prevailing parties.  20 U.S.C. § 1415(i)(3).

32.  Plaintiff's counsel has expended time in the litigation of this matter, through the filing of this motion, exclusive of subsequent compensable hours expended in the litigation of this motion, including, but not limited to, review of any response and research related to the response, the filing of any replies, time associated with preparing for and attending any hearing, and client communication, as follows:

    a.    Alan L. Yatvin (Exhibit H) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 172

    b.    Brian Wolfman (Exhibit E-1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 130.8

    c.    Amanda Krause (Exhibit E-3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42.5

    d.    Bradley Girard (Exhibit E-4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23.1

    e.    Jessica Westerman (Exhibit E-5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    f.    Stephany Reaves (Exhibit E-6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28.8

    g.    Michael Mestitz (Exhibit E-7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25.5

33.  In calculating the claim for attorney's fees and costs, Parents seek hourly rates as follows:

    a.    Alan L. Yatvin – $625/hr for work in the District Court and Court of Appeals; and $789/hr for work in the Supreme Court

    b.    Brian Wolfman - $789/hr.

    c.    Amanda Krause - $179/hr

    d.    Bradley Girard - $179/hr

    e.    Jessica Westerman - $179/hr

A-073

       f.     Stephany Reaves - $179/hr

       g.     Michael Mestitz - $179/hr

34.    Alan Yatvin's rate of $625 per hour in the District Court and the Court of Appeals, is his customary hourly rate, which he has charged clients and which he has received in other fee shifting matters, as more fully set forth in the accompanying declarations.  Yatvin Declaration attached as Exhibit I.

35.    Alan Yatvin's requested hourly rate of $625 is well within the prevailing hourly rates for federal court litigation charged by attorneys of comparable experience within this geographical area, which is the Philadelphia market, as more fully set forth in the accompanying declarations.

36.    Alan Yatvin's rate of $789 per hour for work related to opposition to the petition for a writ of certiorari in the Supreme Court is well within the prevailing hourly rates for federal court litigation charged by attorneys of comparable experience litigating at the Supreme Court and within the Washington, D.C. geographical area, as more fully set forth in the accompanying declarations.  See also Adjusted Laffey Matrix, Exhibit E-8.[1]

37.    Brian Wolfman's rate of $789 per hour for work related to opposition to the petition for a writ of certiorari in the Supreme Court is well within the prevailing hourly rates for federal court litigation charged by attorneys of comparable experience litigating at the Supreme Court and within the Washington, D.C. geographical area, as more fully set forth in the accompanying declarations.  See Declaration of Jeffrey A. Lamken (Exhibit E-9); Adjusted Laffey Matrix, Exhibit E-8.

---

[1]http://www.laffeymatrix.com/see.html (Last viewed July 16, 2015). Exhibit E-8.

38. The law students are clinical students at Georgetown University Law Center and Stanford, Law School and the rate of $179 per hour for work related to opposition to the petition for a writ of certiorari in the Supreme Court is within the prevailing hourly rates for federal court litigation charged by law students in connection with litigation at the Supreme Court and within the Washington, D.C. geographical area. See Declaration of Brian Wolfman, Exhibit E; Adjusted Laffey Matrix, Exhibit E-8.

39. Application of Plaintiffs' counsels' hourly rates to the reasonable hours worked on this case yields a lodestar of $ 244,659.45, broken down as follows:

    a.     Alan Yatvin. . . . . . . . . . . . . . . . . . . . . . . . . . 108.9 hours x $625 = $68,062.25

    b.     Alan Yatvin. . . . . . . . . . . . . . . . . . . . . . . . . . 63.1 hours x $789 = $49,785.90

    c.     Brian Wolfman.. . . . . . . . . . . . . . . . . . . . . . . 130.8 hours x $789 = $103,201.20

    d.     Amanda Krause. . . . . . . . . . . . . . . . . . . . . . . . 42.5 hours x $179 = $7,607.50

    e.     Bradley Girard. . . . . . . . . . . . . . . . . . . . . . . . . 23.1 hours x $179 = $4,134.90

    f.     Jessica Westerman. . . . . . . . . . . . . . . . . . . . . . . 12 hours x $179 = $2,148.00

    g.     Stephany Reaves. . . . . . . . . . . . . . . . . . . . . . . . 28.8 hours x $179 = $5,155.20

    h.     Michael Mestitz. . . . . . . . . . . . . . . . . . . . . . . . . 25.5 hours x $179 = $4,564.50

40. Counsel has incurred expenses in the amount of $ 1,337.99, as set forth in Exhibit H, pp. 13-14.

41. Parents incorporate the accompanying Memorandum of Law, declarations and exhibits in support of this Motion, as though fully set forth herein.

**WHEREFORE**, M.R. and J.R., Parents of minor child, E.R., pray this Honorable Court

award them counsel fees and costs in the total amount of $ 245,997.44.

Respectfully submitted,

July 17, 2015

**ALAN L. YATVIN**
*Popper & Yatvin*
230 South Broad Street, Suite 503
Philadelphia, PA 19102
(215)546-5700
FAX (215)546-5701
E-mail: *popper.yatvin@verizon.net*

**A-076**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

M.R. and J.R.,
Parents of minor child E.R.,      :      CIVIL ACTION NO. 11-cv-2235
         Plaintiffs,

         :      HON. MITCHELL S. GOLDBERG

         v.

         :

RIDLEY SCHOOL DISTRICT,
         Defendant.      :

**MEMORANDUM IN SUPPORT OF**
**MOTION OF M.R. AND J.R., PARENTS OF MINOR CHILD E.R.,**
**FOR AN AWARD OF COUNSEL FEES AND COSTS**

## I.     FACTUAL AND PROCEDURAL HISTORY

E.R. is a student residing within the Ridley School District ("Ridley"), born in April 2001. She has been identified with specific learning disabilities in the areas of reading decoding and comprehension, math computation and reasoning, written language, writing and spelling; with the additional disability categories of fine motor delay and language disability. She has also been identified as suffering disability in visual perception (including severe deficits in visual memory, visual spatial relationships, visual sequential memory, visual figure ground and visual closure). Plaintiff's Complaint (Document 1), attached hereto as Exhibit A, ¶ 9.

E.R. is a "child with a disability" as defined by the IDEA. M.R. and J.R., are E.R.'s parents and natural guardians. Exhibit A, ¶ 11, 12.

In June of 2008, E.R. was a first grade student in Ridley, attending the Grace Park Elementary School. Exhibit A, ¶ 16.

**A-077**

On June 9, 2008 Ridley convened an IEP team to write/update E.R.'s IEP for the 2008-2009 school year, and thereafter Ridley issued a Notice of Recommended Educational Placement (NOREP) for the 2008-2009 school year.  Exhibit A, ¶ 17.

Ridley had previously issued a NOREP for E.R. to receive Extended School Year (ESY) services at the Benchmark School through the five (5) weeks summer program with supplemental math tutoring at Benchmark.  Exhibit A, ¶ 18.

Parents rejected Ridley's 2008-2009 placement and thereafter enrolled E.R. in the Benchmark School.  Exhibit A, ¶ 19.

Parents filed a Due Process Complaint Notice on December 4, 2008.  Exhibit A, ¶ 20.

Following a multi-day hearing and written submissions of the parties, the Pennsylvania Due Process Hearing Officer issued her decision on April 21, 2009.  Exhibit A, ¶ 21.

The Hearing Officer's ruling included:

4.     The Ridley School District failed to provide an appropriate educational program for [E.R.] for the 2008-2009 school year, and therefore is required to reimburse Mr. and Mrs. [R] for tuition at the Benchmark School, including transportation, for the 2008-2009 school year.

Hearing Officer Decision and Order of April 21, 2009, p. 21.   Exhibit A, ¶ 22.

Ridley appealed the Hearing Officer's Decision to the Pennsylvania Commonwealth Court, from whence Parents removed it to the United States District Court for the Eastern District of Pennsylvania.  *Ridley School District v. M.R. and J.R.*, Civil Action No. 09-cv-02503-MSG, assigned to the Honorable Mitchell S. Goldberg.  Exhibit A, ¶ 23.

The issues relating to the decision of the Hearing Officer were submitted to the District Court by cross-motions for judgment on the administrative record.  Exhibit A, ¶ 24.

**A-078**

On February 14, 2011, the District Court reversed the hearing officer and entered judgment for Ridley on all claims.  Exhibit A, ¶ 25.  The Third Circuit affirmed.

Shortly after this Court ruled, and shortly after Parents filed their notice of appeal, on March 17, 2011, counsel for Parents made demand upon Ridley, by letter mailed and e-mailed to its counsel, for payment for E.R.'s pendent placement, including related services.   Exhibit A, ¶ 27.

On March 25, 2011, counsel for Parents sent a second demand by letter mailed and emailed to counsel for Ridley, clarifying the periods and amounts for which payment for E.R.'s pendent placement was sought.  Exhibit A, ¶ 28.

Later on March 25, 2011, Parents' counsel received a March 24, 2011 letter in the mail from Ridley's counsel declining the request for payment.  Exhibit A, ¶ 29.

The instant action was filed March 29, 2011 to compel Ridley to fund E.R.'s pendent placement from the April 21, 2009 hearing officer decision, through exhaustion of proceedings in federal court.  Exhibit A, ¶ 3 and Count I.

The issues were submitted to the Court on cross motions for judgment on the pleadings. Documents 8, 11, 14, 15, 16, 19.  The Court heard oral argument on the motions on April 4, 2012.

On August 13, 2012, the Court granted judgment in favor of Parents and denied Ridley's motion for judgment on the pleadings, issuing a Memorandum Opinion and Order.  Memorandum Opinion and Order (Documents 23 and 24) attached as Exhibit B, collectively.

On September 14, 2012, the parties stipulated to Parents' expenditures for the pendent placement and related services.  Stipulation (Document 26) attached as Exhibit C.

On October 1, 2012 the Court approved and adopted the stipulation and ordered "that judgment is entered in favor of M.R. and J.R. and against Ridley School District in the amount of

$57,658.38, exclusive of any petition for counsel fees." Order (Document 27) attached hereto as Exhibit D.

Ridley appealed. After briefing and oral argument, on February 20, 2014, the Court of Appeals found in favor of Parents on all issues and affirmed in all respects. *M.R. V. Ridley Sch. Dist.*, 744 F.3d 112 ([3d] Cir. 2014).

On June 20, 2014, Ridley filed a petition for a writ of certiorari with the Supreme Court. The Supreme Court denied the petition for a writ of certiorari on May 18, 2015.

Parents prevailed on all issues and defenses raised in this litigation and were awarded their entire expenditures for the pendent placement and related services – that is, Parents got all the relief they sought in this litigation. Exhibits B and D. Interest continued to accrue on the judgment from the October 2, 2012 entry until the judgment was paid by check dated June 9, 2015. Exhibits F and G.

## II.  ARGUMENT

Section 1415 of the IDEA authorizes Defendant's payment of reasonable attorney's fees and costs to the prevailing party. Fees are based upon the lodestar method of calculation, which is "strongly presumed to yield a reasonable fee." *Washington v. Phila. County Ct. Com. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996). The lodestar is determined by multiplying the number of hours counsel reasonably expended on the case by a reasonable hourly rate. *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001). See also *Reid ex rel. Reid v. School Dist. of Phila.*, 2005 U.S. Dist. LEXIS 1023 *2 (E.D.Pa. 2005). The burden rests on the party requesting the award to establish the "reasonableness" of the "hourly rate and number of hours." *Washington*, 89 F.3d at 1035. To satisfy that burden, "the fee petitioner must submit evidence supporting the rates claimed and the hours

worked. *Interfaith Cmty. Org. v. Honeywell Intern., Inc.*, 426 F.3d 694, 703 n. 5 (3d Cir. 2005).

As for the hourly rate, a reasonable hourly rate is calculated according to the prevailing market rates in the community charged by attorneys of equivalent skill and experience, performing work of similar complexity. *Washington*, 89 F.3d at 1035-36. Parents' counsel can satisfy their burden of demonstrating a reasonable hourly rate in a variety of ways, which will be discussed more fully below.

As for hours worked, the burden is generally satisfied by submitting sufficiently itemized time sheets that document the hours expended. Regarding the documentation, "billing entries need only include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent … [i]t is not necessary to know the...precise activity to which each hour was devoted.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (finding sufficient specificity in a computer-generated time sheet with the duration, "general nature" and "subject matter" of an activity and "the date the activity took place"). See also *Keenan v. City of Phila.*, 983 F.2d 459, 473 (3d Cir.1992) ("computer-generated summaries of time spent by each attorney and paralegal" sufficient). It is then the opposing party's burden to object 'with sufficient specificity' to itemized entries or hours. *Interfaith Cmty. Org.*, 426 F.3d 694, 703 n.5 ($3^d$ Cir. 2005). The court should not exclude hours unless it finds them to be "excessive, redundant, or otherwise unnecessary." *Reid*, 2005 U.S. Dist. LEXIS 1023 at *7 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). Said another way, hours are almost always reasonable unless they are inadequately documented or totally unnecessary. *Id.*

Additionally, the Supreme Court has explained: "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours

A-081

reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. ...  The result is what matters."

*Hensley v. Eckerhart*, 461 U.S. at 435.

## A.   PARENTS ARE PREVAILING PARTIES, ENTITLED TO PAYMENT OF THEIR COUNSEL FEES.

The April 21, 2009 decision of the Due Process Hearing Officer created a judicially sanctioned **agreement** that the private parental placement at the Benchmark School became the Student's pendent placement. 34 C.F.R. § 300.518(d). The sole subject of this litigation was Ridley's unsupportable failure to immediately shoulder its burden to fund Student's agreed placement at Benchmark, an obligation which Ridley concedes (Exhibit B, Memorandum Opinion, p. 18, n. 8.), and to compensate Parents for having failed to do so.  Parents obtained the relief they sought, payment of the amounts expended by them, and overcame the defenses of Ridley, including the claim that the school district, not Benchmark, was the proper stay-put placement.  Accordingly, Parents are entitled to their reasonable attorney's fees and costs as prevailing parties.  20 U.S.C. § 1415(i)(3).

"The Supreme Court has characterized the prevailing party analysis as a 'generous formulation' weighted in favor of awarding fees unless a party's success was purely technical or de minimis." *Dep't of Educ. v. C.B.*, 2012 U.S. Dist. LEXIS 186429, *10 (D. Haw. Sept. 28, 2012), citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989).  Therein the Supreme Court stated:

> The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the

A-082

fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award vel non.

*Id.* at 792-93.

Subsequently, the Supreme Court stated:

In designating those parties eligible for an award of litigation costs, Congress employed the term "prevailing party," a legal term of art. Black's Law Dictionary 1145 (7th ed. 1999) defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded (in certain cases, the court will award attorney's fees to the prevailing party). -- Also termed successful party." This view that a "prevailing party" is one who has been awarded some relief by the court can be distilled from our prior cases.

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603, 121 S. Ct. 1835, 1839, 149 L. Ed. 2d 855, 862 (2001).

The Third Circuit has established a two-pronged test to determine prevailing party status: "First, whether plaintiffs achieved relief, and second, whether there is a causal connection between the litigation and the relief from the defendant." *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 501 (3d Cir. 2012) (internal quotations and citations omitted). To satisfy the first prong plaintiff "must merely secure some of the benefit sought in the lawsuit... To satisfy the second prong, demonstrating causation, a plaintiff must show that litigation was a material contributing factor in bringing about the events that resulted in obtaining the desired relief." *Id.* (internal quotations and citations omitted).

Here, both prongs are satisfied. Parents brought suit "seek[ing] payment for E.R.'s pendent placement at the Benchmark School commencing on April 21, 2009, the date of the decision of the Pennsylvania Due Process Hearing Officer." Complaint, Exhibit A, ¶ 3. And on October 1, 2012, the District Court entered judgment for Parents for all of the repayment that they sought.

Page 7

**A-083**

Document 27.  Ridley cannot and does not contest that this lawsuit led to – and, indeed, was the sole cause of – that result.  And, as if to underscore their status as prevailing parties, following Ridley's unsuccessful petition for a writ of certiorari, Ridley paid Parents the entire judgment, plus statutory post-judgment interest, in the total amount of $ 57,918.45.  Exhibits F and G.

In its response to the original fee motion (Document 35), Ridley relied upon *John T. ex rel. Paul T. v. Del. County Intermediate Unit*, 318 F.3d 545, 555 (3d Cir. 2003) and *J.O. v. Orange Township Bd. of Ed.*, 287 F.3d 267 (3d Cir. 2002), in arguing Parents were not prevailing parties.  Those cases are factually and procedurally inapposite.  As the Court of Appeals has more recently explained, "'stay put' orders **which merely serve to maintain the status *quo pendente lite*** do not afford meaningful relief on the merits of the underlying claims and will not suffice." *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232 (3d Cir. Pa. 2008).  "Unlike in *John T. ex rel. Paul T.*, 318 F.3d at 558-59, the Court's [judgment] in this case did not simply maintain the status quo."  *Id.* at 234.

Likewise, this litigation does not present the question of maintaining the status quo.  Rather, this case concerned solely Ridley's failure to live up to its legal obligation to honor its agreement that Benchmark was E.R.'s pendent placement.  This litigation was brought to enforce that agreement and repay Parents for their expenditures, and resulted in a ruling that the agreement was binding and not waived, and that Benchmark was the proper pendent placement, so that Parents were entitled to judgement in their favor in the amount of $57,658.38.  The relief awarded in this case, repayment to Parents of the amounts expended by them due to Ridley's breach of its agreement under the IDEA, was not temporary or conditional.

Page 8

**A-084**

Put another way, before the litigation was instituted the Parents had been paying the costs of the pendent placement at Benchmark.  Ridley had refused to pay despite the Parents' demand.  The litigation was brought to require Ridley to pay the costs on the ground that the IDEA required Ridley to do so.  This Court and the Court of Appeals agreed with Parents that the IDEA required exactly what the Parents sough.  As a result, the money has now been paid by Ridley to the Parents.  This case is thus a classic example of a lawsuit that has "create[d] the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604 (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792-93, 103 L. Ed. 2d 866, 109 S. Ct. 1486 (1989)).

## B.   THIS COURT SHOULD UTILIZE BILLING RATES OF $625 and $789  PER HOUR FOR MR. YATVIN.

There are a number of ways that an applicant attorney can establish the prevailing market rate, including but not limited to: (1) the applicant attorneys' customary billing rate for fee-paying clients, (2) affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates, (3) current surveys of customary rates, (4) the amounts awarded counsel with similar experience in other litigation, and (5) the amounts awarded for the services of counsel in prior litigation.  See *Mitchell v. City of Philadelphia*, No. 99-6306, 2010 U.S. Dist. LEXIS 32984, *41-42 (E.D.Pa. Apr. 5, 2010) (Tucker, J.) quoting 10 James Wm. Moore et al., *Moore's Federal Practice* 54.190 (3d ed. 2009).   All of these above-described methods for establishing the prevailing market rate support utilizing a billing rates of $625 and $789 per hour for Mr. Yatvin.

1.     **For Fee-Paying Clients, Mr. Yatvin Bills At A Rate Of $625 Per Hour.**

To determine a billing rate for a fee petition, "the Third Circuit has instructed Courts [in the first instance] to look to the applicant attorneys' customary billing rate for fee-paying clients at the time the fee petition was filed." *Ellis v. Ethicon, Inc.*, 2010 U.S. Dist. LEXIS 18455 *8 (D.N.J. Mar. 1, 2010), citing *Lanni v. N.J.*, 259 F.3d 146, 149 (3d Cir. 2001).  See also *Student Public Interest Research Group of New Jersey, Inc. v. AT & T Bell Laboratories*, 842 F.2d 1436, 1445 (3d Cir. 1988) ("[t]he reasonable value of an attorney's time is the price that time normally commands in the marketplace, which is generally reflected in the attorney's normal billing rate."); *Black Grievance Comm. v. Philadelphia Elec. Co.*, 802 F.2d 648, 652 (3d Cir. 1986), vacated on other grounds, 483 U.S. 1015 (1987).

In non-contingency cases, Mr. Yatvin ordinarily bills clients at a rate of $625 per hour.  See Declaration of Alan L. Yatvin, attached hereto as <u>Exhibit I</u>.[2]  These customary billing rates create a presumption of reasonableness.  *Loughner v. University of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).  Additionally, Mr. Yatvin has received fees in other  fee shifting matters based upon a billing rate of $625 per hour.  See Yatvin Declaration, <u>Exhibit I</u>.

2.     **The Declarations of Experienced and Respected Civil Rights, Special Education and Other Attorneys Demonstrate That The Rates Of $625 and $ 789 Per Hour for Mr. Yatvin Falls Well Within The Customary And Prevailing Rates Charged By Other Attorneys Of Comparable Skill, Experience And Reputation In The Philadelphia Community.**

The Third Circuit has held that fee applicants can establish the prevailing market rate by "submitting affidavits of other attorneys in the relevant legal community attesting to the range of

---

[2]In this case, the <u>2008</u> fee agreement with Parents stated that Mr. Yatvin's hourly rate was $525 per hour and Parents paid a retainer based upon said $525 hourly rate.  <u>Exhibit V</u>.  Mr. Yatvin's rate has increased in the intervening 6 ½ years.

prevailing rates charged by attorneys with similar skill and experience." *S.D. v. Manville Bd. of Educ.*, 989 F. Supp. 649, 656 (D.N.J. 1998), citing *SPIRG v. AT & T Bell Laboratories*, 842 F.2d 1436, 1450 (3d Cir. 1988).

Instantly, to support Mr. Yatvin's billing rate, Parents have attached declarations from well respected practitioners in the Philadelphia community and beyond, including David Rudovsky (Exhibit K), Paul Messing (Exhibit L), Franca Palumbo (Exhibit M), Michael Basch (Exhibit N), Kenneth S. Cooper (Exhibit O), Carlton L. Johnson (Exhibit P), Slade McLaughlin (Exhibit Q), Michael G. Karnavas (Exhibit R), Shereen Arent (Exhibit S), Professor Ellen Yaroshefsky (Exhibit T), and Dennis McAndrews (Exhibit U). These attorneys are well acquainted with Mr. Yatvin and attest to his qualifications, skills and experience. Some of the declarants are also familiar with the prevailing market rates for attorneys of Mr. Yatvin's qualifications, skills, and experience. As the declarations demonstrate, an hourly rate of $625 is well within the prevailing rate in the Philadelphia community for services by lawyers of reasonably comparable skill, experience and reputation, while $789 is within the prevailing rate for Supreme Court litigation. See Declaration of Brian Wolfman (Exhibit E); Jeffrey Lamken (Exhibit E-9); Adjusted Laffey Matrix (Exhibit E-8).

Mr. Yatvin's declaration also provides some background information regarding his education, training, experience, and hourly rate. Exhibit I. In summary:

- ♦     In private practice in Philadelphia, Pennsylvania and a partner in the law firm of *Popper & Yatvin*. Engaged in the practice of law since 1983.

- ♦     1983 graduate of the Benjamin N. Cardozo School of Law, where selected as: a Samuel Belkin Scholar, a member of the Criminal Law Clinic, a member of the F. Lee Bailey Moot Court Team, and to deliver the student commencement address.

- ♦     Member of the bars of the Supreme Court of Pennsylvania, United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for

Page 11

**A-087**

the Third Circuit, the United States Court of Appeals for the Eleventh Circuit (inactive) and the United States Supreme Court.  Also admitted to practice before the United Nations International Criminal Tribunal for the Former Yugoslavia (ICTY) in The Hague, The Netherlands, and the Extraordinary Chambers in the Court of Cambodia (ECCC) in Phnom Pehn, Cambodia.

♦   Prior to co-founding *Popper & Yatvin* in 1988, served as an assistant Philadelphia and Federal Defender in the Defender Association of Philadelphia.

♦   Practice has included hundreds of both civil and criminal non-jury and jury trials, appeals, administrative hearings, and other adversary proceedings, in state and federal forums, mostly in Pennsylvania, but also including *pro hac vice* admissions in U.S. District Courts in Florida and New Jersey.

♦   Has tried all manner of cases, in both Federal and State Courts, including death penalty homicides, and complicated police misconduct *Monell* cases.  Has also been counsel in class actions which were resolved favorably to the class prior to trial.

♦   Has briefed and/or argued matters before the Third Circuit Court of Appeals, the Pennsylvania Supreme Court, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, the Eleventh Circuit Court of Appeals, the United States Supreme Court (certiorari) and the Appeals Chamber of the United Nations International Criminal Tribunal for the Former Yugoslavia.

♦   A frequent presenter and course planner at CLEs, including presenting for the Pennsylvania Bar Institute on an almost annual basis for more than a decade, on topics including civil rights, rights of students with disabilities and criminal law.

♦   The Board of Judges for the First Judicial District of Pennsylvania (FJD) has named and renamed as Chair of the Philadelphia Court Appointments Certification Committee, which certifies counsel to represent indigent criminal defendants, a position held for over two decades.

♦   Member of the Editorial Advisory Board of *The Legal Intelligencer* for more nearly two decades.

♦   Has taught trial advocacy to law students at The Cardozo School of Law of Yeshiva University, Intensive Trial Advocacy Program, since 1986.  See Declarations of Professor Ellen Yaroshefsky (Exhibit T) and Michael Karnavas (Exhibit R).

♦   Named Member of the National Board of Directors of the American Diabetes Association in December 2014.  Served three year term as the National Legal Advocacy Chair, the Association's lead volunteer on legal issues involving persons

with diabetes, including discrimination in employment, public accommodations, driving, prisons, police and, most significantly, the rights and needs of children with diabetes in schools. Directly involved in the Association's decision making on matters of the Association's litigation, amicus filings, allocation of resources, legislation and rule making. A recipient of the 2007 American Diabetes Association Volunteer Leadership Professional Award for work as lead counsel in *Rosen v. City of Philadelphia* a class action on behalf of persons with diabetes who come into the custody of the Philadelphia Police Department. See also Declaration of Shereen Arent (Exhibit S).

♦ In 1999 *Philadelphia Magazine* named as one of Philadelphia's Best Lawyers.

♦ Named a Pennsylvania Super Lawyer in the area of Civil Rights every year since the survey's inception in 2004, including 2015.

♦ Recipient of the First Judicial District of Pennsylvania 2010 *Pro Bono Publico* Award.

♦ Serve as an elected member of the Membership Committee of the Association of Defence Counsel (ADC), the approved and mandatory bar association of the United Nations International Criminal Tribunal for the Former Yugoslavia in The Hague, The Netherlands, from 2007 - 2011, 2013-2015, including currently servicing third term as Chair.

♦ In 2010 was recognized by Martindale-Hubbell for 15 years with an A-V rating, which is the highest rating available for both professional competence and ethical integrity. Has received A-V rating in each successive year, including 2015.

♦ Philadelphia special education colleagues seek out for consultation and referrals on special education matters that are unusual, complicated, have a damages component, or which appear likely to involve federal litigation at some stage. See Declarations of Franca Palumbo (Exhibit M), Michael Basch (Exhibit N) and Kenneth Cooper (Exhibit O).

♦ Recognized state and nationwide for expertise in rights of students with disability in the area of students with diabetes. Declaration of Shereen Arent (Exhibit S).

♦ Co-author of authoritative Position Statements by the American Diabetes Association: Jackson C, Albanese-O'Neill A, Butler K, Chiang J, Kraus E, Hathaway K, Weissberg-Benchell J, Yatvin A, Deeb L, Siminerio L., Diabetes Care in the School Setting, *Diabetes Care* (anticipated publication date October 2015); and

Page 13

**A-089**

> Siminerio L, Albanese-O'Neill A, Chiang J, Hathaway K, Jackson C, Weissberg-Benchell J, Wright J, Yatvin A, & Deeb L, Care of young children with diabetes in the child care setting: a position statement of the American Diabetes Association. *Diabetes Care* 2014;37:2834–2842.

- ♦ This Court's review of the hearing officer decision, and the appeal thereof, represent the only time Mr. Yatvin has ultimately lost a special education matter. All other special education cases have resulted either in decisions for clients or in settlements favorable to clients.

- ♦ Charges a retainer fee in special education cases of usually four (4) to ten (10) hours, at the rate of $625/hour, which rate is specifically set forth in fee agreements, with the balance of the fee to be sought from the school or school district if prevailing party.

- ♦ In this case, Parents were unable to pay the full requested retainer in November 2008, due to the burden of the Benchmark School tuition. Accordingly, accepted a retainer equal to 1.9 hours at rate of $525/hour, which rate was specifically set forth in the agreement. Exhibit V.

- ♦ *J.K. v. School District of Philadelphia*, E.D.Pa. 07-1523, and *W.H. v. School District of Philadelphia*, E.D.Pa. 07-2476, settlement was based upon counsel's hourly rate of $525/hour, with the gross fee amounts in *J.K.* compromised for the purpose of settlement of both actions in June 2008. In *J.K.*, the Court approved the settlement on behalf of the minor student, pursuant to a petition filed under E.D.Pa. Loc. R. 41.2.

Based upon Mr. Yatvin's experience and skill level, and billing rate, as evidenced by his affidavit and those of other experienced attorneys who practice in the community, Mr. Yatvin's customary billing rate of $625 per hour for District Court and Court of Appeals litigation, and his rate of $789 per hour for Supreme Court litigation, are clearly reasonable and appropriate.

### 3. Courts Have Also Adopted Comparable Rates For Attorneys Who Have Experience Similar To That Of Mr. Yatvin.

In determining reasonable hourly rates, courts sometimes also look to see what other attorneys with comparable experience have been awarded in the course of litigation. See *Mitchell supra*, at *41-42. Based upon what other courts have awarded attorneys with comparable

experience, it is clear that the hourly rate charged by Mr. Yatvin is reasonable and well within the prevailing market rate in the Philadelphia community for experienced attorneys like him.   See, e.g., *In re Budeprion XL Mktg. & Sales Litig.*, 2012 U.S. Dist. LEXIS 91176 (E.D. Pa. July 2, 2012) (awarding attorneys fees up to a rate $700 for lead counsel and partners); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241 (E.D.Pa. 2011) (awarding attorney's fees at a rate of $650); *Serrano v. Sterling Testing Systems, Inc.*, 711 F.Supp.2d 402 (E.D. Pa. 2010) (awarding attorney's fees in a consumer protection case at a rate as high as $650 per hour); *McAlarnen v. Swift Transp. Co., Inc.*, 2010 U.S. Dist. LEXIS 7877 (E.D.Pa., Jan. 29, 2010) (awarding fees as high as $575 per hour); *Plevretes v. La Salle Univ.*, Civil Action No. 07-5186 (E.D.Pa. 2008) (McLaughlin, J.) (awarding attorney's fees in a removal contest as high as $640 per hour).[3]

In light of these rates, $625 per hour is an eminently reasonable hourly rate for an attorney with the experience, skill and qualifications of Mr. Yatvin.

### 4.    Survey Data Also Supports The Billing Rates Of Mr. Yatvin.

Survey data also establishes that the rate charged by Mr. Yatvin falls well within the customary rates charged by attorneys of comparable status and expertise. A 2008 National Law Journal survey, cited approvingly by the Court in *Mitchell, supra*, at *42 n.12 documented that:

> Blank Rome has a "Partner Billing Rate Low" of $425, and a "Partner Billing Rate High" of $785, with an average hourly rate of $525.  Cozen O'Connor reports a range of $240 to $640, with an average of $457.  Duane Morris reports a range of $340 to $755, with an average of $490. Fox Rothschild reports a range of $250 to $590, with an average of $443. Montgomery, McCracken, Walker & Rhoads reports a range of $360 to $585, with an average of $440.  Finally, Pepper Hamilton reports a range from $385 to $795, with no average reported.

---

[3]The January 15, 2008 Order of the Honorable Mary A. McLaughlin is attached as Exhibit W.

Page 15

A true and correct copy of this survey is attached hereto as <u>Exhibit X</u>.[4]  Clearly, by those standards, Alan Yatvin, who has nearly three decades of relevant litigation experience is justified in charging $625 per hour for his time.  To hold otherwise would be to devalue federal special education and disability rights litigation to that of second-class status.

An hourly billing rate of $625 is also reasonable when compared with the Adjusted or Updated Laffey Matrix.  <u>Exhibit E-8</u>.[5]  The original Laffey Matrix was generated by the United States Attorney's Office applying the rates determined by the court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983) (wherein the court compared the rates of attorneys practicing under federal claims with fee-shifting provisions to reach a hybrid rate), and recalculating for inflation rates in subsequent years.   The Adjusted or Updated Laffey Matrix utilizes the Consumer Price Index for U.S. City Average, Legal Services Fees, to bring the Laffey rates forward, and has been deemed a more accurate methodology than the Washington, DC Metro Consumer Price Index used by the U.S. Attorney's Office.  As the Court of Appeals for the Federal Circuit has explained:

> The "Updated Laffey Matrix" is a billing survey of District of Columbia market rates. The survey was conducted in 1988-1989 and has been recalculated in subsequent years using a methodology advocated by economist Dr. Michael Kavanaugh. The Updated Laffey Matrix has been used by the United States District Court for the District of Columbia to determine the amount of a reasonable attorney fee on several occasions. See, e.g., *Salazar v. District of Columbia*, 123 F.Supp.2d 8, 15

---

[4]The 2010 version of the survey, attached hereto as <u>Exhibit Y</u>, reports the following partner rates:  Blank Rome: high: $855, low $440, average $615; Cozen O'Connor: high $880, low $310, average $497; Duane Morris: high $850, low $240, average $550; Fox Rothschild: high $690, low $315, average $473; Pepper Hamilton: high $825, low $420, average $547; Saul Ewing: high $800, low $320, average $491; Montgomery McCracken: high $625, low $380, average $461.  (Counsel apologizes for the poor quality of the copy).

[5]<u>http://www.laffeymatrix.com/see.html</u> (Last viewed July 16, 2015). <u>Exhibit E-8</u>.

Page 16

**A-092**

(D.D.C.2000) ( "[T]he Court concludes that the updated Laffey matrix more accurately reflects the prevailing rates for legal services in the D.C. community.").

*Bywaters II*, 670 F.3d 1221, 1226 n. 4 (Fed. Cir. 2012).

The Third Circuit Court of Appeals has approved the Adjusted Laffey Matrix. *Interfaith Community Organization v. Honeywell International, Inc.*, 426 F.3d 694 (3d Cir. 2005). ("In updating the matrix to account for inflation from 1989-2003, ICO relied on the legal services component of the nationwide Consumer Price Index ('the Legal Services Index'), a measure of inflation in the cost of legal services maintained by the Bureau of Labor Statistics."). The Court of Appeals noted that the District Court "reviewed both indices [the DOJ Matrix and the Adjusted Laffey Matrix] and decided that [the Adjusted Laffey Matrix] represented a better measure of prevailing rates in Washington, DC. In so doing, it relied on a decision by the District Court for the District of Columbia, *Salazar v. District of Columbia*, 123 F.Supp.2d 8 (D.D.C.2000)..."

Although the Updated/Adjusted Laffey Matrix relates most directly to Washington, DC area billing rates, as the National Law Journal survey demonstrates, there is sufficient overlap between the Philadelphia firm partner billing rates and the DC firm rates, to make the Updated/Adjusted Laffey Matrix a relevant supporting reference. Indeed, under the Updated/Adjusted Laffey Matrix, the $625/hour rate sought here would have been the rate for an attorney of Mr. Yatvin's experience in 2007-2008, or less than the 2015 rate for an attorney of about one-third (1/3) Mr. Yatvin's years in practice. Under the Adjusted Laffey Matrix attorneys with far less experience than Mr. Yatvin (as little as 20 years) are entitled to a rate of $789 per hour. The Adjusted Laffey Matrix also demonstrates the reasonableness of the rate of $789 per hour sought by Mr. Yatvin and Brian Wolfman in connection with the time spent on the Supreme Court litigation in this matter.

Page 17

On September 12, 2014, Philadelphia Community Legal Services ("CLS") issued a new fee schedule.[6] Under the CLS fee schedule, the fee range for an attorney with more than 25 years experience (Mr. Yatvin has nearly 33) is $600-$650 per hour. The CLS fee schedule has been found by the courts of the Third Circuit to be a "fair reflection of the prevailing market rates in Philadelphia." *Swaayze v. Philadelphia Housing Auth.*, 1992 U.S. Dist. LEXIS 5166 *5 (E.D.Pa. Apr. 16, 1992). See also *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001); *Jodlowska v. Soar Corp.*, 2015 U.S. Dist. LEXIS 34087, *8-9 (E.D. Pa. Mar. 17, 2015); *Rainey v. Philadelphia Housing Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993).[7]

## C. THIS COURT SHOULD UTILIZE BILLING RATES OF $789 PER HOUR FOR BRIAN WOLFMAN.

Brian Wolfman, currently a co-director of the Supreme Court Litigation Clinic at Stanford Law School, is an experienced and respected Supreme Court litigator. As more fully set forth in his declaration (Exhibit E), Mr. Wolfman has extensive relevant education, training, and experience:

♦ A 1984 graduate of Harvard Law School, he was a law clerk of a judge of the United States Court of Appeals for the Eleventh Circuit.

♦ From early 1990 until mid-2009, he was a lawyer at Public Citizen Litigation Group (PCLG), a public-interest law firm and the legal arm of Public Citizen, a non-profit advocacy group based in Washington, D.C. For his last five-and-a-half years at PCLG, he served as PCLG's Director and general counsel to Public Citizen. Served as director of PCLG's Supreme Court Assistance Project (SCAP).

---

[6]*See Attorney Fees*, CMTY. LEGAL SERVS. OF PHILA., *http://www.clsphila.org/about-cls/attorneyfees,* (last visited, July 8, 2015), attached as Exhibit Z.

[7]Attached as Exhibit J is the July 15, 2015, Opinion of the Honorable Gerald J. Pappert, in *Lyons v. Gerhard's Inc.*, 14-cv-6693-GJP (E.D.Pa. 7/15/15), wherein the court approved a rate of $650 per hour for an attorney in practice for 25 years, in reliance on the CLS fee schedule. *Id.* at 8-9.

♦  From mid-2009 through August 2014, was a visiting professor at Georgetown University Law Center (GULC) and a co-director of a clinic called the Institute for Public Representation, including Supreme Court litigation.

♦  In September 2014, became the Edwin A. Heafey, Jr. Visiting Professor at Stanford Law School and, as noted earlier, a co-director of that school's Supreme Court Litigation Clinic, exclusively focusing on Supreme Court litigation.

♦  In all but three years since 2004, taught a three-credit course on appellate courts during the January term at Harvard Law School. Also taught a similar course about fifteen times since 1995 at other law schools (American, Georgetown, and Stanford).

♦  Frequent "justice" in moot courts at GULC's Supreme Court Institute, which provides moot courts for arguing counsel in nearly 100% of all cases heard on the merits each year before the Supreme Court.

♦  Principal lawyer on approximately two dozen petitions for a writ of certiorari; about the same number of Supreme Court merits briefs; about three dozen oppositions to certiorari; and about a dozen amicus briefs. Was co-counsel to PCLG colleagues in many dozen other cases. Provided substantial legal advice and litigation assistance to other lawyers around the country in about 150 Supreme Court cases.

As discussed above, the courts of this Circuit have accepted the Adjusted Laffey Matrix. In the case of Brian Wolfman, whose work in this case was performed in connection with litigation before the Supreme Court, the Adjusted Laffey rate is $789. As noted above, attorneys with as little as 20 years experience (far less than Mr. Wolfman) are entitled to that rate.

Indeed, the billing rate for an experienced Supreme Court practitioner in Washington, D.C., with 30 years of litigation experience like Mr. Wolfman, generally is greater than $789 per hour. See Declaration of Jeffrey A. Lamken ¶ 12 (July 14, 2015) (Supreme Court practitioner stating that the $789 per hour Laffey rate requested for my time is lower than his rate and lower than "the rate charged by many other Supreme Court practitioners with similar credentials"). Exhibit E-9.

Page 19

**A-095**

## D. THIS COURT SHOULD UTILIZE A BILLING RATE OF $179 PER HOUR FOR LAW STUDENTS.

As discussed above, the courts of this Circuit have accepted the Adjusted Laffey Matrix. In the case of the law students, whose work was performed in connection with litigation before the Supreme Court, the Adjusted Laffey rate of $ 179 is appropriate.[8]  See also Wolfman Declaration (Exhibit E).

## E. THE ATTORNEY AND LAW STUDENT TIME IS REASONABLE.

It must be emphasized that the Parents prevailed fully on their claim and against every defense in this action to compel payment of their pendent placement costs, including the issue not previously addressed by our Court of Appeals or the Supreme Court – whether pendent placement continues through exhaustion of appeal.  Exhibit B, p. 24;  *M.R.  V. Ridley Sch. Dist.*, 744 F.3d 112 (3[d] Cir. 2014).  As a result of counsels' efforts, Parents have been compensated for their full expenditures for the pendent placement and related services from the date of the hearing office decision, through exhaustion of the appeal.  Exhibits D, F, G.  Such "complete relief", "constituting total accomplishment of the aims of the suit", is an "excellent result" entitling counsel to a "fully compensatory fee", which should not be reduced.  *Hensley*, 461 U.S. at 431-432, 435.

In considering fee petitions, courts have routinely held that the following activities relevant to this action are compensable:

◆Time spent prior to filing the proceeding, *Dowdell v. Apopka*, 698 F.2d 1181, 1188 (11th Cir. 1993);

◆Conferences and organizing case files, *Dowdell v. Apopka*, 698 F.2d 1181, 1188 (11th Cir. 1993);

───────────────────

[8]Under the CLS Chart, the law student range for Philadelphia is $90-145.  Exhibit Z.

◆Background research, attorney discussions, strategy sessions, and settlement negotiations, *Tobin v. Gordon*, 614 F.Supp.2d 514, 521 (D. Del. 2009);

◆Routine activities such as making telephone calls and reading mail related to the case, *Tobin v. Gordon*, 614 F.Supp.2d 514, 521 (D. Del. 2009);

◆Travel time, *Danny Kresky v. Magid*, 716 F.2d 215, 217-18 (3d Cir. 1983); *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984) (travel time should ordinarily be billed at the attorney's full rate since the opportunity cost to the lawyer for an hour of travel time is the same as any other hour);

◆Attorney consults, *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 Fed.Appx. 93, 99, 2006 U.S. App. LEXIS 22671 (3d Cir. 2006) (non-precedential) (upholding an award of attorney's fees for attorney consults);

◆Legal research, *M.S.R. Imports, Inc. v. R.E. Greenspan Co., Inc.*, 574 F. Supp. 31, 34 (E.D. Pa. 1983) (noting "good legal research, particularly personal research by a trial attorney, is the lifeblood of the law.");

◆Time expended in pursuit of a fee award, *Maria C. v. Sch. Dist.*, 142 Fed. Appx. 78, 82-83, 2005 U.S. App. LEXIS 15687 (3d Cir. 2005) (non-precedential); *Planned Parenthood of Cent. New Jersey v. Attorney General of State of New Jersey*, 297 F.3d 253, 268 (3d Cir. 2002); *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978) ("Indeed, courts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent on the fee application and successful fee appeals."); *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 537 (3d Cir. 1997); *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1190 (3d Cir. 1995).

As a result of this litigation, Mr. Yatvin has incurred 172 hours of reasonable and necessary billable time. His time sheets are attached hereto as <u>Exhibit H</u>.   Mr. Wolfman has incurred 130.8 hours of reasonable and necessary billable time.  His time sheets are attached hereto as <u>Exhibit E-1</u>.  Law Students have collectively incurred 131.9 hours of reasonable and necessary billable time. Their time sheets are attached hereto as Exhibits E-3 through E-7.   The hours expended and the hourly rates requested are reasonable.

Accordingly, the attorney's fees to date should be calculated as follows:

Alan Yatvin. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108.9 hours x $625 = $68,062.25

Alan Yatvin. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  63.1 hours x $789 = $49,785.90

Brian Wolfman.. . . . . . . . . . . . . . . . . . . . . . . . . . .  130.8 hours x $789 = $103,201.20

Amanda Krause. . . . . . . . . . . . . . . . . . . . . . . . . . . .   42.5 hours x $179 = $7,607.50

Bradley Girard. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23.1 hours x $179 = $4,134.90

Jessica Westerman. . . . . . . . . . . . . . . . . . . . . . . . . . . 12  hours x $179 = $2,148.00

Stephany Reaves. . . . . . . . . . . . . . . . . . . . . . . . . . . . 28.8 hours x $179 = $5,155.20

Michael Mestitz. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25.5 hours x $179 = $4,564.50

Total:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 244,659.45

## F.    PARENTS' LITIGATION COSTS ARE COMPENSABLE.

Parents incurred the litigation cost of the District Court Filing Fee, in the amount of $350.00. See Docket, entry 1, 3/29/11. Parents also seek the cost of printing and delivering their brief in opposition to the petition for writ of certiorari and travel expenses associated with litigating opposition to the petition for writ of certiorari.  These expenses for which Parents seek recovery fall under the category of "litigation costs" are routinely reimbursable under the IDEA.  As such, Parents are entitled to reimbursement for these requested expenses in the total amount of $1,337.99. Exhibit H, pp. 13-14.

III.     **CONCLUSION**

For the reasons set forth herein, in the exhibits, and for such other and further reasons as the

Court deems just and proper, J.R. and M. R. pray that this Honorable Court grant the Motion for

Award of Fees and award them counsel fees and expenses in the total amount of $ 245,997.44.

Respectfully submitted,

July 17, 2015

_____

**ALAN L. YATVIN**

**A-099**

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving the foregoing, along with exhibits thereto, upon the persons and in the manner indicated below.

_____
Alan L. Yatvin

Service by ECF and First Class Mail, Pre-paid, as follows:

Dated:          July 17, 2015

TO:             John F.X. Reilly, Esquire
                101 West Baltimore Avenue
                Second Floor
                Media, PA 19063

Re: Ridley v. MR                      mailbox:///C:/Users/Alan/AppData/Roaming/Thunderbird/Profile...

Case: 16-2465      Document: 003112449116      Page: 92      Date Filed: 10/28/2016

**Subject:** Re: Ridley v. MR
**From:** "John F.X. Reilly" <reillyjfx@gmail.com>
**Date:** 6/3/2015 9:42 AM
**To:** Alan Yatvin <alan.yatvin@verizon.net>

Alan: The check will go out on June 9.

John

On 5/27/15 9:11 AM, "Alan Yatvin" <alan.yatvin@verizon.net> wrote:

  John-

 As I stated, the amount due on the judgment as of this date is **$57,918.45**.  I arrived at this figure using an online post-judgment interest calculator (http://postjudgmentinterest.com/index.php) which yielded the following:

**Post-Judgment Interest Calculations**

The judgment principal on 10/2/2012 was $57,658.38.

 $98.02 interest accrued at 0.17% on the $57,658.38 principal for 365 days. Interest was compounded on 10/2/2013 resulting in interest of $0.00, a principal of $57,756.40, and a total value of $57,756.40.

 $98.19 interest accrued at 0.17% on the $57,756.40 principal for 365 days. Interest was compounded on 10/2/2014 resulting in interest of $0.00, a principal of $57,854.59, and a total value of $57,854.59.

 $63.86 interest accrued at 0.17% on the $57,854.59 principal for 237 days resulting in interest of $63.86, a principal of $57,854.59, and a total value of $57,918.45.

 Judgment value as of 5/27/2015: $57,918.45.

**Territory**: Federal (US)
**Calculation method**: Compound (fixed)
**Statute of Limitations**: 20 years
**Applicable rule**: 28 U.S.C. 1961(a)

If payment is made within the next 15 days, you may use this number.  Payment should

**A-101**

Re: Ridley v. MR                                    mailbox:///C:/Users/Alan/AppData/Roaming/Thunderbird/Profile...

Case: 16-2465     Document: 003112449116     Page: 93     Date Filed: 10/28/2016

be sent to my office at the below address.

 As we also discussed, the unaudited fees and costs, to date, are approximately $244,000.  I am, of course, available if you would like to discuss a compromise resolution of that claim.  In the meantime, I will be filing a motion requesting a 30 day extension of the time to file the amended fee petition, which extension you do not oppose.

 Thank you.

**_Alan_**

--

### POPPER  &  YATVIN

 230 S. Broad Street, Suite 503
 Philadelphia, PA  19102
 (215) 546-5700
 FAX (215) 546-5701
 _Alan.Yatvin@verizon.net_ <_mailto:Alan.L.Yatvin@verizon.net_>
_Popper.Yatvin@verizon.net_
_Web Site:_  _http://popperyatvin.com/_ <_http://popperyatvin.com/_>
_Our Blog:_  _http://www.popperyatvin.com/blog/_

 This Electronic Message contains information from the law firm of _Popper & Yatvin_
which may be privileged.  The information is intended for the use of the addressee only.  If you
 are not the addressee, note that any disclosure, copy, distribution or use of
 the contents of this message is prohibited.

--
John F.X. Reilly
Attorney-at-Law
230 N. Monroe St.
Media, PA 19063-2908
610-565-0975

**A-102**



**Ridley School District**
**General Fund**
901 Morton Avenue, Suite 100
Folsom, PA 19033

**Wells Fargo**
Wells Fargo Bank, N.A.

11-24/1210

CHECK DATE
06/09/15

123397

PAY THE SUM OF *****57918* DOLLARS AND *45* CENTS

AMOUNT    $****57,918.45*

Void After 180 Days

TO THE    M        R        AND  J        R
ORDER
OF

*Cynthia Cherkas*

⑈⑈123397⑈⑈ ⑈:                    ⑈⑈

A-103