# No. 16-2465

---

# In the United States Court of Appeals for the Third Circuit

---

M.R. AND J.R., PARENTS OF E.R., A MINOR,

Appellants,

v.

RIDLEY SCHOOL DISTRICT,

Appellee.

---

*APPEAL FROM THE ORDER ENTERED BY THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA, THE
HONORABLE MITCHELL S. GOLDBERG,
ON APRIL 28, 2016 AT 2:11-cv-02235.*

---

## BRIEF FOR APPELLEE RIDLEY SCHOOL DISTRICT

---

JOHN F.X. REILLY
*Attorney-at-Law*
230 N. Monroe St.
Media, PA 19063-2908
(610) 565-0975
*Attorney for Ridley School District*

# TABLE OF CONTENTS

Table of authorities ................................................................................. ii

Statement of the issue presented .............................................................. 1

Statement of related cases and proceedings ............................................. 1

Statement of the case ............................................................................... 1

   A.  Legal Framework ............................................................................ 1

   B.  Factual Background And Procedural History .................................. 3

       1.  IEP Merits Litigation ................................................................ 3

       2.  Stay-Put Litigation ................................................................... 4

Summary of argument ............................................................................... 7

Standard of review ................................................................................... 7

Argument .................................................................................................. 8

   Binding circuit precedent forecloses appellants' claim that they are "prevailing parties" entitled to attorney's fees under the IDEA. ......................... 8

   A. The district court correctly applied circuit precedent denying attorney's fees for obtaining stay-put relief. ................................... 9

   B. Parents' arguments for disregarding circuit precedent are unavailing. ........ 14

       1.  Parents cannot distinguish *J.O.* or *John T.* and their reliance on other out-of-circuit decisions is misplaced. ........................................ 15

       2.  Parents' arguments ignore the fact they obtained only interim stay-put relief. ................................................................ 17

       3.  The Secretary of Education's 2006 rulemaking disclaims any relevance to the facts here and does not provide clear notice of fee-shifting liability. ....................................................... 20

Conclusion ............................................................................................... 23

Certifications ........................................................................................... 24

# TABLE OF AUTHORITIES

## STATUTES

20 U.S.C. § 1400(d) ............................................................................................... 2
20 U.S.C. § 1415(*i*)(3)(B) ................................................................................... 3
20 U.S.C. § 1415(j) ........................................................................................... 1, 2

## CASES

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006) ........ 21, 22
*Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158 (2015) .................................. 8
*Board of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d
   464 (7th Cir. 1996) ...................................................................................... 15
*Board of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377 (7th Cir. 2000) ............... 15
*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human
   Res.*, 532 U.S. 598 (2001) ...................................................................... 8, 18, 19
*D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488 (3d Cir. 2012) ........... 18
*Deptford Twp. Sch. Dist. v. H.B. ex rel. E.B.*, 279 F. App'x 122 (3d. Cir. 2008)... 19
*Drinker v. Colonial Sch. Dist.*, 78 F.3d 859 (3d Cir. 1996) ................................ 5, 13
*General Elec. Co. v. EPA*, 53 F.3d 1324 (D.C. Cir. 1995) ..................................... 22
*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ............................................................ 22
*Heckler v. Chaney*, 470 U.S. 821 (1985) ............................................................. 20
*Honig v. Doe*, 484 U.S. 305 (1988) ......................................................................... 2
*INS v. St. Cyr*, 533 U.S. 289 (2001) .................................................................... 22
*J.O. v. Orange Township Bd. of Educ.*, 287 F.3d 267 (3d. Cir. 2002) ............. passim
*John T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545 (3d Cir. 2003) ............ passim
*M.R. v. Ridley Sch. Dist.*, 744 F.3d 112 (3d Cir. 2014) .......................... 1, 4, 14, 18
*Maine Sch. Admin. Dist. No. 35 v. Mr. R.*, 321 F.3d 9 (1st Cir. 2003) ................... 15
*P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848 (3d Cir. 2006) ................................. 7
*People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008)
   ............................................................................................................... 19
*Ridley Sch. Dist. v. M.R.*, 680 F.3d 260 (3d Cir. 2012) ........................... 1, 4, 18, 20
*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49 (2005) ........................................... 2
*School Comm. of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359  (3d
   Cir. 1985) ................................................................................................... 2
*Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223 (3d Cir. 2011) ............. 18
*Smith v. Robinson*, 468 U.S. 992 (1984) ................................................................ 2
*Sole v. Wyner*, 551 U.S. 74 (2007) ...................................................................... 19

*Termine ex rel. Termine v. William S. Hart Union High Sch. Dist.*, 288 F. App'x 360 (9th Cir. 2008) ........................................................................... 16
*Tina M. v. St. Tammany Parish Sch. Bd.*, 816 F.3d 57 (5th Cir.) .................... 15, 16

## REGULATIONS

20 C.F.R. § 300.517 ........................................................................... 20
71 Fed. Reg. 46540, 46708 (Aug. 14, 2006) ......................................... 20

## STATEMENT OF THE ISSUE PRESENTED

Whether the District Court correctly held, pursuant to this Court's precedent, that the automatic operation of the "stay-put" provision of the Individuals with Disabilities Education Act and the interim relief it provides, 20 U.S.C. § 1415(j), do not trigger the Act's fee-shifting provision for prevailing parties, *id.* § 1415(*i*)(3)(B)(i)(I).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This Court previously resolved in Appellee Ridley School District's favor the merits of the parties' dispute over Appellant E.R.'s individualized education program under the Individuals with Disabilities Education Act. *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260 (3d Cir. 2012) (No. 11-1447). This case, which addresses questions related to the interim relief available to Appellants pending final resolution of the merits in the prior suit, has been before this Court previously. *M.R. v. Ridley School District*, 744 F.3d 112 (3d Cir. 2014) (No. 12-4137).

## STATEMENT OF THE CASE

### A.    Legal Framework

The Individuals with Disabilities Education Act (IDEA) establishes a "cooperative process *** between parents and schools," the cornerstone of which is the development and annual revision of an "individualized education program" (IEP).

1

*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). An IEP "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311 (1988); *see also* 20 U.S.C. § 1400(d). When parents and school districts fail to agree on an IEP, either may pursue relief "through the carefully tailored administrative and judicial mechanism set out in the statute." *Smith v. Robinson*, 468 U.S. 992, 1009 (1984).

While these dispute-resolution proceedings are ongoing, the IDEA's "stay-put" provision provides that "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child *** until all such proceedings have been completed." 20 U.S.C. § 1415(j). In the case where the then-current education placement is a private school, a school district is obligated to cover the costs that placement. In addition, parents who unilaterally enroll their child in private schools are entitled to reimbursement if private placement is ultimately deemed to be proper under the IDEA. *See School Comm. of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369-374 (3d Cir. 1985).

The IDEA contains a fee-shifting provision authorizing a district court to "award reasonable attorneys' fees," but only to "prevailing part[ies]" within the meaning of the provision. 20 U.S.C. § 1415(*i*)(3)(B).

## B.    Factual Background And Procedural History

### 1.    IEP Merits Litigation

In June 2008, Appellee Ridley School District proposed an IEP for then-first-grade student E.R. Appendix (App.) 21 (Compl. ¶¶ 16-18). E.R.'s parents "rejected" that plan, enrolling E.R. in the private Benchmark School for the upcoming school year. *Id.* (Compl. ¶ 19); App. 3 (District Court Order ¶ 1).

Parents then filed an administrative due process complaint. App. 4 (Order ¶ 2); App. 21 (Compl. ¶ 20). In April 2009, a Pennsylvania Due Process Hearing Officer concluded that Ridley "failed to provide an appropriate educational program for [E.R]." App. 4 (Order ¶ 2); App. 22 (Compl. ¶ 22).

Ridley petitioned for judicial review in the Pennsylvania Commonwealth Court, and Parents removed the petition to the U.S. District Court for the Eastern District of Pennsylvania. App. 4 (Order ¶ 3); App. 22 (Compl. ¶ 23). Following cross-motions for summary judgment on the administrative record, the District Court "reversed the hearing officer and entered judgment for [Ridley] on all claims." App. 22 (Compl. ¶ 25); App. 4 (Order ¶ 3). The District Court explained that the "un-refuted record reflects that after *** several revisions which Parents

approved," the proposed IEP complied with the IDEA's requirements. *Ridley Sch. Dist. v. M.R.*, No. 09-cv-2503, 2011 WL 499966, at \*15 (E.D. Pa. Feb. 14, 2011).

Parents appealed to this Court, App. 4 (Order ¶ 4); App. 22 (Compl. ¶ 26), which fully affirmed the merits decision in Ridley's favor in March 2012, *see Ridley Sch. Dist. v. M.R. (Ridley I)*, 680 F.3d 260 (3d Cir. 2012). Among other things, this Court held that the District Court "properly reversed the Hearing Officer's finding that the IEP was inadequate," *id.* at 279, and criticized a key part of the Officer's opinion as "made in a conclusory fashion" and "not well-explained or well-supported," *id.* at 275.

### 2.    *Stay-Put Litigation*

*a.* While Parents' appeal of the merits of the IEP was pending, Parents sued Ridley for payment of E.R.'s past and ongoing private educational placement, as well as associated costs. Relying on the IDEA's so-called "stay-put" provision, they argued that Ridley was required to pay "for E.R.'s *pendent* placement at the Benchmark School," App. 19 (Compl. ¶ 3) (emphasis added), from the date of the Hearing Officer's decision "through the exhaustion of all appeals" of that decision. App. 24-25 (Compl. ¶ 41). Ridley maintained that Parents' request was time-barred and claim precluded, arguing that it should have been brought instead as a compulsory counterclaim in the IEP merits litigation. *M.R. v. Ridley School District (Ridley II)*, 744 F.3d 112, 120 (3d Cir. 2014). Ridley also argued that any payment ob-

ligation for E.R.'s continuing private-school placement ended as of the date of the District Court's merits judgment in Ridley's favor. *Id.* at 122.

The District Court determined that the stay-put provision required Ridley to fund the student's "pendent placement." App. 5 (Order ¶ 7); App. 35, 40-42, 50-53 (Memorandum Opinion). The District Court ordered Ridley to "pay the costs of E.R.'s placement at the Benchmark School, including transportation," from the date of the Hearing Officer's decision "through the exhaustion of all appeals" of that decision. App. 33 (Order ¶ 1). Months later, the District Court entered an order awarding $57,658.38 to Parents, exclusive of counsel fees. App. 5 (Order ¶ 7); App. 64 (Order).

Ridley appealed the District Court's stay-put order to this Court. *See Ridley II*, 744 F.3d 112. This Court explained that the stay-put provision "serves, in essence, as an automatic preliminary injunction *** without satisfaction of the usual prerequisites to injunctive relief," *id.* at 118 (quoting *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 861-864 (3d Cir. 1996)), and that the stay-put obligation continued during the *Ridley I* appeal, *id.* at 120-128. Accordingly, this Court affirmed the District Court's award to Parents. *Id.* at 119.

Ridley petitioned the U.S. Supreme Court for a writ of certiorari. The Court called for the views of the Solicitor General, *Ridley Sch. Dist. v. M.R.*, 135 S. Ct. 323 (2014), but ultimately denied Ridley's petition, *Ridley Sch. Dist. v. M.R.*, 135

S. Ct. 2309 (2015). A few weeks later, Ridley paid the judgment in full, with interest. App. 101-103.

*b.* Parents filed a motion seeking attorney's fees related to the stay-put litigation (but not the underlying IEP merits litigation) on the ground that they were "prevailing parties under the IDEA." App. 6-7 (Order ¶¶ 9, 12). As pertinent here, Ridley responded that, under Third Circuit precedent concerning "whether a parent who obtains relief akin to enforcement of a stay put order is a prevailing party for purposes of the IDEA's attorney's fees provision," Parents were not "prevailing parties" entitled to fees. App. 7 (Order ¶ 13).

Agreeing with Ridley, the District Court denied Parents' motion. App. 3-11. The District Court recognized that under *J.O. v. Orange Township Board of Education*, 287 F.3d 267 (3d. Cir. 2002), and *John T. v. Delaware County Intermediate Unit*, 318 F.3d 545 (3d Cir. 2003), "the successful enforcement of a stay put order does not support an award for attorney's fees because such relief is interim and not merits based." App. 10 (Order ¶ 20). Finding those cases to be "directly on point," the District Court held that authority to "foreclose[] Parents' request for attorney's fees in this case." App. 10-11 (Order ¶¶ 19, 21).

## SUMMARY OF ARGUMENT

The District Court's denial of attorney's fees in this case is dictated by binding circuit precedent that Parents essentially ignore. That precedent is sound: Where, as here, a party obtains only relief automatically afforded by the IDEA's stay-put provision, but fails on the merits of the underlying IDEA claim that triggers (temporarily) the stay-put provision, that party is not a "prevailing party" entitled to attorney's fees. The District Court's straightforward application of that principle cannot be overcome by Parents' invocation of distinguishable, out-of-circuit decisions; their attempt to transform a decision enforcing the stay-put provision into an IDEA victory on the merits; or their reliance on the Secretary of Education's 2006 rulemaking, which declined to alter the existing framework governing IDEA fee awards. This Court should affirm.

## STANDARD OF REVIEW

"This Court reviews a district court's denial of attorney's fees for abuse of discretion." *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006). "An abuse of discretion occurs when a district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (citation and internal quotation marks omitted). When a fee application is denied based on the district court's conclusions on questions of law, this Court exercises plenary review. *Id.*

# ARGUMENT

## Binding circuit precedent forecloses appellants' claim that they are "prevailing parties" entitled to attorney's fees under the IDEA.

An exception to the "bedrock principle known as the American Rule" that "[e]ach litigant pays his own attorney's fees, win or lose," *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (citation omitted), the IDEA's fee-shifting provision authorizes a discretionary award of attorneys' fees to "a prevailing party," 20 U.S.C. § 1415(*i*)(3)(B)(i)(I). The phrase "prevailing party" is "a legal term of art." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (citation omitted). A party qualifies only if the district court issued a "judgment" that affords them "at least some relief on the merits of [their] claim." *Id.* (citation omitted). In the context of the IDEA, this Court—consistent with every court of appeals to have considered the subject—has held that a party that obtains or enforces stay-put relief, but fails to prevail on the merits of an underlying IEP dispute, is not a "prevailing party" entitled to attorney's fees. Because Parents obtained only enforcement of the IDEA's automatically operative "stay-put" provision—an interim remedy, unrelated to the merits of the parties' IEP dispute, that required Ridley to fund E.R.'s private-school education only temporarily—this Court should affirm the District Court's denial of attorney's fees.

### A.     The District Court correctly applied circuit precedent denying attorney's fees for obtaining stay-put relief.

As the District Court explained at length the denial of fees in this case follows from a pair of "directly on point" Third Circuit decisions. App. 7-11 (Order ¶¶ 14-21). Those decisions hold that fee-shifting is available under the IDEA if the district court "resolve[d] a[] merit-based issue" in Parents' favor—specifically, the underlying IDEA claim that E.R.'s IEP was improper—but not if the district court's ruling relates only to the recognition or enforcement of stay-put relief. *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 559-560 (3d Cir. 2003); *see J.O. v. Orange Township Board of Education*, 287 F.3d 267, 271-274 (3d. Cir. 2002).

In *J.O.*, this Court affirmed the denial of fees to a parent who obtained an administrative order that a child (C.O.) be temporarily reinstated in the high school from which C.O. had been repeatedly suspended "pending further proceedings." 287 F.3d at 270, 273. Although this Court acknowledged that the order returning C.O. to high school furthered an "important interest" protected by the IDEA, it held that the administrative order "to have C.O. educated at school rather than at home while [an] evaluation was undertaken" was insufficient to confer "prevailing party" status on the parent. *Id.* at 272. That is because the administrative order was "analogous to a 'stay-put' order *** designed to maintain the status quo" pending subsequent resolution on the merits, and under settled law "a party cannot be a

prevailing party if the interim relief received is not merit-based." *Id.* at 272-273 (administrative order was "analogous to a stay-put order, that did not affect the merits of C.O.'s permanent educational placement"). It did not matter that "an affirmative act by the ALJ to reinstate C.O. was necessary"; "C.O's 'present educational placement' for stay-put purposes"—and thus the "status quo" by operation of law—"was in the school despite the temporary suspension." *Id.* at 273 n.2.

Applying the reasoning of *J.O.*, this Court in *John T.* affirmed the denial of fees to parents who had obtained enforcement of stay-put relief and compensation for privately incurred costs unrelated to the merits of the underlying IEP dispute. In that case, the parents paid for their child to attend a private school, at which their child "received some publicly-funded special education *** services." 318 F.3d at 548-549. The Delaware County Intermediate Unit ("DCIU"), which was responsible for funding those services, remained willing to provide them "at a public school," but "refused to continue providing them" at the private school. *Id.* at 549. The parents covered the cost of the services and sued in district court, seeking, among other things, reimbursement for and "provision of needed *** services" at the private school "during the remainder of the year." *Id.*

The district court entered a preliminary injunction, requiring the DCIU to provide certain services at the private school. 318 F.3d at 549. It found that John T. could "only be educated effectively" at the private school, and that he could not

"receive an appropriate education" at the relevant public school. *Id.* The court also concluded that John T. "ha[d] shown a reasonable probability of success on the merits" of his claims. *Id.* at 559 (alteration in original) (citation omitted). When the DCIU did not comply with the injunction, the court held the DCIU in contempt, *see id.* at 549-551, and ordered the DCIU "to pay John T. $1,100 to compensate him for providing services *** at his own expense." *Id.* at 551. When John T. moved for attorney's fees under the IDEA, however, the district court denied his motion. *Id.*

This Court affirmed, holding that John T. was "not a prevailing party." 318 F.3d at 558. It explained that, "[l]ike the stay-put order at issue in *J.O.*," the pre-liminary injunction was "interim relief not based on the merits." *Id.* at 558-559. The court further held that the contempt order, including the unconditional award of $1,100, was also interim relief:

> While the Contempt Order certainly effected a "judicially sanctioned change in the legal relationship of the parties," it is difficult to ascertain whether it is "interim" or "merits-based" relief in the sense contemplated by *J.O.*
>
> On one hand, the District Court finally determined the DCIU's contempt by applying the "merits" of civil contempt—that (1) a valid court order existed, (2) the DCIU knew of the order, and (3) the DCIU disobeyed the order. Accordingly, the Contempt Order may be characterized as both non-"interim" and "merits-based" with respect to the law governing contempt orders generally.
>
> On the other hand, John T. seeks attorney's fees pursuant to the IDEA fee-shifting provision—and not, for example, as an additional sanction

11

for the DCIU's civil contempt. From this perspective, it is decisive that the Contempt Order was merely a mechanism to enforce the Preliminary Injunction. With respect to the IDEA claims, therefore, the Contempt Order can be neither less "interim" nor more "merits-based" than the Preliminary Injunction, itself.

We conclude that we must consider the Contempt Order in its relation to the underlying relief that it enforces. *** [A] contempt order may not confer prevailing party status for purposes of the IDEA fee-shifting provision unless it enforces some IDEA relief that could, itself, confer prevailing party status.

*Id.* at 559-560 (citations omitted).

"Congress," the court continued, "sought to provide fees only to those who prevailed *with respect to an IDEA claim*." 318 F.3d at 560 (emphasis in original). "Under *J.O.*," the court concluded, "the Preliminary Injunction is an insufficient basis on which to deem John T. a prevailing party. Accordingly, the Contempt Order that enforces it is also insufficient." *Id.*

In sum, *J.O. and John T.* make clear that a party that obtains only stay-put relief, or an award enforcing stay-put relief, is not a "prevailing party." App. 10 (Order ¶¶ 19-20). It is not enough to prevail on the issue of whether "stay-put" relief—including the concomitant payment obligation—is appropriate; what matters are the merits of the underlying dispute over where a child should ultimately be educated. *See John T.,* 318 F.3d at 559-560; *J.O.*, 287 F.3d at 274 (distinguishing "the merits" from the question of whether interim relief is appropriate). Whether "stay-put" relief requires a school to change its conduct, *see J.O.*, 287 F.3d at 273

n.2, or whether permanent monetary relief effectuates a "stay-put" order, *see John T.*, 318 F.3d at 560, are irrelevant. So long as the relief granted simply maintains a child's *interim* placement while his ultimate placement is being resolved, obtaining stay-put-based relief is not enough to make someone a "prevailing party" under the IDEA's fee-shifting provision.

As the District Court correctly recognized, those decisions are "directly on point" and "foreclose" Parents' claim for attorney's fees. App. 10-11 (Order ¶¶ 19-21). For good reason: the critical facts of this case are legally indistinguishable.

> In both *John T.* and the case before me there was a determination that the student was to continue to receive services at the current placement during the pendency of the litigation—essentially stay put orders. In both cases, the defendants refused to reimburse parents for the expenses they incurred in maintaining that placement. Following this refusal, both students successfully obtained judicial intervention to compel the defendants to comply with the stay put orders—in the case before me a judgment in a separate action and, in *John T.*, a contempt order. Significantly, neither case resulted in a ruling in favor of the student on the merits of their underlying IDEA claim.

App. 10 (Order ¶ 19).

Parents cannot avoid that conclusion. It is well-settled that a "stay-put" order "functions, in essence, as an *automatic* preliminary injunction." *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996) (citation omitted) (emphasis added). Instead of permitting "the court's discretionary consideration" of Parents' "likelihood of success on the merits," the IDEA "substitutes an absolute rule in favor of the status quo." *Id.* (citation omitted). As such, a "stay put" order

is *not* a judgment on the merits:  it is interim relief that maintains the status quo "regardless of whether [Parents'] case is meritorious."  *Id.* (citation omitted); *see also Ridley II,* 744 F.3d 112, 124-125 (3d Cir. 2014).

This is a case in point. By the time Parents' stay-put action was filed, the District Court had *already determined* (as later affirmed by this Court in *Ridley I*) that Ridley offered an IEP for E.R. that complied with the IDEA's requirements. App. 22 (Compl. ¶ 25). Indeed, as the District Court stressed in denying fees, this Court in *Ridley II* recognized that "resolution of [pendent-placement and tuition-reimbursement rights] is *completely separate* from the merits issues which focus on the adequacy of the proposed IEP."  App. 10 (Order ¶ 20) (quoting *Ridley II*, 96 F.3d at 120-121) (alteration in original) (emphasis added). Notably, Parents previously acknowledged as much. *See, e.g.*, Appellees' Br. 27-29 (*Ridley II*) (stating that "stay put" claim is "totally separate" from and "has nothing to do with" IEP dispute). Because this action was limited to a request for "stay-put" relief—an interim remedy not based on the merits—this Court's precedent dictates that Parents are not "prevailing" parties eligible for an IDEA fee award.

**B.    Parents' arguments for disregarding circuit precedent are unavailing.**

None of Parents' arguments for reversing the District Court's decision survives scrutiny.

     *1.    Parents cannot distinguish J.O. or John T. and their reliance on other out-of-circuit decisions is misplaced.*

To begin with, Parents provide no basis for distinguishing or disregarding *John T.* and *J.O.* In the three cursory instances in which Parents cite to *John T.* and *J.O.*, no explanation is offered for why those cases "do not address the factual and procedural scenario presented here." Opening Br. 25 n.10; *id.* at 19, 28. Parents give the same short shrift (*id.* at 25 n.10) to a decision by the Fifth Circuit explicitly adopting *J.O.* in denying an award of fees based on stay-put relief, *see Tina M. v. St. Tammany Parish Sch. Bd.*, 816 F.3d 57, 62 (5th Cir.) (stating that *J.O.* "similarly mirrors the case at hand"), *cert. denied*, 137 S. Ct. 371 (2016), as well as to decisions by the Seventh Circuit reaching the same result, *see Board of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 469 (7th Cir. 2000) ("[W]e *** have stated explicitly that invocation of the stay-put provision of the IDEA does not entitle the party to attorneys' fees."); *Board of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d 464 (7th Cir. 1996) ("The law does not view Andrew's parents as a prevailing party *** because their only ultimate victory under the IDEA is the invocation of the stay-put provision.").

Contrary to Parents' insistence (Br. 22-23), *Maine School Administration District No. 35 v. Mr. R.*, 321 F.3d 9 (1st Cir. 2003), does not support the award of attorney's fees here. Quite the opposite: citing *J.O.* and Seventh Circuit precedent, the First Circuit held that "a successful invocation of the IDEA's stay-put provi-

sion, on an interlocutory basis, ordinarily will not confer prevailing party status." *Id.* at 15. The First Circuit authorized fees in that case only because it presented a *different* situation "not cut from the usual cloth"—namely, that the school district instituted "an independent, free-standing civil action *** to enjoin the operation of the stay-put provision," and the parents prevailed in that separate litigation. *Id.* at 15-16. Because Ridley brought no such "independent, freestanding" litigation seeking relief from the automatic operation of the stay-put provision, *Maine School Administration* is inapposite. *See Tina M.*, 816 F.3d at 61 n.* (finding *Maine School Administration* to be "readily distinguishable").[1]

Parents also rely (Br. 22-25) on a host of other (mostly unpublished) district court decisions. As the Fifth Circuit recently held addressing (most of) those cases, however, they are "either readily distinguishable or no longer good law." *Tina M.*, 816 F.3d at 61 n.*. At any rate, as none of those decisions can displace *J.O.* and *John T.*, Parents' reliance on them is doubly misplaced. *See* App. 11 (Order ¶ 21) ("Citations to non-binding precedent cannot support Parents' argument to the contrary.").

---

[1] The Fifth Circuit also found the award of attorney's fees in *Termine ex rel. Termine v. William S. Hart Union High School District*, 288 F. App'x 360 (9th Cir. 2008)—a case Parents cite in passing (Br. 21)—to be "readily distinguishable" on the ground that "plaintiffs obtained not only a stay-put order, but also a ruling on the merits that the school's proposed placement was inappropriate and tuition reimbursement." *Tina M.*, 816 F.3d at 61 n*; *accord* App. 10-11 (Order ¶ 21) (rejecting Parents' reliance on *Termine*). The Supreme Court subsequently declined to review the Fifth Circuit's decision. *See* 137 S. Ct. 371.

   2.    *Parents' arguments ignore the fact they obtained only interim stay-put relief.*

Parents attempt at length to frame the stay-put litigation as a proceeding that "permanently" changed the status quo because it required Ridley to "honor" the fact "that Benchmark was E.R.'s pendent placement," and resulted in Ridley reimbursing Parents tuition and other costs incurred while the stay-put provision was in effect. Opening Br. 15-21. That argument fails for the fundamental reason that all such relief, at bottom, amounts to an enforcement of the stay-put provision. In Parents' own words, [t]his case concerned solely" and "was brought to enforce" an "'agreement' by operation of law"—*i.e.*, the automatic operation of the stay-put provision—"that Benchmark was E.R.'s pendent placement." *Id.* at 20. As already explained, *J.O.* and *John T.* do not authorize fee-shifting on the basis that "Parents sued" and "won" that limited point, but not the underlying IEP dispute. *Id.* at 16. That is true even where (as here) enforcement of the stay-put order results in a school changing its conduct, *see J.O.*, 287 F.3d at 273 n.2, or includes a monetary award designed to compensate parents, *see John T.*, 318 F.3d at 554, 560.

Nor did the District Court's stay-put order effect a change (much less a permanent change) in the status quo. "Stay-put orders are designed to maintain the status quo," not change it. *J.O.*, 287 F.3d at 272; *see id.* at 273 n.2. And in affirming the award of stay-put relief, this Court in *Ridley II* left no doubt that the stay-

put relief had no bearing (permanently or otherwise) on E.R.'s IEP going forward. 744 F.3d at 128 n. 15 ("[T]he reimbursement period runs from the date of the administrative hearing officer's decision *** through the date of the appellate decision[.]"). The fact that Parents sought stay-put relief *after* losing the merits of the IEP dispute in *Ridley I* does not elevate a dispute over interim relief into something that confers prevailing-party status.

The more general fee-shifting authorities cited by Parents are not to the contrary. Pointing to *D.F. v. Collingswood Borough Board of Education*, 694 F.3d 488 (3d Cir. 2012), Parents contend that, in order to be prevailing parties, they need only have (1) achieved relief that was (2) causally connected to this litigation. Opening Br. 17. But that so-called "catalyst theory" for determining prevailing-party status, *D.F.*, 694 F.3d at at 501, has been expressly abrogated by the Supreme Court, *see Buckhannon*, 532 U.S. at 605; *John T.*, 318 F.3d at 560-561 ("*Buckhannon* *** reject[s] the 'catalyst theory' whole hog.").

Parents also repeatedly assert they obtained a "judgment." Opening Br. 2, 13-16, 18, 24, 26. But that assertion begs the question of whether that judgment is *on the merits* of the relevant dispute, as distinct from interim relief. *See Buckhannon*, 532 U.S. at 603; *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011). Obtaining interim "stay-put" relief, while losing the "underlying" IEP dispute, *id.*, does not a prevailing party make. *Cf. Sole v. Wyner*, 551 U.S.

74, 86 (2007) ("[A] plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her."). This is because it is the "merits of the *underlying* claim" that matters. *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232 (3d Cir. 2008) (emphasis added) ("securing temporary relief in the form of a preliminary injunction does not make the plaintiff a 'prevailing party' for purposes" of another fee-shifting statute); *cf. Deptford Twp. Sch. Dist. v. H.B. ex rel. E.B.*, 279 F. App'x 122 (3d. Cir. 2008) (parents who prevailed before an ALJ, but had their victory reversed by a district court, were not prevailing parties). Simply splitting the stay-put relief into a separate suit from the merits does not obviate that bedrock requirement.[2]

To the extent the Parents argue (Br. 25-27) that attorney's fees should be awarded because the "stay-put" decision furthers the IDEA's policy goals, this Court has rejected that argument as well. In *J.O.*, this court accepted that the interim relief granted "admittedly reconfirmed [an] important interest." 287 F.3d at 272. It took pains not to "deprecate the importance of interim relief," acknowledg-

---

[2] Parents note that the "Hearing Officer created a judicially sanctioned agreement that the *** Benchmark School became the Student's pendent placement." Opening Br. 16. Parents, rightly, do not contend that the Officer's decision makes them prevailing parties. Suffice it to say that an *administrative* officer's determination, *later reversed*, is not the "judicial imprimatur" required for a fee award. *Buckhannon*, 532 U.S. at 605 (emphasis removed); *cf. Sole*, 551 U.S. at 86 (a party does not "prevail" when it obtains a preliminary injunction that is reversed on the merits); *John T.*, 318 F.3d at 551, 560 (discussing an IEP).

ing that "[t]he maintenance of a child's educational placement is an important aspect of IDEA" and pointing specifically to the "stay-put provision." *Id.* at 274. Yet this Court concluded that "stay-put" relief did not support an award of attorney's fees. *Id.* at 274; *see also John T.*, 318 F.3d at 556.

### 3. The Secretary of Education's 2006 rulemaking disclaims any relevance to the facts here and does not provide clear notice of fee-shifting liability.

Parents finally resort to arguing (Br. 28-29) that the Secretary of Education's 2006 response to a failed rulemaking proposal supplants *J.O.* and *John T.* (decided in 2002 and 2003, respectively). As the response explains, however, the Secretary "decline[d] to regulate" whether a "parent must be the prevailing party on substantive grounds" in order to recover fees, 71 Fed. Reg. 46540, 46708 (Aug. 14, 2006) ("*Changes*:  None."). The Secretary's decision not to act thus left untouched the IDEA's fee-shifting regulation, 20 C.F.R. § 300.517, and the existing regulatory regime (including *J.O.* and *John T.*). *Cf. Heckler v. Chaney*, 470 U.S. 821, 836 (1985) (finding agency policy statement to be "singularly unhelpful" because it "was attached to a rule that was never adopted"). And to the extent the Secretary's response reiterates the importance of ensuring that a child receives a free and appropriate education, Ridley unmistakably provided a free and appropriate education to E.R. *See Ridley I*, 680 F.3d at 271-279.

Moreover, the Secretary's suggestion that procedural violations (however construed) "*might* result in a parent being determined to be a prevailing party for purposes of claiming attorney's fees," 71 Fed. Reg. at 46708 (emphasis added), falls well short of an authoritative "determination" (Br. 28) that Parents have a legal claim to fees here, *see Heckler*, 470 U.S. at 836 ("We would have difficulty with this statement's vague language even if it were a properly adopted agency rule."). All the more so because this Court's determination of whether Parents are prevailing parties must be "guided by the fact that Congress enacted the IDEA pursuant to the Spending Clause." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295 (2006). "[W]hen Congress attaches conditions to a State's acceptance of federal funds, the conditions must be set out 'unambiguously.'" *Id.* at 296 (citation omitted). Thus, the fact that Pennsylvania accepted IDEA funds cannot make Pennsylvania (or Ridley) liable under the IDEA's fee-shifting provision, unless "the IDEA furnishes clear notice regarding the liability at issue in this case." *Id.*; *see also id.* at 303 (holding that the IDEA's authorization for recovery of "costs" "does not unambiguously authorize prevailing parents to recover expert fees").

The Secretary's uncertain view gave Ridley no notice that it could be forced to pay attorney's fees in this action—much less the clear notice that the Spending Clause demands. *See General Elec. Co. v. EPA*, 53 F.3d 1324, 1333 (D.C. Cir.

1995) (finding that regulated party is not provided notice (for purposes of due pro-

cess analysis) where "the agency itself struggles to provide a definitive reading").[3]

Here, there is no precedent holding that attorney's fees are available in an action

seeking interim, "stay-put" relief. To the contrary, *J.O.* and *John T.* continue to

foreclose that result.

---

[3] That assumes, of course, that the Secretary could provide the requisite notice in the first instance. *Contra Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) (explaining that Congress's intention be "unmistakably clear in the language of the statute") (emphasis added) (citation and quotation marks omitted). If anything, Parents' call for *Chevron* deference (Reply Br. 4), if accepted, necessarily dooms their fee petition under *Gregory* because such deference is extended only where a court finds a statute "ambiguous." *INS v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001) (citation and internal quotation marks omitted); *see also Arlington Cent.*, 548 U.S. at 303 (holding that IDEA fee-shifting statute must "*unambiguously* authorize prevailing parents to recover expert fees") (emphasis added).

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's order.

Respectfully submitted,


/s/ John F.X. Reilly

JOHN F.X. REILLY
*Attorney-at-Law*
230 N. Monroe St.
Media, PA 19063‑2908
(610) 565‑0975
*Attorney for Ridley School District*

# CERTIFICATIONS

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

## CERTIFICATION OF SERVICE

I certify that this day I served two copies of the foregoing **Brief For Appellee Ridley School District** via First‑Class Mail and via this Court's ECF system to the person below.

Alan. L. Yatvin
Popper & Yatvin
230 S. Broad St. Suite 503
Philadelphia, PA 19102

## CERTIFICATION OF COMPLIANCE WITH RULE 32(A)

I certify that: (1) This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,393 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and (2) this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Word in 14-point Times New Roman.

## CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS

I hereby certify that the text of the PDF file and hard copies of this Brief are identical.

## CERTIFICATION OF VIRUS CHECK

I hereby certify that a virus check was performed on the PDF of this brief and that no virus was indicated.

Dated:  January 27, 2017                    /s/ John F.X. Reilly
                                            JOHN  F.X. REILLY