# UNITED STATES COURT OF APPEALS

*for the*

# THIRD CIRCUIT

**Docket No. 16-2465**

**M.R. AND J.R., PARENTS OF E.R, A MINOR**,

*Appellants*,

v.

**RIDLEY SCHOOL DISTRICT**,

*Appellee.*

(E.D. Pa. No. 2:11-cv-02235)

**M.R. AND J.R., APPELLANTS**

# *APPELLANTS' REPLY BRIEF*

On Appeal from the April 28, 2016, Order of the
United States District Court for the Eastern District of Pennsylvania,
Honorable Mitchell S. Goldberg, at No. 2:11-cv-02235

**Alan L. Yatvin**
Suite 503
230 South Broad Street
Philadelphia, PA 19102
(215) 546-5700
Fax (215) 546-5701
E-mail: *popper.yatvin@verizon.net*
Attorney for the Appellants

March 3, 2017

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION AND SUMMARY OF REPLY ................................................. 1

ARGUMENT ............................................................................. 3

I.    Under controlling precedent, Parents are prevailing parties entitled to attorneys' fees because they obtained an enforceable final judgment on a claim for permanent monetary relief. ........................................ 3

    A.    Parents are entitled to attorneys' fees under longstanding prevailing-party principles. ............................................... 4

    B.    This Court's decisions in *J.O.* and *John T.* do not help Ridley. ...... 5

II.    The *Ridley II* judgment enforced substantial IDEA rights that changed the school district's primary out-of-court conduct, entitling Parents to an award of attorneys' fees under the IDEA. ................................... 11

    A.    Parents' suit vindicated the right guaranteed by the IDEA to a *free* education during the dispute. ........................................ 13

    B.    Parents' lawsuit vindicated the right guaranteed by the IDEA to educational stability. .................................................. 14

CONCLUSION .......................................................................... 16

CERTIFICATION OF BAR MEMBERSHIP ..................................................... 17

CERTIFICATION OF COMPLIANCE ......................................................... 18

CERTIFICATE OF SERVICE .............................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Bd. of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.,*
    89 F.3d 464 (7th Cir. 1996) ............................................................ 8, 9

*Bd. of Educ. of Oak Park v. Nathan R.,*
    199 F.3d 377 (7th Cir. 2000) ........................................................... 8, 9

*Buckhannon Bd. & Care Home, Inc. v. W. Va.*
    *Dep't of Health & Human Res.,*
    532 U.S. 598 (2001) ............................................................. 1, 3, 4, 6

*D.M. v. N.J. Dep't of Educ.,*
    801 F.3d 205 (3d Cir. 2015) ............................................................ 14

*Drinker by Drinker v. Colonial Sch. Dist.,*
    78 F.3d 859 (3d Cir. 1996) .......................................................... 4, 14

*Flour Bluff Indep. Sch. Dist. v. Katherine M.,*
    91 F.3d 689 (5th Cir. 1996) ............................................................ 15

*Fry v. Napoleon Cmty. Sch.,*
    No. 15-497, 2017 WL 685533 (U.S. Feb. 22, 2017) ....................... 13

*Hanrahan v. Hampton,*
    446 U.S. 754 (1980) ........................................................................ 12

*Hewitt v. Helms,*
    482 U.S. 755 (1987) .......................................................................... 4

*Honig v. Doe,*
    484 U.S. 305 (1988) ........................................................................ 14

*J.O. v. Orange Twp. Bd. of Educ.,*
    287 F.3d 267 (3d Cir. 2002) .................................................... *passim*

*John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit,*
    318 F.3d 545 (3d Cir. 2003) .................................................... *passim*

*Joshua A. v. Rocklin Unified Sch. Dist.,*
    559 F.3d 1036 (9th Cir. 2009) ........................................................ 15

*Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.,*
    386 F.3d 158 (2d Cir. 2004) ........................................................... 15

*McBride v. Int'l Longshoremen's Ass'n*,
    778 F.3d 453 (3d Cir. 2015) ....................................................... 11, 12

*M.R. v. Ridley Sch. Dist.*,
    744 F.3d 112 (3d Cir. 2014) ..................................................... *passim*

*Sch. Comm. of Burlington v. Dep't of Educ.*,
    471 U.S. 359 (1985) ..................................................................... 13

*Susquenita Sch. Dist. v. Raelee S.*,
    96 F.3d 78 (3d Cir. 1996) ............................................................ 13

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989) ................................................................. 1, 4, 9

*Tina M. v. St. Tammany Par. Sch. Bd.*,
    816 F.3d 57 (5th Cir. 2016) ........................................................ 8, 9

*Tokarcik v. Forest Hills Sch. Dist.*,
    665 F.2d 443 (3d Cir. 1981) ..................................................... 14-15

*Truesdell v. Phila. Hous. Auth.*,
    290 F.3d 159 (3d Cir. 2002) ..................................................... 9, 10

## Statutes

20 U.S.C. § 1412(a)(1)(A) ............................................................. 2

## Regulations

34 C.F.R. § 300.518(a) ................................................................ 15

34 C.F.R. § 300.518(d) ................................................................ 11

## Legislative Materials

131 Cong. Rec. 31,373 (1985) ..................................................... 12

121 Cong. Rec. 37,416 (1975) ..................................................... 14

## INTRODUCTION AND SUMMARY OF REPLY

**1.** Ridley claims that the final judgment awarding Parents full tuition and related costs is "interim" relief and therefore insufficient to confer prevailing-party status under the IDEA's fee-shifting provision. Appellee's Br. 13. This is incorrect. Rather than preserving the status quo in anticipation of further proceedings—as often occurs when relief is insufficient to confer prevailing-party status—the judgment (A-64) permanently changed the legal relationship between Parents and the school district. *See M.R. v. Ridley Sch. Dist.*, 744 F.3d 112 (3d Cir. 2014) (*Ridley II*).

Parents made a demand for payment under the IDEA (A-4–5, 22), and Ridley refused to meet its statutory obligation to pay. Parents therefore brought suit, seeking only one thing: reimbursement for the amount spent on their child's then-current placement. As a result of that suit—the *Ridley II* litigation—Parents received all of the monetary relief that they sought. The decision awarding Parents tuition reimbursement thus was an "enforceable judgment[] on the merits" that "create[d] the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). And, indeed, it was that judgment that forced Ridley to pay what it owed. A-101–03.

This Court's decisions in *J.O.* and *John T.* are inapposite because they do not extend to the situation now before the Court. *See J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267 (3d Cir. 2002); *John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545 (3d Cir. 2003). Here, unlike in those two cases, the parents of a child with a disability won a separate suit seeking merits-based relief. In light of Ridley's refusal to pay, absent their lawsuit, Parents would have been left bearing the cost of their child's education. In these circumstances, Parents are entitled to an award of attorneys' fees under a straightforward application of prevailing-party case law.

**2.** Even if this Court were to accept Ridley's characterization of the *Ridley II* judgment as "interim" (Appellee's Br. 13), Parents would still be prevailing parties entitled to a fee award. Ridley fails to recognize that any judicial order confers prevailing-party status so long as it determines substantial rights under the relevant statute in favor of the fee-seeking party. Parents' suit vindicated two related rights when it determined that the IDEA's stay-put provision required Ridley to reimburse them.

First, the IDEA entitles children with disabilities to a *free* education. 20 U.S.C. § 1412(a)(1)(A). This Court's *Ridley II* decision ensured that E.R.'s education was in fact free. Second, children with disabilities have an enforceable right to educational stability under the IDEA's stay-put provision. As this Court

observed, requiring reimbursement for a child's education during the pendency of
an IDEA dispute is the only way to effectuate the "balance Congress struck" in the
IDEA "to ensure stability for a vulnerable group of children." *Ridley II*, 744 F.3d at
128.

## ARGUMENT

I.  **Under controlling precedent, Parents are prevailing parties entitled to
    attorneys' fees because they obtained an enforceable final judgment on
    a claim for permanent monetary relief.**

Ridley relies principally on three decisions, none of which stands for the rule
it asks this Court to adopt: that no stay-put-related judgment, including a judgment
requiring a school district to reimburse parents for costs incurred during a stay-put
agreement, is sufficient to confer prevailing-party status. *See* Appellee's Br. 12, 19
n.2 (relying on *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267 (3d Cir. 2002),
*John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545 (3d Cir. 2003),
and *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
532 U.S. 598 (2001)).

*J.O.* and *John T.* do not apply to the situation here. And, rather than aiding
Ridley, the principles enunciated in *Buckhannon* require this Court to reverse the
decision below. Moreover, other precedent of this Court favors reversal.

**A.    Parents are entitled to attorneys' fees under longstanding prevailing-party principles.**

In *Buckhannon*, the Supreme Court reiterated that a party is entitled to attorneys' fees when the court issues an order in that party's favor—an out-of-court settlement involving a "voluntary change in conduct" benefitting that party is not sufficient. 532 U.S. at 605. As the Court observed, relying on earlier precedents, "enforceable judgments on the merits . . . create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989), in turn, citing *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).

Here, Parents received a favorable final order on the merits. The school district did not voluntarily assume its obligation to fund E.R.'s placement, nor did it repay Parents for doing so, even though it claims that "a 'stay-put' order 'functions, in essence, as an *automatic* preliminary injunction.'" Appellee's Br. 13 (quoting *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996)); *see also id.* at 1, 7, 8, 16, 17. Rather, Parents won a $57,658.38 judgment (plus post-judgment interest) that materially and permanently altered the legal relationship between the parties by enforcing Ridley's obligation to pay under the IDEA. A-64, 101–103. Thus, under *Buckhannon* and its forerunners, Parents are entitled to an award of attorneys' fees.

**B.    This Court's decisions in *J.O.* and *John T.* do not help Ridley.**

Ridley's reliance on *J.O.* and *John T.* is misplaced. Neither case holds that an award of attorneys' fees is categorically unavailable when a court issues stay-put-related relief, and neither involved a situation like the one here, where parents of a child with a disability obtained a final judgment that provided them with complete monetary relief under the IDEA. Thus, as we now show, both cases are fully compatible with an award of attorneys' fees to Parents.

**1.a.** In *J.O.*, a school district suspended a student with disabilities and then petitioned the state department of education for an order removing the student from the classroom indefinitely. 287 F.3d at 270. In response, the parents sought to reinstate the child to the classroom. *Id.* They also sought special-education services and to permanently enjoin the school district from suspending the child again. *Id.* After the parties reached an agreement about the special-education services, the administrative judge denied the school district's request to remove the child indefinitely and granted, on a temporary basis, the parents' request to have the student reinstated in the classroom. *Id.* The remaining claims were denied, and the administrative judge expressly stated that the order would only be in effect "until the issuance of a final decision." *Id.* at 270, 274.

The parents then filed suit in district court seeking attorneys' fees. *Id.* at 270-71. This Court rejected the claim for fees, explaining that the child's temporary

reinstatement in the classroom was interim relief conditioned on further proceedings and therefore was not tied to the merits of any IDEA dispute. *Id.* at 273-74.

Here, by contrast, when *Ridley II* began, Parents—not Ridley—were footing the bill for E.R.'s then-current school placement. Parents thus brought and won a claim under the IDEA for reimbursement—a *permanent*, not temporary, change in the relationship between the parties. Unlike in *J.O.*, where the administrative judge's decision regarding the child's short-term physical placement was contingent on a later final judgment about that placement, the money judgment in *Ridley II* was not contingent on any further proceedings. The district court's judgment imposed on Ridley a permanent legal obligation to reimburse Parents for the costs of E.R.'s tuition incurred between April 21, 2009 and May 17, 2012. *See* A-38, 64. The judgment in this case thus satisfies the requirement that the attorneys' fees be based on a successful and permanent "change in the legal relationship between" the parties. *Buckhannon*, 532 U.S. at 604.

**b.** In *John T.*, a child received publicly-funded special-education services while enrolled at a private school. 318 F.3d at 548-49. The school district stopped providing services after five years, saying that it would reinstate those services only if the child transferred to a public school. *Id.* at 549. The parents started paying for the services themselves and filed suit seeking compensation and the

provision of services going forward. *Id.* The district court entered a preliminary injunction requiring the school district to resume the special-education services at the private school. *Id.* The school district refused, so the district court entered a contempt order for $1,100, to be paid to the parents in light of the school district's non-compliance. *Id.* at 550-51. The parents and the school district thereafter settled, agreeing to a plan for future special-education services. *Id.* at 551. The parents then voluntarily dismissed the lawsuit and moved for attorneys' fees under the IDEA. *Id.*

This Court considered whether the parents were prevailing parties with respect to both the preliminary injunction and the contempt order. *John T.*, 318 F.3d at 558-60. First, as to the preliminary injunction, the Court held that the parents were not prevailing parties because that type of injunction was "interim relief not based on the merits of John T.'s claims" and "was 'designed to maintain the status quo during the course of proceedings.'" *Id.* at 558 (quoting *J.O.*, 287 F.3d at 272). The Court noted that the order granting preliminary relief "did not resolve any merit-based issue." *Id.* at 559. Here, by contrast, the relief obtained—a judgment requiring Ridley to reimburse Parents—was not "designed to maintain the status quo." *John T.*, 318 F.3d at 558. Quite the contrary, Parents sought a *permanent* change to the status quo, lest they be forever on the hook for tuition that

federal law required Ridley to pay. *Ridley II* resolved that "merits-based" issue: reimbursement of the tuition that the IDEA required Ridley to pay.

Second, as to the contempt order, this Court held that the parents in *John T.* were not prevailing parties because that order did not grant relief under the IDEA. *Id.* at 559-60. Instead, that order was based on "the law governing contempt orders generally." *Id.* at 559. Thus, the Court observed, an order cannot result in an award of attorneys' fees under the IDEA's fee-shifting provision "unless it enforces some IDEA relief that could, itself, confer prevailing party status." *Id.* at 560. That perfectly describes the relief obtained here. Parents filed a new case seeking a remedy solely under the IDEA. Both the district court and this Court reached the merits of that case, holding that the stay-put provision extends through appeal and requiring Ridley to reimburse Parents for the full cost of tuition. *See Ridley II*, 744 F.3d 112, 128 (3d Cir. 2014). No law other than IDEA could have resolved that question. The Act expressly guarantees children with disabilities a free public education, and, as this Court in *Ridley II* made clear, the child's then-current placement must likewise be "free." *Id.* at 118.[1]

---

[1] Ridley's reliance on out-of-circuit decisions suffers from the same misunderstandings as does its reliance on *J.O.* and *John T.* Appellee's Br. 15 (discussing *Tina M. v. St. Tammany Par. Sch. Bd.*, 816 F.3d 57 (5th Cir. 2016); *Bd. of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377 (7th Cir. 2000); *Bd. of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d 464 (7th Cir. 1996)). Like *J.O.* and *John T.*, none of these decisions involved a suit that sought and obtained permanent IDEA relief—reimbursement of money to which parents of a

**2.** Awarding attorneys' fees here draws support from this Court's post-*Buckhannon* decision in *Truesdell v. Philadelphia Housing Authority*, 290 F.3d 159 (3d Cir. 2002) (Alito, J.). There, a housing authority failed to reduce a tenant's out-of-pocket rent when his income fell. *Id.* at 162. The tenant did not succeed on most of his claims, but he "achieve[d] complete success" under a judicially enforced settlement that promised to pay him back-rent. *Id.* at 165. But six months after the settlement was signed, the housing authority still had not paid. *Id.* at 162. The tenant then moved to enforce the agreement. *Id.* After the housing authority finally paid, the tenant sought attorneys' fees. *Id.* at 163.

This Court found that the tenant was a "prevailing party" because "it would be difficult to conclude that [the tenant] has not achieved a change in his legal relationship with" the housing authority. *Truesdell*, 290 F.3d at 165 (relying on *Tex. State Teachers Ass'n*, 489 U.S. at 792-93). Despite the tenant's loss on most of his claims, the Court held that the tenant was entitled to fees because his success on the back-rent claim was "significant." *Id.* His success was significant not only because it rectified the housing authority's failure to comply with the settlement,

---

child with a disability were entitled under the IDEA. Instead, they provide support only for a rule that temporary stay-put orders that do no more than preserve the status quo are insufficient to confer prevailing-party status. *Tina M.*, 816 F.3d at 60; *Oak Park*, 199 F.3d at 382; *Downers Grove*, 89 F.3d at 468-69. Moreover, each decision embraces an understanding of prevailing-party case law—one that requires a permanent change in the legal relationship between the parties—that entitles Parents to an award of attorneys' fees here. *See Tina M.*, 816 F.3d at 60; *Oak Park*, 199 F.3d at 382; *Downers Grove*, 89 F.3d at 469.

but also because enforcement of the back-rent claim involved a determination of substantial rights. Without the housing authority's payment, the tenant would have been evicted for non-payment and become ineligible to participate in the public-housing program. *Id.*

As in *Truesdell*, "it would be difficult to conclude that" Parents did not "achieve[] a change in [their] legal relationship" with the school district when Parents won the *Ridley II* litigation. *Truesdell*, 290 F.3d at 165. Although Parents did not prevail on their claims in *Ridley I*, they achieved "complete success" on their reimbursement claim in *Ridley II*. A-64. This success was "significant" not only because the reimbursement rectified Ridley's refusal to comply with the stay-put agreement, but also because the monetary judgment involved a determination of substantial rights under the IDEA. Akin to *Truesdell*, where the tenant would have become ineligible for public housing if the housing authority failed to pay the back-rent, children would lose their substantial rights to a free education and educational stability if school districts failed to fulfill their IDEA reimbursement obligations, as Ridley did here.

**3.** A final example helps illustrate how no law other than the IDEA could have resolved the question at the heart of *Ridley II*, and thus why *Ridley II* enforced "IDEA relief that could, itself, confer prevailing party status." *John T.*, 318 F.3d at 560. Assume that a child attends a private school under an agreed-upon

Individualized Education Program paid for by the school district. Further assume that at some point the school district stops paying the child's tuition. The parents then bring suit under the IDEA for violation of their child's right to a *free* appropriate public education. They would indisputably win and be prevailing parties under the IDEA's fee-shifting provision. There is no principled difference between a failure to pay the tuition for agreed-upon private school placement, in this example, and the tuition agreed-upon by virtue of the hearing officer's decision in favor of E.R., as occurred here. *See* 34 C.F.R. § 300.518(d) (hearing officer's placement decision in favor of parents "must be treated as an agreement between the State and the parents" as to the child's proper placement during the dispute). In both cases, the undisputed right to a free education for children with disabilities has been violated, and a judgment so holding renders the parents prevailing parties.

## II.    The *Ridley II* judgment enforced substantial IDEA rights that changed the school district's primary out-of-court conduct, entitling Parents to an award of attorneys' fees under the IDEA.

Even if this Court accepts Ridley's characterization of Parent's reimbursement claim as the enforcement of "interim" relief (Appellee's Br. 13), the school district goes "too far when [it] say[s] that an interim order can never ground attorney's fees." *McBride v. Int'l Longshoremen's Ass'n*, 778 F.3d 453, 460 (3d Cir. 2015). A party may be considered a "prevailing party" when an

interim order affects primary conduct, enforcing a substantial right under the relevant statute. *See id.* (citing *Hanrahan v. Hampton*, 446 U.S. 754, 756-58 (1980) (A litigant may be a "prevailing party" after obtaining an interlocutory order that determined the "substantial rights of the parties.")). And, as even Ridley acknowledges, a court order confers prevailing-party status if "it enforces some IDEA relief." Appellee's Br. at 12 (quoting *John T.*, 318 F.3d at 560).

To be sure, a court order does not vindicate a substantial statutory right if "as a practical matter [plaintiffs] are in a position no different from that [which] they would have occupied" without it. *See Hanrahan*, 446 U.S. at 758-59. For example, a party is not entitled to fees under the IDEA when an order vindicates procedural interests that have no immediate consequence outside the courtroom, such as when a court grants a "motion to compel discovery, certification of the class, or motion filed by the school district to dismiss the action." 131 Cong. Rec. 31,373 (1985) (statement of Rep. John Patrick Williams) (discussing IDEA's fee-shifting provision).

In determining whether a plaintiff seeks—and ultimately achieves—relief under the IDEA, courts look "to the 'substance' of, rather than the labels used in, the plaintiff's complaint." *Fry v. Napoleon Cmty. Sch.*, No. 15-497, 2017 WL 685533, at *10 (U.S. Feb. 22, 2017). "What matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint." *Id.* A court order confers prevailing-

party status if it prescribes a school district's primary conduct in providing a free education to a child with disabilities. As we now explain, for two reasons, this Court's *Ridley II* judgment requiring the school district to pay E.R.'s tuition did just that.

## A.    Parents' suit vindicated the right guaranteed by the IDEA to a *free* education during the dispute.

"The Act was intended to give handicapped children both an appropriate education *and* a free one; it should not be interpreted to defeat one or the other of those objectives." *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 372 (1996) (emphasis added). "If the [stay-put] provision is interpreted to cut off parental rights to reimbursement, the principal purpose of the Act will in many cases be defeated in the same way as if reimbursement were never available." *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 85 (3d Cir. 1996) (quoting *Burlington*, 471 U.S. at 372) (quotation marks omitted).

In *Susquenita*, this Court affirmed an interim order requiring a school district to reimburse parents for their child's then-current placement even though the Court had yet to reach a decision on the merits. *Id.* at 87. This Court explained that if the parents were denied reimbursement while the dispute was pending, "the child's right to a free appropriate public education" would be "less than complete." *Id.* at 86 (quoting *Burlington*, 471 U.S. at 370). Thus, this Court understood that reimbursement for the cost of a child's education during an IDEA dispute is central

to the Act's promise of a free education for children with disabilities. And the *Ridley II* judgment enforced that IDEA right by granting Parents a material benefit—the return of money they had expended on their child's education—that permanently changed their legal relationship with Ridley School District.

## B.    Parents' lawsuit vindicated the right guaranteed by the IDEA to educational stability.

As this Court has observed, "the stay-put provision is designed to ensure educational stability for children with disabilities until the dispute over the placement is resolved, regardless of whether their case is meritorious or not." *Ridley II*, 744 F.3d 112, 124-25 (3d Cir. 2014) (quotation marks omitted) (citing *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996)); *see also D.M. v. N.J. Dep't of Educ.*, 801 F.3d 205, 211 (3d Cir. 2015). The IDEA's stay-put provision is a "clear directive" that demonstrates a congressional intent "to strip schools of the *unilateral* authority" to change a child's placement during "proceedings [that] might prove long and tedious." *Honig v. Doe*, 484 U.S. 305, 323-24 (1988). Senator Harrison Williams, a principal author of the Act, made clear that interruption in a child's educational placement "can result in a substantial setback to the child's development." 121 Cong. Rec. 37,416 (1975).

The stay-put provision "guarantees consistency in a child's learning environment" because it prevents "interruption and the concomitant risk of a setback in the child's development." *Tokarcik v. Forest Hills Sch. Dist.*, 665 F.2d

443, 453-54 (3d Cir. 1981). Requiring school districts to pay for stay-put costs is an "unavoidable consequence of the balance Congress struck to ensure stability for a vulnerable group of children." *Ridley II*, 744 F.3d at 128.[2]

Because Parents in *Ridley II* achieved reimbursement for out-of-pocket costs spent to protect their child's right to educational consistency in the face of Ridley's failure to comply with the IDEA, Parents are entitled to reasonable attorneys' fees.

* * *

Before concluding, we are compelled to respond to the school district's incorrect and paradoxical claim that *Ridley II* involved no decision on the merits because Parents only obtained relief "automatically afforded" by the IDEA's stay-put provision. Appellee's Br. 7; *see also id.* at 1, 8, 16, 17. To be sure, the moment the hearing officer ruled in Parents' favor, Parents were entitled to payment for E.R.'s tuition. *See* 34 C.F.R. § 300.518(a). Ridley has repeatedly acknowledged as much. *See, e.g.*, A-52 n.8. But here—and this is where the paradox comes in— relief was anything but "automatic." In fact, Ridley consistently refused to pay *any* of E.R.'s tuition—even prior to the district court's decision in *Ridley I*, and even

---

[2] *See also Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009) ("[T]he stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process."); *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 695 (5th Cir. 1996) ("One of the obvious purposes of the 'stay-put' provision is to reduce the chance of a child being bounced from one school to another . . . ."); *Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160-61 (2d Cir. 2004) (recognizing stay-put provision reflects Congress's policy favoring educational stability).

for the portion that accrued before that decision came down—tuition that the school district indisputably was obligated to pay. Parents were thus forced to retain an attorney to bring suit, and then to defend their district-court win in *Ridley II* on appeal to this Court and to the Supreme Court.

Ridley had every right, both before this Court and in the Supreme Court, to pursue the question whether the stay-put obligation exists during appellate proceedings. But it is more than a little ironic that Ridley—the party that protracted *Ridley II*, and ran up Parent's attorneys' fees—now asks this Court to require Parents to bear the costs of the dispute, costs that now significantly outstrip the tuition amount itself.

## CONCLUSION

Parents are prevailing parties entitled to attorneys' fees in light of their complete success in *Ridley II*. The district court's decision should be reversed and the case remanded for a determination of a reasonable fee.

Respectfully submitted,

_____

**Alan L. Yatvin**
*Attorney for the Appellants*[*]

---

[*] Counsel gratefully acknowledges the substantial assistance of Meghan Breen, Madeline Meth, and Ellen Noble, third-year students at Georgetown University Law Center's Appellate Courts Immersion Clinic, who played key roles in preparing this brief.

## CERTIFICATION OF BAR MEMBERSHIP

I, Alan L. Yatvin, hereby certify that I am a member in good standing of the

Bar of the United States Court of Appeals for the Third Circuit.

**Alan L. Yatvin**

## CERTIFICATION OF COMPLIANCE WITH F.R.A.P. AND 3D. CIR. L.A.R. 25, 28, 32

Undersigned counsel for appellant hereby certifies that he has complied with the requirements of F.R.A.P. 25, 28 and 32 and 3rd Cir. L.A.R. 25, 28 and 32, as follows:

1. The font type and size is Times New Roman 14pt, a proportionally spaced, fully justified, serif font (exclusive of the cover).

2. The complete word and line count (exclusive of the cover, tables and certifications), as measured by Word 2016, are 3,949 and 327, respectively.

3. The text of the e-brief and hard copy brief is identical.

4. A virus check was performed on the PDF of the e-brief with Windows 10 Defender (definitions ver. 1.237.323.0).

_____

**Alan L. Yatvin**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has caused to be served a copy of the Appellants' Reply Brief upon the following, by ECF and First Class Mail, pre-paid:

John F.X. Reilly
Attorney-at-Law
230 N. Monroe St.
Media, PA 19063-2908
(610) 565-0975

The brief is being filed by Third Circuit ECF, and by filing of 7 copies of the brief with the Clerk of the Court of Appeals within 5 days of the electronic filing.

**Alan L. Yatvin**
*Attorney for Appellants*

March 3, 2017