No. 16-2465

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

M.R. AND J.R., PARENTS OF E.R., A MINOR,

Appellants,

v.

RIDLEY SCHOOL DISTRICT,

Appellee.

_____

On Appeal From The
United States District Court For
The Eastern District Of Pennsylvania,
Judge Mitchell S. Goldberg,
No. 2:11-cv-02235

_____

## APPELLEE RIDLEY SCHOOL DISTRICT'S PETITION FOR REHEARING EN BANC

_____

John F.X. Reilly
Solicitor
Ridley School District
230 North Monroe Street
Media, PA 19063-2908
(610) 565-0975

Pratik A. Shah
Z.W. Julius Chen
AKIN GUMP STRAUSS HAUER
  & FELD LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
(202) 887-4000
pshah@akingump.com

*Counsel for Ridley School District*

**REQUIRED STATEMENT FOR REHEARING EN BANC**

Pursuant to Federal Rule of Appellate Procedure 35(b)(1) and Local Appellate Rule 35.1, counsel for petitioner express a belief, based on a reasoned and studied professional judgment:

(i) that the panel decision is contrary to decisions of the United States Court of Appeals for the Third Circuit, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court, *i.e.*, the panel's decision is contrary to the decision of this court in *J.O. v. Orange Township Board of Education*, 287 F.3d 267 (3d Cir. 2002), and *John T. v. Delaware County Intermediate Unit*, 318 F.3d 545 (3d Cir. 2003); and

(ii) that this appeal involves a question of exceptional importance, *i.e.*, involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue, *e.g.*, *Tina M. v. St. Tammany Parish Sch. Bd.*, 816 F.3d 57 (5th Cir.), *cert. denied*, 137 S. Ct. 371 (2016); *Maine Sch. Admin. Dist. No. 35 v. Mr. R.*, 321 F.3d 9 (1st Cir. 2003); *Board of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377 (7th Cir. 2000).

# TABLE OF CONTENTS

REQUIRED STATEMENT FOR REHEARING EN BANC ................................... i

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 2

    A.    Legal Framework ......................................................................... 2

    B.    Factual Background And Procedural History ...................................... 3

        1.    *IEP Merits Litigation* ................................................. 3

        2.    *Stay-Put Litigation* .................................................... 4

REASONS FOR GRANTING REHEARING EN BANC ...................................... 6

THE PANEL DECISION DISREGARDS BINDING THIRD CIRCUIT
PRECEDENT AND CONFLICTS WITH DECISIONS FROM THE FIRST,
FIFTH, AND SEVENTH CIRCUITS ................................................................. 6

    A.    This Court, In Line With Other Circuits, Does Not Permit An
        Award Of Attorney's Fees Based Solely On Stay-Put Relief............... 7

        1.    *Third Circuit precedent.* ............................................ 7

        2.    *Other circuit precedent.* ............................................ 9

    B.    The Panel's Reasoning Contravenes Settled Points Of Law That
        Preclude An Award Of Attorney's Fees Here................................. 10

        1.    *This Court has previously rejected the statutory and
            policy arguments credited by the Panel.* ..................... 11

        2.    *Precedent forecloses the Panel's illusory
            prospective/retroactive distinction.* ........................... 13

CONCLUSION ............................................................................................. 17

CERTIFICATIONS ....................................................................................... 18

# TABLE OF AUTHORITIES

<u>C</u>ases:

*Bagby v. Beal*,
606 F.2d 411 (3d Cir. 1979) ............................................................12

*Board of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*,
89 F.3d 464 (7th Cir. 1996) ..............................................................10

*Board of Educ. of Oak Park v. Nathan R.*,
199 F.3d 377 (7th Cir. 2000) .........................................................8, 10

*Drinker v. Colonial Sch. Dist.*,
78 F.3d 859 (3d Cir. 1996) ...............................................................15

*J.O. v. Orange Twp. Bd. of Educ.*,
287 F.3d 267 (3d Cir. 2002) .....................................................*passim*

*John T. v. Delaware Cty. Intermediate Unit*,
318 F.3d 545 (3d Cir. 2003) .....................................................*passim*

*M.R. v. Ridley Sch. Dist.*,
744 F.3d 112 (3d Cir. 2014) ...............................................................5

*Maine Sch. Admin. Dist. No. 35 v. Mr. R.*,
321 F.3d 9 (1st Cir. 2003)..................................................................10

*People Against Police Violence v. City of Pittsburgh*,
520 F.3d 226 (3d Cir. 2008) ..............................................................12

*Ridley Sch. Dist. v. M.R.*,
No. 09-cv-2503, 2011 WL 499966 (E.D. Pa. Feb. 14, 2011)...............4
680 F.3d 260 (3d Cir. 2012) ................................................................4

*Schaffer ex rel. Schaffer v. Weast*,
546 U.S. 49 (2005)...............................................................................2

*School Comm. of Burlington v. Department of Educ. of Mass.*,
471 U.S. 359 (1985)......................................................................3, 16

*Smith v. Robinson*,
  468 U.S. 992 (1984)..............................................................................3

*Termine ex rel. Termine v. William S. Hart Union High Sch. Dist.*,
  288 F. App'x 360 (9th Cir. 2008) .......................................................10

*Tina M. v. St. Tammany Parish Sch. Bd.*,
  816 F.3d 57 (5th Cir. 2016) ................................................9, 10, 13

## STATUTES:

20 U.S.C.
  § 1415(*i*)(3)(B)..................................................................................3
  § 1415(j)..............................................................................................3

## OTHER AUTHORITIES:

FED. R. APP. P.
  35(b)(1)(A).........................................................................................9
  35(b)(1)(B).........................................................................................9

# INTRODUCTION

In *J.O. v. Orange Township Board of Education*, 287 F.3d 267 (3d. Cir. 2002), and *John T. v. Delaware County Intermediate Unit*, 318 F.3d 545 (3d Cir. 2003), this Court held without qualification that a child or parent who merely obtains relief under or enforces the "stay-put" provision of the Individuals with Disabilities Education Act (IDEA)—a provision akin to an automatic preliminary injunction that maintains a child's current educational placement pending resolution of a dispute with a school district—and fails to obtain relief on the merits of an underlying IDEA claim is *not* a "prevailing party" entitled to attorney's fees under the IDEA's fee-shifting provision.  In reaching that conclusion, this Court expressly aligned itself with the Seventh Circuit.  And since then, the First and Fifth Circuits, relying on this Court's decisions, have adopted the same legal rule.

The Panel decision permitting an award of attorney's fees in this case breaks with that uniform body of precedent.  Because this Court rejected Appellant Parents' underlying challenge to the merits of the individualized education plan that Appellee Ridley School District prepared for their child, their claim for "prevailing party" status and attorney's fees rests entirely on the fact that the District Court granted interim relief pursuant to the stay-put provision.  But that is

precisely the type of claim foreclosed by *J.O.*, *John T.*, and decisions from three other federal courts of appeals.

Instead of dutifully applying that precedent, the Panel goes to great lengths to reach a different result: it looks to the text of a different fee-shifting provision and related case law; invokes the general goals of the IDEA; and when it finally grapples with *J.O.*, *John T.*, and the other on-point case law, it brushes those decisions aside with a novel and artificial distinction between forward-looking and backward-looking stay-put relief that (i) is unrelated to whether Parents prevailed on the merits of an IDEA claim, and (ii) was not even advanced by Parents. To make matters worse, this Court has previously rejected each of the Panel's grounds for permitting a fee award based solely on stay-put relief—even when presented with materially indistinguishable facts. Rehearing en banc is therefore necessary to resolve the Panel decision's irreconcilable conflict with *J.O.* and *John T.*, which remain good law in three other circuits.

## BACKGROUND

### A.    Legal Framework

The IDEA establishes a "cooperative process *** between parents and schools," the cornerstone of which is the development and annual revision of an "individualized education program" (IEP). *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). When parents and school districts fail to agree on an IEP,

either may pursue relief "through the carefully tailored administrative and judicial mechanism set out in the statute." *Smith v. Robinson*, 468 U.S. 992, 1009 (1984).

While these dispute-resolution proceedings are ongoing, the IDEA's "stay-put" provision provides that "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child \*\*\* until all such proceedings have been completed."  20 U.S.C. § 1415(j).  When the then-current education placement is a private school, a school district is obligated to cover the costs of that placement.  In addition, parents who unilaterally enroll their children in private schools are entitled to reimbursement if private placement is ultimately deemed to be proper under the IDEA.  *See School Comm. of Burlington v. Department of Educ. of Mass.*, 471 U.S. 359, 369-374 (1985).

The IDEA contains a fee-shifting provision authorizing a district court to "award reasonable attorneys' fees," but only to "prevailing part[ies]."  20 U.S.C. § 1415(*i*)(3)(B).

### B.    Factual Background And Procedural History

#### 1.    IEP Merits Litigation

Ridley School District proposed an IEP for then-first-grade student E.R. E.R.'s Parents rejected that IEP, enrolled E.R. in the private Benchmark School, and filed an administrative due process complaint.  Add. 5.  An administrative

Hearing Officer concluded that Ridley failed to provide an appropriate educational program for E.R.  Add. 6.

Ridley petitioned for judicial review in the Pennsylvania Commonwealth Court, and Parents removed the petition to the District Court, which reversed the Hearing Officer and entered summary judgment for Ridley.  The District Court explained that the "un-refuted record reflects that after *** several revisions which Parents approved," the proposed IEP complied with the IDEA's requirements. *Ridley Sch. Dist. v. M.R.*, No. 09-cv-2503, 2011 WL 499966, at *15 (E.D. Pa. Feb. 14, 2011).

This Court affirmed the merits decision in Ridley's favor.  *Ridley Sch. Dist. v. M.R. (Ridley I)*, 680 F.3d 260 (3d Cir. 2012).  Among other things, this Court held that the District Court "properly reversed the Hearing Officer's finding that the IEP was inadequate," *id.* at 279, and criticized a key part of the Officer's opinion as "made in conclusory fashion" and "not well-explained or well-supported," *id.* at 275.

### 2.    *Stay-Put Litigation*

***a.***  While Parents' appeal of the merits of the IEP was pending, Parents sued Ridley for payment of E.R.'s past and ongoing private educational placement, as well as associated costs.  Relying on the IDEA's so-called "stay-put" provision, they argued that Ridley was required to pay "for E.R.'s pendent placement at the

Benchmark School," A-19, from the date of the Hearing Officer's decision "through the exhaustion of appeals" of that decision. A-24-25. The District Court agreed. A-5. Months later, the District Court entered an order awarding $57,658.38 to Parents, exclusive of counsel fees. A-5-6.

Ridley appealed the District Court's stay-put order to this Court, which affirmed. *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112 (3d Cir. 2014). This Court explained that the stay-put provision "serves, 'in essence, as an automatic preliminary injunction' *** 'without satisfaction of the usual prerequisites to injunctive relief,'" *id.* at 118 (citation omitted), and that the stay-put obligation continued during Parents' *Ridley I* appeal on the merits, *id.* at 120-128.

Ridley petitioned the U.S. Supreme Court for a writ of certiorari. The Court called for the views of the Solicitor General, but ultimately denied Ridley's petition. A few weeks later, Ridley paid the "stay-put" award in full, with interest. A-101-103.

***b.*** Parents filed a motion seeking attorney's fees related to the stay-put litigation (but not the underlying IEP merits litigation) on the ground that they were "prevailing parties under the IDEA." A-6-7. The District Court denied Parents' motion. A-3-11. The District Court recognized that under this Court's decisions in *J.O.* and *John T.*, "the successful enforcement of a stay put order does not support an award for attorney's fees because such relief is interim and not

5

merits based." A-10. Finding those cases to be "directly on point," the District Court held that authority to "foreclose[] Parents' request for attorney's fees in the case." A-10-11.

A Panel of this Court reversed. According to the Panel, retroactive reimbursement pursuant to the stay-put provision is "merits-based and confers 'prevailing party' status." Add. 11. The Panel "dr[e]w support, first, from the IDEA's text; second, from [its] case law; and third, from the persuasive precedent in other Circuits." *Id.* The Panel viewed *J.O.* and *John T.* as concerning only forward-looking interim injunctive relief and thus "wholly different" from the facts here. Add. 18-20.

## REASONS FOR GRANTING REHEARING EN BANC

**THE PANEL DECISION DISREGARDS BINDING THIRD CIRCUIT PRECEDENT AND CONFLICTS WITH DECISIONS FROM THE FIRST, FIFTH, AND SEVENTH CIRCUITS**

As the District Court explained (A-7-11), the denial of fees in this case follows from a pair of "directly on point" Third Circuit decisions holding that parents are *not* prevailing parties if they failed to prevail on the merits of an IDEA claim and obtained only recognition or enforcement of stay-put relief. The First, Fifth, and Seventh Circuits agree. Although the Panel attempts to avoid those authorities, the artificial prospective/retrospective distinction it fashions cannot

6

obscure that the Panel departed from binding circuit precedent and, in doing so, split with other courts of appeals.  Rehearing en banc is therefore warranted.

### A.    This Court, In Line With Other Circuits, Does Not Permit An Award Of Attorney's Fees Based Solely On Stay-Put Relief

#### 1.    *Third Circuit precedent.*

The Panel's conclusion that attorney's fees are available to Parents simply because they obtained stay-put relief has twice been rejected by this Court in precedential opinions.

In *J.O.*, this Court affirmed the denial of fees to a parent who obtained an administrative order that a child (C.O.) be temporarily reinstated to the high school from which he had been suspended.  287 F.3d at 270.  Although this Court acknowledged that such relief furthered an "important interest" protected by the IDEA, it held that the order "to have C.O. educated at school rather than at home while [an] evaluation was undertaken" was insufficient to confer "prevailing party" status.  *Id.* at 272.  That is because the administrative order was "analogous to a 'stay-put' order *** designed to maintain the status quo" pending subsequent resolution on the merits, and under settled law "a party cannot be a prevailing party if the interim relief received is not merit-based."  *Id.* at 272-273 (administrative order was "analogous to a stay-put order, that did not affect the merits of C.O.'s permanent educational placement").  In so holding, this Court cited Seventh Circuit precedent for the proposition that "invocation of the stay-put provision of the

IDEA does not entitle the party to attorney's fees." *Id.* at 273 (quoting *Board of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 382 (7th Cir. 2000)).

Applying the reasoning of *J.O.*, this Court in *John T.* affirmed the denial of attorney's fees to parents who had obtained enforcement of stay-put relief and compensation for privately incurred costs unrelated to the merits of the underlying IEP dispute. In that case, the parents paid for their child to attend a private school, at which their child "received some publicly-funded special education *** services." 318 F.3d at 548-549. The Delaware County Intermediate Unit ("DCIU"), which was responsible for funding those services, remained willing to provide them "at a public school" but "refused to continue providing them" at the private school. *Id.* at 549. The parents covered the cost of the services and sued in district court, seeking (among other things) "compensation" for their costs. *Id.*

The district court entered a preliminary injunction, requiring the DCIU to provide certain services at the private school. 318 F.3d at 549. Because the DCIU did not comply with the injunction, the court held the DCIU in contempt, *see id.* at 549-551, and ordered it "to pay John T. $1,100 to compensate him for providing services *** at his own expense," *id.* at 551. When John T. moved for attorney's fees under the IDEA, however, the district court denied his motion. *Id.*

This Court affirmed, holding that John T. was "not a prevailing party." 318 F.3d at 558. It explained that, "[l]ike the stay-put order at issue in *J.O.*," the

preliminary injunction was "interim relief not based on the merits." *Id.* at 558-559. It further held that the contempt order enforcing the preliminary injunction—including the unconditional award of $1,100—was also interim relief not based on the merits. *Id.* at 559-560.

In sum, this Court has considered head-on the question whether stay-put relief standing alone triggers fee-shifting under the IDEA, and has concluded that it does not. The Panel here impermissibly reached the exact opposite conclusion. Rehearing en banc is appropriate for that reason alone. FED. R. APP. P. 35(b)(1)(A).

### 2. *Other circuit precedent.*

En banc review is doubly necessary here because the Panel's decision also "involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue." FED. R. APP. P. 35(b)(1)(B). The conflict is especially stark because other courts of appeals have expressly adopted the reasoning of this Court's decisions.

In *Tina M. v. St. Tammany Parish School Board*, the Fifth Circuit held "that obtaining a stay-put order under the IDEA is not sufficient to qualify a litigant as a 'prevailing party,'" and observed that its holding "is consistent with several other circuit courts that have addressed this issue." 816 F.3d 57, 58, 61-62 (5th Cir.), *cert. denied*, 137 S. Ct. 371 (2016). The Fifth Circuit quoted at length from *J.O.*,

*id.* at 62, and (like this Court) aligned itself with the Seventh Circuit, *id.* at 61-62; *see Board of Educ. of Oak Park*, 199 F.3d at 382 ("[W]e *** have stated explicitly that invocation of the stay-put provision of the IDEA does not entitle the party to attorneys' fees."); *Board of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d 464, 469 (7th Cir. 1996) ("The law does not view Andrew's parents as a prevailing party *** because their only ultimate victory under the IDEA is the invocation of the stay-put provision.").

Likewise, in *Maine School Administrative District No. 35 v. Mr. R.*, the First Circuit reasoned that "a successful invocation of the IDEA's stay-put provision" would not support an award of attorney's fees. 321 F.3d 9, 15 (1st Cir. 2003). In reaching that conclusion, the First Circuit cited *J.O.* (and the same line of Seventh Circuit precedent cited by *J.O.* and the Fifth Circuit). *Id.*[1]

### B.    The Panel's Reasoning Contravenes Settled Points Of Law That Preclude An Award Of Attorney's Fees Here

The foregoing makes clear that the proper resolution of this case required nothing more than a straightforward application of the widely accepted principle that stay-put relief by itself cannot support an award of attorney's fees under the

---

[1] The First Circuit ultimately awarded fees because the school district there brought suit "to enjoin the operation of the stay-put provision." *Maine Sch. Admin.*, 321 F.3d at 15-16 (stressing that parents "were haled into court"). Similarly, in *Termine ex rel. Termine v. William S. Hart Union High School District*, 288 F. App'x 360 (9th Cir. 2008), the Ninth Circuit allowed fees because plaintiffs obtained a stay-put order *and* prevailed on the merits of their underlying IDEA claim. *See Tina M.*, 816 F.3d at 61 n.*.

IDEA. On the relevant facts, this case is on all fours with those that came before it.

> In both *John T.* and the case before me there was a determination that the student was to continue to receive services at the current placement during the pendency of the litigation—essentially stay put orders. In both cases, the defendants refused to reimburse parents for the expenses they incurred in maintaining that placement. Following this refusal, both students successfully obtained judicial intervention to compel the defendants to comply with the stay put orders—in the case before me a judgment in a separate action and, in *John T.*, a contempt order. Significantly, neither case resulted in a ruling in favor of the student on the merits of their underlying IDEA claim.

A-10. The Panel arrived at a different result for two principal reasons, both of which demonstrate the Panel's determination to shift fees in the face of *J.O.* and *John T.* and reinforce the need for en banc review.

> 1. *This Court has previously rejected the statutory and policy arguments credited by the Panel.*

Instead of starting with the on-point case law (inside and outside this Circuit) addressing the availability of attorney's fees under the IDEA for obtaining stay-put relief (and nothing more), the Panel turned first to the "statutory text" and "statutory context"—including that of a *different* fee-shifting statute. Add. 12-17. In particular, the Panel declared that it was "bound by [its] cases addressing [the "prevailing party" language of 42 U.S.C.] § 1988," cited two section 1988 cases that purportedly "counsel in favor of" fee-shifting here, and as if writing on a blank slate "import[ed] th[eir] analysis into the IDEA context." Add. 12-15. In doing so,

however, the Panel ignored the most relevant (binding) statement from its favored section 1988 cases: "[T]his Court has held that 'stay put' orders which merely serve to maintain the status quo *pendente lite* do not afford meaningful relief on the merits of the underlying claims and will not suffice." *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232 (3d Cir. 2008) (citing *J.O.* and *John T.*).

*John T.*, in turn, had already considered the text of the IDEA's fee-shifting provision and applied section 1988 "prevailing party" jurisprudence in holding that stay-put relief would *not* trigger attorney's fees. *See* 318 F.3d at 560 ("When the IDEA fee-shifting provision authorizes attorneys fees 'in any action or proceeding brought under this section,' it not only limits the universe to which it applies but also clarifies the *type* of proceeding on which a party must 'prevail.'") (citation omitted); *id.* at 555 n.4 (discussing section 1988 "prevailing party" jurisprudence). And *J.O.* discussed and distinguished the other section 1988 case that the Panel cites. *See* 287 F.3d at 273 (considering *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979)). Accordingly, *People Against Police Violence* and *Bagby* cannot support the Panel's result.

In addition, quoting various IDEA-related congressional findings and legislative history, the Panel explained why (in its view) "[t]he IDEA's statutory scheme accords far better with an attorneys' fee regime that allows parents to take

effective legal action if necessary to enforce their 'stay put' rights."  Add. 15-17

("[W]e must consider the practical consequences of withholding attorneys' fees in

cases like this one.").   But this Court previously rejected those same policy

arguments in *denying* fees in the stay-put context.  *See John T.*, 318 F.3d at 558

("[T]o the extent that John T. invites us to interpret anew the term 'prevailing

party' in light of the IDEA policies, we decline to do so."); *id.* at 560 ("Congress

surely did not seek to provide attorneys fees to any party who could prove the

'merits' of civil contempt independent of an IDEA success."); *J.O.*, 287 F.3d at

274 (citing "stay-put provision" as indication that "[t]he maintenance of a child's

educational placement is an important aspect of IDEA"); *accord Tina M.*, 816 F.3d

at 62 (quoting *J.O.*).

Resolving the conflicting conclusions drawn by the Panel, on the one hand,

and *J.O.* and *John T.* (not to mention other courts of appeals), on the other, is a

core function of en banc review.

## 2. *Precedent forecloses the Panel's illusory prospective/retroactive distinction.*

To avoid *J.O.* and *John T.*, the Panel erects a novel distinction (never

advanced by Parents) premised on the existence of "two concomitant rights" under

the stay-put provision:  (1) "a physical right for a child with a disability to 'stay

put' in her 'then-current educational placement,' which is a temporary right to

forward-looking injunctive relief that does not determine the merits of any claim";

and (2) "the parents' right to monetary reimbursement or, alternatively, the child's right to compensatory education, both of which are rights to backward-looking compensatory relief and require an independent merits determination." Add. 17-22. That artificial distinction does nothing to avert the intra- and inter-circuit conflict and is unrelated to the dispositive question whether Parents obtained relief on the merits of an IDEA claim.

This case is hardly the first to "address[] eligibility for fees in a case where a party received backward-looking and compensatory relief arising from the IDEA's 'stay-put' provision." Add. 11. This Court in *John T.* confronted a backward-looking compensatory award of $1,100. Although the Panel characterizes that award as a non-compensatory approximation of losses meant only to enforce an underlying forward-looking and temporary injunction, Add. 18-19, those characterizations wither in the face of what *John T.* plainly holds: "payment to John T. of $1,100" is "*retroactive*" and "intended to *compensate* John T. for the costs associated with the DCIU's failure to comply with the Preliminary Injunction, *i.e.*, the costs of providing a teacher's aide for one month." 318 F.3d at 553-554 (emphasis added). If that retroactive compensatory relief was not sufficient to trigger fee-shifting under the IDEA, the Panel could have reached a different result here only by effectively overruling *John T.*—a power that only the en banc Court can exercise.

As to the legal basis for its prospective/retrospective distinction, the Panel cites *Drinker v. Colonial School District*, 78 F.3d 859 (3d Cir. 1996).  Add. 17, 21-22.  But *Drinker* held that the stay-put provision "functions \*\*\* as an *automatic* preliminary injunction" available to parents "*regardless* of whether their case is meritorious or not."  78 F.3d at 864-865 (emphasis added).  That same holding undergirded this Court's conclusions in *J.O.* and *John T.* that the stay-put provision provides interim and non-merit-based relief inherently incapable of supporting a fee award.  *See John T.*, 318 F.3d at 556 (recounting that *J.O.* quoted *Drinker*, "focused on the *interim* nature of the [stay-put] relief," and held that stay-put relief was not "merit-based").  Consequently, regardless of how "reimbursement awards" are treated for fee-shifting purposes "in the broader context of the IDEA," Add. 20 & n.6, the Panel's chronological distinction cannot transform the grant of automatic relief under the stay-put provision into a victory on the merits of an IDEA claim.[2]

Beyond *Drinker*, whether the stay-put provision is enforced prospectively or retrospectively is legally irrelevant because the result is the same:  the school district bears the cost of the private placement.  As the Supreme Court has explained, "[r]eimbursement [per the stay-put provision] merely requires the

---

[2] In allowing parents to renew their attorney's fees motion on remand, *Drinker* did not "confirm[] that the parents were prevailing parties," Add. 17; to the contrary, *Drinker* expressly declined to "address that issue."  78 F.3d at 868.

[school district] to belatedly pay [private-placement] expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." *School Comm. of Burlington*, 471 U.S. at 370-371. The facts here are instructive: Parents sought payment from Ridley not only for "amounts [already] expended by them," but also for the same costs "going forward until all appeals" on the merits of the IEP "have been exhausted"—*i.e.*, payment for the entire period during which the stay-put provision was operative. A-25-26. All of that relief ended up being retrospective only because the *Ridley I* appeal concluded before the District Court issued its stay-put order. Accordingly, Parents are no more a "prevailing party" than those who obtain an injunction requiring their child to be educated in a private placement at the school district's expense.

## CONCLUSION

This Court should grant the petition for rehearing en banc.

Respectfully submitted,

/s/ Pratik A. Shah

| | |
|---|---|
| John F.X. Reilly | Pratik A. Shah |
| Solicitor | Z.W. Julius Chen |
| Ridley School District | AKIN GUMP STRAUSS HAUER |
| 230 North Monroe Street | & FELD LLP |
| Media, PA 19063-2908 | 1333 New Hampshire Avenue, NW |
| (610) 565-0975 | Washington, DC 20036-1564 |
| | (202) 887-4000 |
| | pshah@akingump.com |

*Counsel for Ridley School District*

September 5, 2017

# CERTIFICATIONS

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

## CERTIFICATION OF SERVICE

I certify that this day I served two copies of the foregoing Petition for Rehearing En Banc via First-Class Mail and via this Court's ECF system to the person below:

> Alan. L. Yatvin
> Popper & Yatvin
> 230 S. Broad St. Suite 503
> Philadelphia, PA 19102

## CERTIFICATION OF COMPLIANCE

I certify that:  (i) this petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,899 words, excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(f); and (ii) this petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared using Microsoft Word in 14-point Times New Roman.

## CERTIFICATION OF IDENTICAL PAPER COPIES

I hereby certify that the text of the PDF file and hard copies of this petition are identical.

## CERTIFICATION OF VIRUS CHECK

I hereby certify that a virus check was performed on the PDF of this petition using Malewarebytes version 3.2.2.2018, and that no virus was indicated.

Dated:  September 5, 2017                    /s/ Pratik A. Shah
                                            Pratik A. Shah

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2465
_____

M.R.; J.R.,
Parents of Minor Child E.R.,
Appellants

v.

RIDLEY SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civil Action No. 2:11-cv-02235)
Honorable Mitchell S. Goldberg, U.S. District Judge
_____

Argued: March 30, 2017

Before: VANASKIE, KRAUSE, and RESTREPO, *Circuit
Judges*

(Opinion Filed:   August 22, 2017)

Alan L. Yatvin (Argued)
Popper & Yatvin
230 South Broad Street, Suite 503
Philadelphia, PA 19102

*Attorney for Plaintiff-Appellants M.R. and J.R.*

John Francis X. Reilly (Argued)
230 North Monroe Street
Media, PA 19063

*Attorney for Defendant-Appellee Ridley School District*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

Under the Individuals with Disabilities Education Act, a parent of a child with a disability can bring administrative and judicial proceedings to challenge a school district's alleged violations of the Act, and, if the parent emerges as "a prevailing party," the parent is then eligible for an award of attorneys' fees.  20 U.S.C. § 1415(i)(3)(B).  This case presents the question whether a fee award is available to parents who, after unsuccessfully challenging a school district's proposed educational placement for their child, later obtain a court order requiring the school district to reimburse them for the costs of the child's "stay put" placement—the "then-current educational placement" in which the Act permitted the child to remain while administrative and

2

judicial proceedings were pending. *Id.* § 1415(j). We answer this question in the affirmative and conclude, consistent with the Act's text and with the opinions of this Court and the other Courts of Appeals, that a court-ordered award of retrospective and compensatory relief, even if awarded under the Act's "stay put" provision, 20 U.S.C. § 1415(j), confers "prevailing party" status. We therefore will reverse the District Court's denial of attorneys' fees and remand for proceedings consistent with this opinion.

## I.    Background

This case pertains to a long-running dispute between Appellants, the parents of E.R., and Appellee, the Ridley School District, concerning E.R.'s schooling and Ridley's obligations under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482. Before turning to the details of that dispute, we briefly review the statutory framework from which it arose.

### A.    Statutory Context

The IDEA is a comprehensive statutory scheme enacted "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). To that end, the Act allocates federal dollars to assist the states' educational services for children with disabilities. *Id.* § 1411(a)(1). In return, recipient states must provide a "free appropriate public education" to children with disabilities residing in their states, an "individualized education program" ("IEP") for each child with a disability, and specified procedural safeguards for children with disabilities and their parents. *Id.* § 1412(a)(1), (4), (6).

3

**Add. 003**

One consequence of the IDEA's requirements is that school districts must sometimes reimburse parents of children with disabilities for educational expenses made on their children's behalf. Specifically, because an IEP must account for a child's "strengths," the parents' "concerns" about the child's education, the child's most recent disability evaluation, and the child's "academic, developmental, and functional needs," *id.* § 1414(d)(3)(A), an IEP that meets the Act's requirements may require the child to be placed in a private school. If so, the IDEA obliges the school district, in providing the child with a "free appropriate public education," to reimburse the parents for the child's private-school tuition and related expenses. *See Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 363, 369-70 (1985); *see also* 20 U.S.C. §§ 1412(a)(10)(B), 1415(i)(2)(C).

This reimbursement obligation exists not only when the school district and the parents agree that the child should be in private school but also sometimes when they do not. *See generally* 20 U.S.C. § 1412(a)(10)(C). For example, even when parents place a child in a private-school setting to which the school district will not consent, the school district remains liable for the private-school costs if an adjudicator later determines that the private school was the appropriate educational placement for the child. *See Sch. Comm.*, 471 U.S. at 372-74. And even if, on appeal, a court were ultimately to determine that the private school was not the appropriate educational placement, the child is entitled to "stay put" in the "then-current [private] educational placement" during the pendency of the appeal. 20 U.S.C. § 1415(j). In that circumstance, as long as the child is twenty-one years of age or younger, *see* 20 U.S.C. § 1412(a)(1)(A); *Lauren W. ex rel. Jean W. v. DeFlaminis*,

480 F.3d 259, 272 (3d Cir. 2007), the school district must continue reimbursing the child's parents until the point, if ever, that the "proceedings," including on appeal, resolve in the school district's favor, *M.R. v. Ridley Sch. Dist. (Ridley IV)*, 744 F.3d 112, 117-19, 124-28 (3d Cir. 2014) (quoting 20 U.S.C. § 1415(j)).

School districts have one more economic reason to adhere to the Act's requirements: although under the "American Rule" parties typically pay their own attorneys' fees, district courts can order school districts that lose IDEA disputes to pay "reasonable attorneys' fees" to "a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B); *P.N. ex rel. M.W. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006). The scope of school districts' potential liability for fee awards is the subject of this appeal, the facts of which we recount below.

## B.    Factual and Procedural Background

### 1.    IEP Litigation

E.R. attended an elementary school in the Ridley School District for kindergarten and first grade. *Ridley School District v. M.R. (Ridley II)*, 680 F.3d 260, 264 (3d Cir. 2012). After identifying E.R.'s learning disabilities during her first-grade year, Ridley and E.R.'s parents agreed to an IEP for the remaining months of that academic year. *Id.* at 265-66. The parties' IEP negotiations for second grade, however, were unsuccessful because they disagreed about what reading aids would be appropriate for E.R., so E.R.'s parents opted to enroll her in a private school and to file an administrative complaint accusing Ridley of "fail[ing] to develop an appropriate IEP." *Id.* at 267-77.

5

**Add. 005**

The administrative hearing officer agreed with E.R.'s parents and, in a report dated April 21, 2009, opined that Ridley's proposed IEPs "were inadequate and therefore denied E.R. a free appropriate public education." *Id.* at 267 (internal quotation marks omitted). This decision in the parents' favor during the administrative review process equated to "an agreement between the State and the parents" and rendered E.R.'s private-school placement her "then-current educational placement" for purposes of the IDEA's "stay put" provision. *Ridley IV*, 744 F.3d at 119 (quoting 20 U.S.C. § 1415(j)). Beginning at that point, therefore, Ridley was obliged to reimburse E.R.'s parents for their private-school costs. *See id.*

But the administrative ruling in E.R.'s parents' favor did not fare well in the District Court or on appeal to this Court. After Ridley petitioned for review of the administrative hearing officer's decision, the District Court rejected the parents' contention that the challenged IEPs were "not based on peer-reviewed research" and were therefore deficient, *Ridley Sch. Dist. v. M.R. (Ridley I)*, No. 09-2503, 2011 WL 499966, at *12-15 (E.D. Pa. Feb. 14, 2011), and we affirmed, explaining that "although schools should strive to base a student's specially designed instruction on peer-reviewed research to the maximum extent possible, the student's IEP team retains flexibility to devise an appropriate program, in light of the available research," *Ridley II*, 680 F.3d at 275-79.

## 2.  Reimbursement Litigation

E.R.'s parents did not pursue their IEP-related claims further, but they did ask Ridley to reimburse them for their private-school expenses between the administrative hearing

**Add. 006**

officer's decision in 2009 and the conclusion of the IEP appeal in this Court in 2012. *See Ridley IV*, 744 F.3d at 116-17. When Ridley declined, E.R.'s parents filed suit in the District Court under the IDEA's "stay put" provision, 20 U.S.C. § 1415(j), seeking "to have the cost of [E.R.'s] placement paid through final resolution of the dispute over her educational placement," App. 23.

This time, the District Court ruled in the parents' favor. *See M.R. v. Ridley Sch. Dist. (Ridley III)*, No. 11-2235, 2012 WL 3279230, at *5-13 (E.D. Pa. Aug. 13, 2012). Although Ridley asserted a trio of defenses—claim preclusion, the parents' alleged failure to bring a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) in their first suit, and the IDEA's ninety-day statute of limitations—the District Court rejected each of them, concluding that Ridley's reimbursement obligations began once the hearing officer issued her decision in E.R.'s parents' favor and continued through the completion of the appeals process. *See id.*

On appeal, we affirmed the District Court's decision on the reimbursement issue in full. *See Ridley IV*, 744 F.3d at 120-28. Ridley then petitioned the Supreme Court for a writ of certiorari, which was denied on May 18, 2015. *See Ridley School District v. M.R.*, 135 S. Ct. 2309 (2015). Only after that denial did Ridley reimburse E.R.'s parents as the District Court had ordered in 2012.

### 3.    Attorneys' Fees Motion

Having finally obtained the reimbursement they sought, E.R.'s parents filed a motion for an award of attorneys' fees under the IDEA's attorneys' fees provision,

7

**Add. 007**

20 U.S.C. § 1415(i)(3)(B)(i), but the District Court denied the motion, holding that reimbursement for the costs of E.R.'s temporary "stay put" placement was only "interim" relief and thus E.R.'s parents were not "prevailing parties," App. 10-11. This appeal followed.

## II.    Standard of Review[1]

Although ordinarily we review attorneys' fees rulings for abuse of discretion, our review is plenary where, as here, the district court based its denial on legal conclusions. *Raab v. City of Ocean City*, 833 F.3d 286, 292 (3d Cir. 2016). That is, the District Court here did not deny fees on the ground that, even if E.R.'s parents were "prevailing part[ies]" under § 1415(i)(3)(B)(i), their success was *de minimis*; if it had, then our review would be for abuse of discretion. *See Farrar v. Hobby*, 506 U.S. 103, 114-16 (1992); *id.* at 119 (O'Connor, J., concurring). Instead, the District Court determined, as a threshold matter, that E.R.'s parents were not "prevailing part[ies]," so the District Court lacked discretion to award any fees. Its determination on the "prevailing party" issue is a legal conclusion over which our review is plenary. *See D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 495 (3d Cir. 2012).

## III.    Discussion

Applying this standard of review, we conclude, contrary to the District Court's decision, that E.R.'s parents in

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A). We have jurisdiction pursuant to 28 U.S.C. § 1291.

fact are "prevailing part[ies]" under § 1415(i)(3)(B)(i) and thus are eligible for a fee award.  To provide context for the reasons behind our conclusion, we first retrace the District Court's analysis.

The IDEA attorneys' fee provision, like various other statutory fee-shifting provisions, allows courts to award attorneys' fees to a "prevailing party."    20 U.S.C. § 1415(i)(3)(B)(i).[2]  Because statutory language is generally interpreted in the same way as its "functional equivalent" in a similar context in the United States Code, *Gomez-Perez v. Potter*, 553 U.S. 474, 481 (2008), we interpret this fee provision consistently with other federal statutes using the term "prevailing party," *see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 n.4 (2001).  Thus, to "prevail" under the IDEA, as under other statutes with "prevailing party" fee provisions, a party must obtain a "material alteration of the legal relationship of the parties" that is "judicially sanctioned." *Raab*, 833 F.3d at 292 (quoting *Buckhannon*, 532 U.S. at 604-05).  Importantly, a party achieves a "material alteration" of the parties' legal relationship and "prevail[s]" for attorneys' fees purposes only if he obtains relief that is "in some way merit[s]-based." *Id.* at 293.  Fee-shifting under a "prevailing party" statute is not appropriate, for example, when a plaintiff wins a preliminary injunction with respect to a particular request for relief but

---

[2] *See also, e.g.*, 42 U.S.C. § 1988(b) (certain civil rights statutes); 42 U.S.C. § 2000e-5(k) (Title VII of the Civil Rights Act of 1964); 42 U.S.C. § 3613(c)(2) (Fair Housing Act); 42 U.S.C. § 12205 (Americans with Disabilities Act); 52 U.S.C. § 10310(e) (Voting Rights Act of 1965).

9

then loses on the merits of that request for relief.  *See Sole v. Wyner*, 551 U.S. 74, 86 (2007).

In the IDEA context, our opinions in *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545 (3d Cir. 2003), and *J.O. ex rel. C.O. v. Orange Township Board of Education*, 287 F.3d 267 (3d Cir. 2002), have applied the requirement of merits-based relief to three forward-looking injunctive orders: an order requiring a child's temporary reinstatement to public school after the school district had requested home-schooling, *J.O.*, 287 F.3d at 269-70, a preliminary injunction to preserve supplemental services previously provided by a school district, *John T.*, 318 F.3d at 549-50, and a contempt order aimed at ensuring the school district's compliance with the preliminary injunction, *id.* at 551, 554.  We held in *John T.* and *J.O.* that all three orders relating to temporary and preliminary relief were not merits-based and thus could not confer "prevailing party" status under § 1415(i)(3)(B)(i).  *See John T.*, 318 F.3d at 558-60; *J.O.*, 287 F.3d at 273-74.[3]

---

[3] We acknowledge that our conclusion with respect to the preliminary orders in *J.O.* and *John T.* exists in tension with the fact that, when a preliminary injunction pertains to a child's education, the injunction awards schooling or supplemental services that cannot be nullified, even if an adjudicator ultimately holds that those educational services were not required under the IDEA.  *See generally N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112-13 (9th Cir. 2010) (implying, because the temporary denial of educational services can create irreparable harm, that even interim educational services can create lasting benefits); *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 122 (1st Cir.

In its diligent attempt to follow our opinions in *John T.* and *J.O.*, the District Court here wrote a thoughtful and thorough opinion, denying attorneys' fees because, in comparing the orders in *John T.* and *J.O.* to the reimbursement award here, the District Court reasoned that the reimbursement award was a form of temporary "stay put" relief and that, under *John T.* and *J.O.*, such "interim" relief could not confer "prevailing party" status.    App. 10-11. Although we disagree with that analysis, we acknowledge the novelty of the fee motion before the District Court: *John T.* and *J.O.* addressed forward-looking and injunctive IDEA "stay put" relief, but we have never before addressed eligibility for fees in a case where a party received backward-looking and compensatory relief arising from the IDEA's "stay put" provision.

We hold today that such relief is merits-based and confers "prevailing party" status.    In so doing, we draw support, first, from the IDEA's text; second, from our case law; and third, from the persuasive precedent in other Circuits.

---

2003) (same).    Indeed, a claim for such preliminary and injunctive educational relief could be viewed as having its own merits, independent of a dispute over a child's IEP or educational placement.    *See* 20 U.S.C. § 1415(j).    But *J.O.* and *John T.* constrain us to consider preliminary injunctions in the education context no differently from those outside of the education context, and we therefore will ignore any distinctions between educational and non-educational preliminary injunctions in our discussion below.

11

## A.   Statutory Text

### 1.   "Prevailing Party"

We begin with the IDEA's text. *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). Borrowing from the "prevailing party" fee provision applicable to suits brought under various federal civil rights statutes, 42 U.S.C. § 1988, the IDEA's attorneys' fees provision states that a district court, "in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i).[4]  For that reason, we interpret the language of § 1988 and the IDEA attorneys' fees provision in "the same way," *In re Cmty. Bank*, 418 F.3d 277, 295-96 (3d Cir. 2005), and are bound by our cases addressing § 1988—two of which counsel in favor of holding that E.R.'s parents received merits-based relief that conferred "prevailing party" status.  We discuss those two cases below.

First, in *Bagby v. Beal*, we held that, because the plaintiff was afforded a due process hearing, she was the "prevailing party" under § 1988 with respect to her 42 U.S.C.

---

[4] The text of the IDEA attorneys' fees provision itself, by tracking § 1988 nearly verbatim, makes clear that it is premised on § 1988.  *See* 20 U.S.C. § 1415(i)(3)(B)(i); *cf.* 42 U.S.C. § 1988.   The legislative history reinforces that conclusion, as a conference report on the IDEA's "prevailing party" fees provision expressly references *Marek v. Chesny*, 473 U.S. 1 (1985), a Supreme Court case interpreting § 1988. *See* H.R. Rep. No. 99-687, at 5 (1986) (Conf. Rep.); *see also Marek*, 473 U.S. at 7-18.

§ 1983 procedural due process claim, even if she did not ultimately prevail at the due process hearing. 606 F.2d 411, 414-15 (3d Cir. 1979). We reasoned that the hearing's outcome meant only that the plaintiff did not succeed on her underlying substantive due process claim, even though the fact of the hearing meant that she had prevailed on her procedural due process claim. *See id.*

So too here. Even though E.R.'s parents did not succeed with respect to their request for a permanent private school placement, *see Ridley II*, 680 F.3d at 273-79, they did prevail with respect to their procedural right to reimbursement under the IDEA's "stay put" provision, 20 U.S.C. § 1415(j). *See Ridley IV*, 744 F.3d at 117-19. Indeed, § 1415 has the heading "procedural safeguards," and section headings are "tools available for the resolution of a doubt about the meaning of a statute." *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002)). *Bagby* thus counsels in favor of deeming E.R.'s parents' procedural success a victory "on the merits" that conferred "prevailing party" status. *Bagby*, 606 F.2d at 415.

Second, in *People Against Police Violence v. City of Pittsburgh*, we held that the plaintiffs were "prevailing parties" under § 1988 by virtue of an injunction that had permanently prevented the defending city from enforcing an unconstitutional ordinance; had granted the plaintiffs "what they sought on an enduring basis"; and had been a temporary or "preliminary" injunction only in the sense that it did not apply to the city's later-revised ordinance, which had remedied the preexisting constitutional defects. 520 F.3d 226, 228-30, 232-36 (3d Cir. 2008). Given that the district court's analysis of claims and defenses with respect to the

13

**Add. 013**

unconstitutional first ordinance was independent of its analysis with respect to the revised ordinance, we held that the injunction afforded the plaintiffs "lasting relief on the merits of their claims," *id.* at 229-30, 234, providing "an example of that rare situation where a merits-based determination is made at the injunction stage," *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc).

Here, likewise, the particular claims and defenses about E.R.'s educational placement, which the parties had litigated in the IEP action, were independent of the claims and defenses about Ridley's "stay put" obligations, which the parties litigated in the reimbursement action. *Compare Ridley IV*, 744 F.3d at 120-28, *with Ridley II*, 680 F.3d at 267-83. Because the presence of independent claims and defenses signals the presence of independent merits, *see People Against Police Violence*, 520 F.3d at 229-30, 234; *see also Sch. Dist. v. Lake Asbestos of Quebec, Ltd. (In re Sch. Asbestos Litig.)*, 842 F.2d 671, 678 (3d Cir. 1988), our reasoning in *People Against Police Violence*, like our decision in *Bagby*, favors the view that the reimbursement obtained here, arising from claims and defenses that were independent of those relating to E.R.'s IEP, conferred "prevailing party" status to E.R.'s parents.

Read together, *Bagby* and *People Against Police Violence* support an interpretation of "prevailing party" under 42 U.S.C. § 1988 that allows permanent procedural relief, when the plaintiff has obtained it through an independent merits determination, to confer "prevailing party" status. Today we import that analysis into the IDEA context, where, as we explain below, the IDEA's statutory context and "overall object" provide additional support for holding that

14

**Add. 014**

E.R.'s parents are prevailing parties. *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 375 (3d Cir. 2012) (quoting *Disabled in Action of Pa. v. SEPTA*, 539 F.3d 199, 210 (3d Cir. 2008)).

### 2.    Statutory Context

We read statutory provisions in context, *see King v. Burwell*, 135 S. Ct. 2480, 2489 (2015), and must consider any legislative findings that would "enable us to evaluate [Congress's] legislative judgment," *United States v. Lopez*, 514 U.S. 549, 562-63 (1995).   Here, Congress expressly found that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity . . . for individuals with disabilities," 20 U.S.C. § 1400(c)(1), and thus the statute seeks to make "the education of children with disabilities . . . more effective," to "ensure that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs," and to "ensure that the rights of children with disabilities and parents of such children are protected," *id.* § 1400(c)(5), (d)(1)(A), (d)(1)(B). Along these lines, the IDEA's legislative history reflects that Congress enacted the attorneys' fees provision specifically to ensure "that due process procedures, including the right to litigation if that [becomes] necessary, [are] available to all parents." S. Rep. No. 99-112, at 2 (1985).

These child- and parent-friendly goals are not a reason for us to interpret "prevailing party" under the IDEA any differently than we would under other statutes, *Buckhannon*, 532 U.S. at 610; *John T.*, 318 F.3d at 558, but, in considering the statutory context, we must consider the practical consequences of withholding attorneys' fees in cases like this

15

**Add. 015**

one, *see Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016); *Long*, 671 F.3d at 375. After all, courts are "decidedly receptive" to remedies that are "necessary or at least helpful to the accomplishment of the statutory purpose." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 703 (1979).

We accordingly reject Ridley's contention that any and all relief relating to the IDEA's "stay put" provision simply cannot confer "prevailing party" status. Ridley's position, if made law, would render it impossible in many cases for parents, who ordinarily cannot afford private counsel, to enforce their "stay put" rights. *See generally Kay v. Ehrler*, 499 U.S. 432, 436 & n.8 (1991); *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968). While we are confident the vast majority of school districts view their mission as collaborative, not adversarial, with parents in their joint endeavor to provide children with meaningful educational opportunities and appropriate support, we cannot ignore the reality of occasional lapses. Nor can we allow school districts that ignore their obligations under the IDEA's "stay put" provision to do so with impunity—a result that is the antithesis of the IDEA's goals. *See* 20 U.S.C. §§ 1400(d), 1415(f)-(j).

The IDEA's statutory scheme accords far better with an attorneys' fee regime that allows parents to take effective legal action if necessary to enforce their "stay put" rights. Granted, fees are not available when parents seek a forward-looking "stay put" injunction, *see John T.*, 318 F.3d at 558-60; *J.O.*, 287 F.3d at 273-74, but such injunctive relief is often litigated as part and parcel of the underlying proceedings about the child's IEP or educational placement, *see, e.g., John T.*, 318 F.3d at 549-51, with a commensurate reduction in the time and burden of litigation. By contrast,

when a school district violates its "stay put" obligations and parents must take action—whether by motion or by separate complaint—to obtain retrospective compensatory relief, then, for all practical purposes, the resulting proceedings are separate from any IEP or educational placement proceedings.

Our customary interpretation of the term "prevailing party" and the statutory context of the fee provision at issue compel us to consider not only the course charted by our prior opinions, but also the real consequences of withholding attorneys' fees when parents obtain retrospective compensatory relief arising from the IDEA's "stay put" provision. In situations like these, we conclude that the parents are "prevailing part[ies]" eligible for an award of attorneys' fees under § 1415(i)(3)(B)(i).

## B.    Third Circuit Cases

Our previous opinions in the IDEA context buttress our conclusion in this case. In *P.N. ex rel. M.W. v. Clementon Board of Education*, for instance, we held that an award reimbursing parents for the costs of supplemental services conferred "prevailing party" status under the IDEA. *See* 442 F.3d at 850-51, 856-57. Likewise, after affirming the parents' right to reimbursement for the costs of a child's "stay put" placement in *Drinker ex rel. Drinker v. Colonial School District*, we stated that the parents were "entitled to renew their motion for attorneys' fees" on remand, thereby confirming that the parents were prevailing parties. 78 F.3d 859, 863-68 (3d Cir. 1996). Even when discussing reimbursement related to a temporary "stay put" educational placement, thus, our prior opinions establish that retrospective and compensatory relief can ground a fee award.

17

**Add. 017**

Ridley, however, points to isolated phrases in *John T.* and *J.O.* and contends they oblige us to hold that relief arising from the IDEA's "stay put" provision can never confer "prevailing party" status. Not so. The school district ignores the procedural postures of those cases, which, as discussed above, involved forward-looking and temporary injunctive relief, not backward-looking and compensatory relief that requires an independent merits determination. *See John T.*, 318 F.3d at 549-51, 558-60 (preliminary injunction); *J.O.*, 287 F.3d at 269-70, 273-74 (order granting temporary reinstatement to public school).

To be sure, the contempt order in *John T.* awarded John T.'s parents $1100 as a rough estimate of the value of services that the school district, in violating the district court's preliminary injunction, had refused to provide for a particular month. *John T.*, 318 F.3d at 551. But that monetary award, in contrast to the compensatory relief equating to actual damages awarded here, took the form of a remedial civil sanction, existing not merely to remedy "losses sustained due to noncompliance" but also to "coerce compliance" with the district court's underlying injunction. *Id.* at 554 (emphasis omitted) (quoting *United States v. Pozsgai*, 999 F.2d 719, 735 (3d Cir. 1993)). For that reason, the contempt order awarded an amount approximating John T.'s parents' losses, but did not purport to reimburse their actual expenses. *See McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 240-41 (3d Cir. 2005); *John T.*, 318 F.3d at 554.

As we explained in *John T.*, the contempt order's close relationship with the underlying preliminary injunction alters the nature of the "prevailing party" analysis for such an order: a contempt order is considered "in . . . relation to the underlying relief that it enforces" and cannot confer

"prevailing party" status unless the underlying relief does. *John T.*, 318 F.3d at 559-60. Accordingly, when the underlying relief is forward-looking, injunctive, and temporary, the contempt order is too. *See id.* And the basic equivalence between a contempt order and the underlying relief it enforces extends not only to the "prevailing party" analysis, but also to whether the contempt order is appealable: because "a civil contempt proceeding is a continuation of the underlying civil action from which it arises," in most cases the contempt order is not immediately appealable when the underlying action is not yet appealable. 3A Charles Alan Wright et al., *Federal Practice and Procedure* §§ 703, 714 (4th ed. 2017); *see John T.*, 318 F.3d at 559; *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 636 (3d Cir. 1982). In *John T.*, thus, the contempt order equated to a rewriting of the underlying forward-looking and temporary injunction in stronger terms, and hence it did not confer "prevailing party" status. *See John T.*, 318 F.3d at 559-60.

What we have here is something wholly different. True, the reimbursement suit arose because of Ridley's refusal to obey its obligations under the IDEA's "stay put" provision, 20 U.S.C. § 1415(j), *see Ridley IV*, 744 F.3d at 119. But E.R.'s interim forward-looking right under § 1415(j) to stay in private school was not at issue, and, in contrast to a contempt order that we must consider in relation to an underlying preliminary injunction, *cf. John T.*, 318 F.3d at 559-60, or forward-looking and temporary injunctive relief, *cf. John T.*, 318 F.3d at 558-59; *J.O.*, 287 F.3d at 273-74, E.R.'s parents' reimbursement award equated to backward-looking compensatory relief intended "to redress the concrete loss that the plaintiff[s] . . . suffered by reason of the defendant's wrongful conduct," *State Farm Mut. Auto.*

*Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).    The reimbursement award, in other words, had its own, independent merits and sought relief separate from any other relief that E.R.'s parents had sought from Ridley—characteristics that confer "prevailing party" status.

### C.    Other Circuits' Cases

The distinction we adopt today between forward-looking injunctive "stay put" relief and backward-looking compensatory "stay put" relief accords with the approaches taken by our Sister Circuits.  On the one hand, other Courts of Appeals addressing forward-looking injunctive orders have held that "stay put" injunctions and similar temporary orders relating to a child's educational placement cannot confer "prevailing party" status, as we did in *John T.* and *J.O.*[5]  On the other hand, Courts of Appeals addressing reimbursement awards in the broader context of the IDEA have held generally that retrospective and compensatory relief confers "prevailing party" status,[6] and

---

[5] *See Tina M. ex rel. S.M. v. St. Tammany Parish Sch. Bd.*, 816 F.3d 57, 58-62 (5th Cir. 2016); *Bd. of Educ. v. Nathan R. ex rel. Richard R.*, 199 F.3d 377, 382 (7th Cir. 2000); *Bd. of Educ. v. Steven L. ex rel. Andrew L.*, 89 F.3d 464, 466-67, 469 (7th Cir. 1996); *Christopher P. ex rel. Norma P. v. Marcus*, 915 F.2d 794, 797-98, 804-05 (2d Cir. 1990).

[6] *See T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 473, 479-80 (7th Cir. 2003); *G ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 301, 310 (4th Cir. 2003); *Fowler v. Unified Sch. Dist. No. 259*, 128 F.3d 1431, 1433, 1439-40 (10th Cir. 1997).

20

both appellate and district courts have ruled, specifically in the context of addressing backward-looking "stay put" relief (analogous to the reimbursement award here) or similar independent relief obtained under the IDEA, that such relief does confer "prevailing party" status, consistent with our conclusion today.[7]

\*　　　\*　　　\*

For the reasons discussed above, we hold that the IDEA's "stay put" provision, 20 U.S.C. § 1415(j), gives rise to two concomitant rights.  First, the provision establishes a physical right for a child with a disability to "stay put" in her

---

[7] *See Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9, 15-16 (1st Cir. 2003); *A.D. ex rel. L.D. v. Dep't of Educ.*, No. 12-0307, 2014 WL 692910, at \*1, \*3 (D. Haw. Feb. 20, 2014); *Dep't of Educ. v. C.B. ex rel. Donna B.*, No. 11-0576, 2013 WL 704934, at \*2-3, \*6-7 (D. Haw. Feb. 26, 2013); *Student X. v. N.Y.C. Dep't of Educ.*, No. 07-2316, 2008 WL 4890440, at \*27 (E.D.N.Y. Oct. 30, 2008); *K.R. ex rel. M.R. v. Bd. of Educ.*, 66 F. Supp. 2d 444, 450-51 (E.D.N.Y. 1999).  Citing to *Termine ex rel. Termine v. William S. Hart Union High School District*, Appellants point out that a Ninth Circuit panel held that a tuition reimbursement award "in a separate stay-put action" rendered the parents "prevailing parties."  Appellants' Br. 21 (citing *Termine*, 288 F. App'x 360, 362 (9th Cir. 2008)).  While we agree that the reasoning of the Ninth Circuit panel is persuasive, pursuant to Ninth Circuit Rule 36-3(a), we cannot ascribe precedential value to *Termine*, which is an unpublished and non-precedential opinion.  *See* 9th Cir. R. 36-3.

"then-current educational placement," which is a temporary right to forward-looking injunctive relief that does not determine the merits of any claim. *See Drinker*, 78 F.3d at 864. Second, if a school district refuses to provide or pay for the child's "then-current educational placement," the "stay put" provision establishes the parents' right to monetary reimbursement or, alternatively, the child's right to compensatory education, both of which are rights to backward-looking compensatory relief and require an independent merits determination. *See Ridley IV*, 744 F.3d at 119; *see also Lester H. ex rel. Octavia P. v. Gilhool*, 916 F.2d 865, 872-73 (3d Cir. 1990).

If the school district violates either right, then the parents can bring administrative or judicial action to enforce the violated right, and the parents' eligibility for a fee award, if they are successful, depends on the underlying right enforced. Where the action enforces the child's physical right to "stay put" and the parents obtain temporary forward-looking injunctive relief, there is no determination "on the merits" and the parents are not eligible for a fee award. *See John T.*, 318 F.3d at 558-59. But where the action enforces the parents' right to reimbursement or the child's right to compensatory education and the parents obtain backward-looking compensatory relief, the action requires an independent merits determination and the parents are eligible for a fee award.[8]

---

[8] In the course of oral argument, the issue was raised as to whether the "prevailing party" analysis is materially different for actions commenced at the administrative level and seeking backward-looking compensatory relief under the IDEA's "stay put" provision. For the avoidance of doubt, and

**Add. 022**

E.R.'s parents' reimbursement litigation falls into the latter category: When Ridley refused to pay for E.R.'s "stay put" placement, E.R.'s parents sued for backward-looking compensatory relief, and, when they won the relief they sought, they obtained a merits-based victory. *See Ridley IV*, 744 F.3d at 117-28. E.R.'s parents are therefore "prevailing part[ies]" under the IDEA and are eligible for an award of attorneys' fees, 20 U.S.C. § 1415(i)(3)(B)(i), to be set by the District Court.[9]

---

given that there is no exhaustion requirement for actions seeking relief under the IDEA's "stay put" provision, *see Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199-200 (2d Cir. 2002), we hold that parents who obtain backward-looking compensatory relief are prevailing parties under the IDEA, whether they first pursue such relief in an administrative agency or in a court.

[9] In their application for attorneys' fees and costs in the District Court, counsel for E.R.'s parents made a lengthy submission, including multiple declarations concerning the hours expended and the prevailing rates for attorneys of comparable experience. While we leave it to the District Court on remand to consider the amount of E.R.'s parents' fee award in the first instance, we note that the litigation here was conducted by highly qualified and experienced counsel and was itself extensive and protracted, with proceedings spanning from March 2011 to April 2016 and encompassing pleadings, motions, and briefing in the District Court; full briefing and argument in the Court of Appeals; and opposition to a petition for certiorari in the Supreme Court.

## IV.  Conclusion

For the foregoing reasons, we will reverse and remand for proceedings consistent with this opinion.

**Add. 024**