No. 16-2465

# In the United States Court of Appeals
# For the Third Circuit

---

M.R. AND J.R., PARENTS OF E.R., A MINOR

*APPELLANTS,*

v.

RIDLEY SCHOOL DISTRICT

*APPELLEE.*

---

On Appeal from the United States District Court
For the Eastern District of Pennsylvania,
Judge Mitchell S. Goldberg,
No. 2:11-cv-02235

---

**AMICUS CURIAE BRIEF OF
NATIONAL SCHOOL BOARDS ASSOCIATION IN SUPPORT OF
PETITION FOR REHEARING EN BANC**

---

FRANCISCO M. NEGRÓN, JR.
 GENERAL COUNSEL
NATIONAL SCHOOL BOARDS ASSOCIATION
1680 DUKE STREET, FL 2
ALEXANDRIA, VA  22314
TELEPHONE:703-838-6722
FACSIMILE: 703-683-7590

*Counsel for Amicus Curiae*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................ iii

CORPORATE DISCLOSURE STATEMENT .............................................. 1

STATEMENTS REQUIRED BY FRAP 29 .................................................. 1

SUMMARY OF THE ARGUMENT ............................................................ 1

I.    THE PANEL DECISION SEVERELY UNDERMINES THE LEGAL
      PRIMACY OF FAPE UNDER THE IDEA ........................................ 2

II.   THE THIRD CIRCUIT PANEL DECISION IMPOSES SUBSTAN-
      TIAL FINANCIAL BURDENS ON SCHOOL DISTRICTS THAT
      HAVE MET THEIR IDEA RESPONSIBILITIES AT THE
      EXPENSE OF THE EDUCATIONAL NEEDS OF ALL SCHOOL
      CHILDREN ....................................................................................... 6

      A. Requiring districts to pay attorneys' fees to parents who obtain a
         favorable interim ruling substantially increases the financial
         burden on school districts ............................................................... 7

      B. The threat of additional attorneys' fees imposed by the panel's
         decision incites school districts to base decisions about children
         with disabilities on financial considerations rather than
         educational needs ........................................................................... 9

CONCLUSION ......................................................................................... 11

CERTIFICATIONS ................................................................................... 12

# TABLE OF AUTHORITIES

## CASES:

*A.D. v. Hawaii Dept. of Educ.,*
727 F.3d 911 (9th Cir. 2013) ........................................................... 6

*Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,*
458 U.S. 176 (1982) ................................................................. 2, 10

*Board of Educ. of Oak Park v. Nathan R.,*
199 F.3d 377 (7th Cir. 2000) ........................................................... 5

*Dell v. Board of Educ.,*
32 F.3d 1053 (7th Cir. 1994) ........................................................... 2

*Drinker v. Colonial Sch. Dist.,*
78 F.3d 859 (3d Cir. 1996) ............................................................. 5

*Endrew F. v. Douglas County Sch. Dist. RE-1,*
137 S. Ct. 988 (2017) ............................................................. 2, 3, 9

*Fry v. Napoleon Comm. Sch.,*
137 S. Ct. 743 (2017) ............................................................. 1, 2, 3

*Honig v. Doe,*
484 U.S. 305 (1988) ............................................................. 3, 5, 9

*J.O. v. Orange Twp. Bd. of Educ.,*
287 F.3d 267 (3d Cir. 2002) ........................................................ 4, 6

*John T. v. Delaware Cty. Intermediate Unit,*
318 F.3d 545 (3d Cir. 2003) ........................................................ 4, 6

*J.P. v. County Sch. Bd. of Hanover Cty.,*
2007 WL 840090 (E.D. Va. Mar. 15, 2007) ................................... 8

*KA. D. v. Nest,*
Nos. 10-56320, 10-56373 (9th Cir., Aug. 1, 2014) ........................ 8

*K.D. v. Department of Educ.,*
665 F.3d 1110 (9th Cir. 2011) ...................................................5-6

*Laura P. v. Haverford Sch. Dist.,*
2009 WL 1651286 (E.D. Pa. June 12, 2009).................................. 8

*L.Y. v. Bayonne Bd. of Educ.,*
384 Fed. Appx. 58 (3d Cir. 2010).................................................. 5

*Maine Sch. Admin. Dist. No. 35 v. Mr. R.,*
321 F.3d 9 (1st Cir. 2003)............................................................. 5

*M.R. v. Ridley Sch. Dist. (MR II),*
744 F.3d 112 (3d Cir. 2014)............................................. 4, 5, 6, 8

*Tina M. v. St. Tammany Parish Sch. Bd.,*
816 F.3d 57 (5th Cir.), *cert. denied*, 137 S. Ct. 371 (2016).........4-5

## STATUTES:

Individuals with Disabilities Education Act,
20 U.S.C. § 1412(a)(1)(A) (2017) ................................................ 1
20 U.S.C. § 1412(a)(10)(C) (2017)............................................... 3
20 U.S.C. § 1415(e)(3) (2017)...................................................... 5
20 U.S.C. § 1415(f)(3)(E)(i) (2017) ............................................. 3
20 U.S.C. § 1415(j) (2017) ........................................................... 4

CAL. EDUC. CODE § 42127.1 (2017) ............................................. 9
ILL. STAT. Ch. 105 § 5/1B-11 (2017).............................................. 9
MT. STAT. § 20-9-323 (2017) ........................................................ 9
24 PA. STAT. § 6-687(b) (2017)...................................................... 9
RI STAT. § 16-2-21.4 (2017).......................................................... 9

## OTHER AUTHORITIES:

Jay G. Chambers, *What are we spending on procedural safeguards in special education, 1999-2000*, Spec. Educ. Expenditure Proj., at v. (2003), *available at,* http://csef.air.org/publications/seep/national/Procedural%20Safeguards.pdf............................................................................ 7

Letter from 35 education organizations to House and Senate Subcommittees on Education Appropriations, June 14, 2017, *available at* https://www.nsba.org/nsba-and-coalition-call-full-funding-individuals-disabilities-education-act-idea ........................................................................ 9

Perry A. Zirkel, *Adjudicative Remedies for Denials of FAPE Under the IDEA*, 33 J Nat'l Ass'n of Admin. L. Jud. Iss. 1 (2013), *available at* http://digitalcommons.pepperdine.edu/naalj/vol33/iss1/5 ............................. 5

S. Pudelski, Rethinking Special Education Due Process (AASA The Superintendents Organization, 2016), *available at* http://www.aasa.org/uploadedFiles/Policy_and_Advocacy/Public_Policy_Resources/Special_Education/AASARethinkingSpecialEdDueProcess.pdf .... 10

Statement of Senator Williams, 121 Cong. Rec. 37416, 94th Cong., 1st Sess. (Nov. 19, 1975) ............................................................................................ 3

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure (FRAP) and Third Circuit Local Rule 26.1.1., *Amicus* states that it is a non-for-profit organization. It does not have a parent corporation; nor does it issue stock; nor does there exist a publicly held corporation that owns 10% or more of the stock of *Amicus*.

## STATEMENTS REQUIRED BY FRAP 29

The identity and interests of *Amicus* National School Boards Association are fully set forth in the Motion for Leave to File required by FRAP 29(b) to accompany this proposed brief.

*Amicus* further states that no party's counsel authored the brief in whole or in part; no party nor a party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person—other than the *amicus curiae,* its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

## SUMMARY OF ARGUMENT

The Individuals with Disabilities Education Act (IDEA or Act) ensures that students with disabilities receive a free appropriate *public* education (FAPE). 20 U.S.C. § 1412(a)(1)(A) (2017). The FAPE requirement is the IDEA's "core guarantee." *Fry v. Napoleon Comm. Sch.*, 137 S. Ct. 743, 748 (2017). A FAPE includes special education and related services tailored to meet the child's unique

1

needs. *Id.* at 748-49 (citing *Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982)). FAPE is the substantive right IDEA provides, *Endrew F. v. Douglas County Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017) (cite omitted), and the only basis for substantive relief awarded through its due process procedures, as indicated by the Supreme Court just this year: "The only relief that an IDEA officer can give—hence the thing a plaintiff must seek in order to trigger § 1415(*l*)'s exhaustion rule—is relief for the denial of a FAPE." *Fry*, 137 S. Ct. at 753.

The panel's most recent decision to uphold an award of attorneys' fees to parents who obtain only interim stay-put relief severely undercuts the centrality of FAPE under the IDEA and significantly magnifies the burden on a school district despite its compliance with its IDEA obligations. *Amicus* urges this Court to review this decision that departs from established attorneys' fees jurisprudence under the IDEA and imposes undue financial liability on school districts that have met their responsibility to provide a FAPE to children with disabilities.

## I.    THE PANEL DECISION SEVERELY UNDERMINES THE LEGAL PRIMACY OF FAPE UNDER THE IDEA

The fundamental intent of the IDEA is to protect the access of students with disabilities to a FAPE, and to ensure their parents' participation in developing their IEPs. *See, e.g., Dell v. Board of Educ.,* 32 F.3d 1053, 1060 (7th Cir. 1994) (quoting

Senator Williams,[1] 121 Cong. Rec. 37416, 94th Cong., 1st Sess. (Nov. 19, 1975)). The primacy of the FAPE obligation under the IDEA was recently reaffirmed in the U.S. Supreme Court's decisions in *Endrew F. v. Douglas County Sch. Dist.*, 137 S. Ct. 988, 993 (2017) (describing FAPE as a "substantive right" guaranteed by the Act); *Fry*, 137 S. Ct. at 753 (noting "any decision by a hearing officer on a request for substantive relief 'shall' be 'based on a determination of whether the child received a free appropriate public education.' § 1415(f)(3)(E)(i); . . .Or said in Latin: In the IDEA's administrative process, a FAPE denial is the *sine qua non*.")

The cornerstone of the statutory structure for providing FAPE is the development of individualized education programs (IEPs) for students with disabilities to prepare them for future work, education, and living. "The IEP is 'the centerpiece of the statute's education delivery system for disabled children.'" *Endrew F.,* 137 S. Ct. at 994 (citing *Honig v. Doe*, 484 U. S. 305, 311 (1988)). IEPs lay out the special education and related services to be provided to the students, as well as the setting, or "placement." If the IEP provides FAPE, then the school district generally is not obligated to pay the cost of special education in a private setting elected solely by the parents. 20 U.S.C. § 1412(a)(10)(C) (2017).

---

[1] Senator Williams was the principal author of the original law now known as the IDEA.

The IDEA sets forth a collaborative process between parents and schools to develop the IEP, but if a dispute emerges and leads to legal proceedings, the IDEA provides the additional safeguard of stay-put. With some limited exceptions, stay-put requires a student to remain in his or her then-current educational placement pending completion of the proceedings to resolve the underlying FAPE dispute. 20 U.S.C. § 1415(j) (2017). Under Third Circuit precedent, "proceedings" extends to all levels of appeal. *M.R. v. Ridley Sch. Dist.* (*MR II*), 744 F.3d 112 (3d Cir. 2014). That means a school district's obligation to pay the cost of the stay-put placement continues until the completion of all appeals, extending liability beyond a district court determination that the school district has satisfied the FAPE requirement.

The panel decision, in a departure from established attorneys' fees jurisprudence under the IDEA, ignores the legal significance of FAPE by awarding attorneys' fees to parents for obtaining reimbursement for a *pendente lite* placement during proceedings that ultimately rejected their FAPE claim. In so ruling, the panel discounted this Court's precedential decisions in *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267 (3d Cir. 2002), and *John T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545 (3d Cir. 2003), both of which recognized that stay-put relief, in contrast to a finding that the school district has denied FAPE, does not make the parents prevailing parties on the merits such that an award of attorneys' fees is warranted. Other circuits have similarly ruled. *E.g., Tina M. v. St. Tammany Parish Sch. Bd.*,

4

816 F.3d 57 (5th Cir.), *cert. denied*, 137 S. Ct. 371 (2016); *Maine Sch. Admin. Dist. No. 35 v. Mr. R*., 321 F.3d 9 (1st Cir. 2003); *Board of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377 (7th Cir. 2000).

The stay-put provision is triggered automatically to protect children with disabilities whose parents request a due process hearing. *Drinker v. Colonial Sch. Dist*., 78 F.3d 859 (3d Cir. 1996). It functions as a temporary preservation of educational continuity until the resolution of the parents' merits claim—usually an alleged denial of FAPE[2]—in administrative or court proceedings. *Honig v. Doe*, 484 U.S. 305, 311-312 (1988). The stay-put provision maintains the educational status quo (the then-current placement, whether public or private) to minimize disruption to the child's academic experience and progress. *E.g.*, *L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, 384 Fed. Appx. 58, 62 (3d. Cir. 2010). By law, it is the last placement agreed upon by the parties unless they mutually decide on another setting. 20 U.S.C. § 1415(e)(3) (2017).  In cases, such as this one, where the parents have withdrawn their child and unilaterally placed him or her in a private school, that placement may become the stay-put placement only by virtue of a decision by a hearing officer or court that the school district denied FAPE. *E.g.*, *MR II*, 744 F.3d 112; *K.D. ex rel.*

---

[2] *See* Perry A. Zirkel, *Adjudicative Remedies for Denials of FAPE Under the IDEA*, 33 J NAT'L ASS'N OF ADMIN. L. JUD. Iss. 1 (2013), available at http://digitalcommons.pepperdine.edu/naalj/vol33/iss1/5.

*C.L. v. Department of Educ.,* 665 F.3d 1110, 1118 (9th Cir. 2011). Where, as here, the final appeals tribunal overturns such an initial determination and finds that the district's IEP provides FAPE, the school's obligation to fund the private placement ceases, *e.g.*, *MR II*, 744 F.3d 112; *A.D. ex rel. L.D. v. Hawaii Dept. of Educ.*, 727 F.3d 911, 914 (9th Cir. 2013), highlighting the transitory or interim nature of stay-put relief under the Act, and the essential role that FAPE plays in the statutory scheme.

The panel's subversion of the FAPE requirement's primacy undermines its assertion that its decision is partly premised on promoting the goals of the IDEA. It has, instead, expanded school district financial burdens far beyond what the Act envisions by discounting the importance of a district's FAPE obligation.

## II.    THE THIRD CIRCUIT PANEL DECISION IMPOSES SUBSTANTIAL FINANCIAL BURDENS ON SCHOOL DISTRICTS THAT HAVE MET THEIR IDEA RESPONSIBILITIES AT THE EXPENSE OF THE EDUCATIONAL NEEDS OF ALL SCHOOL CHILDREN.

*Amicus* urges this Court to grant review in light of the dramatic financial impact of the panel's departure from the attorneys' fees principles set forth in *J.O*, 287 F.3d 267 and *John T*., 318 F.3d 545, that restrict awards to parties that prevail on the merits and not on interim issues. Those principles more reasonably limit the financial responsibility of school districts to pay attorneys' fees to instances where they have denied FAPE. Under the panel decision, school districts could potentially be forced

6

to use taxpayer dollars to pay the parents' attorneys' fees incurred during protracted proceedings despite the districts' compliance with FAPE requirements. These additional expenditures are particularly troubling because school districts must redirect resources intended to secure the benefits of the IDEA to all children with disabilities served by the district in order to pay attorneys' fees in one case.

### A. Requiring districts to pay attorneys' fees to parents who obtain a favorable interim ruling substantially increases the financial burden on school districts.

Prior to the panel's decision, a public school district could be required to underwrite the costs of private school tuition for years of litigation, to shoulder its own significant legal costs, and to reimburse the legal fees of parents who prevailed on their FAPE claims. Even under that scheme, school districts expend millions of dollars a year on special education legal costs. From 1999 to 2000, schools spent approximately $146.5 million on special education mediation, due process, and litigation costs under the IDEA.[3] It is reasonable to assume that the costs of IDEA litigation are substantially higher today.[4] Individual attorneys' fee awards under the IDEA frequently soar into tens, if not hundreds, of thousands of dollars. *See, e.g.,*

---

[3] Jay G. Chambers, *What are we spending on procedural safeguards in special education*, *1999-2000,* Spec. Educ. Expenditure Proj., at v (2003), *available at* http://csef.air.org/publications/seep/national/Procedural%20Safeguards.pdf.

[4] These expenditures are the most recent reported figures *amicus* discovered through on line research.

*KA. D. v. Nest*, Nos. 10-56320, 10-56373 (9th Cir., Aug. 1, 2014) (school district ordered to pay parents' attorneys' fees of $580,000); *Laura P. v. Haverford Sch. Dist.*, 2009 WL 1651286 (E.D. Pa. June 12, 2009) (same--$94,777); *J.P. v. County Sch. Bd. of Hanover Cty.*, 2007 WL 840090 (E.D. Va. Mar. 15, 2007) (same--$182,971).

The panel's new rule expanding the circumstances under which schools must expend such onerous amounts on litigation rather than educating children punishes school districts despite their compliance with their FAPE responsibilities.  To be clear, while this Court in *M.R. v. Ridley School Dist.* (*MR II*), 744 F.3d 112 (3d Cir. 2014), held that requiring school districts to bear the cost of a private placement during a stay-put period can be justified as minimizing disruption to a student's educational program regardless of the final determination of whether a district provided FAPE, the same is not true about attorneys' fees awards based on securing this interim relief.  In fact, the equities weigh strongly against granting fee awards for interim relief; restricting fee awards to those parents who prevail on their FAPE claims supports the primary goal of the Act and limits the diversion of already-scarce public funds away from educational services for all children into legal proceedings.

Strained local budgets and continuing federal shortfalls in special education funding[5] already make it difficult for school districts to meet their IDEA obligations, much less pay for both sides' legal costs.  Because Congress has not met its initial promise to fund a significant portion of the cost of special education, states and local school boards have largely had to carry the load. Attorneys' fees awards that amplify this burden are especially difficult to manage within the restrictions of school districts' yearly budget cycles and state laws requiring school boards to adopt balanced budgets. *E.g.*, CAL. EDUC. CODE § 42127.1 (2017); ILL. STAT. Ch. 105 § 5/1B-11 (2017); MT. STAT. § 20-9-323 (2017); 24 PA. STAT. § 6-687(b) (2017); RI STAT. § 16-2-21.4 (2017).

### B. The threat of additional attorneys' fees imposed by the panel's decision incites school districts to base decisions about children with disabilities on financial considerations rather than educational needs.

The panel's decision derails the IEP process. The IEP is the "centerpiece of the statute's education delivery system for disabled children," *Honig v. Doe*, 484 U. S. 305, 311 (1988), and "the means by which special education and related services are 'tailored to the unique needs' of a particular child." *Endrew F.*, 137 S. Ct. at 999

---

[5] Letter from 35 education organizations to House and Senate Subcommittees on Education Appropriations, June 14, 2017, available at https://www.nsba.org/nsba-and-coalition-call-full-funding-individuals-disabilities-education-act-idea    (noting 2017 federal appropriations for IDEA funding amounted to only 15% of the total cost of providing special education services despite Congress' original promise to provide 40%).

(citing *Rowley*, 458 U.S. at 181). The parties may easily lose sight of this purpose when attorneys' fees are available without the need for parents to show a denial of FAPE.  The cost of legal proceedings rather than educational considerations often color a school district's decisions regarding parental demands even under the majority view that restricts fee shifting to situations where parents prevail on their underlying claim. In its 2016 report, AASA found that

> [m]ore than ever before, districts are weighing the cost of complying with parents' requests for services, programs and placements against the cost of engaging in a due process hearing, even when districts believe these requests are frivolous, unreasonable or inappropriate for the student.[6]

 By broadening the circumstances under which a district may be ordered to reimburse parents for attorneys' fees, the panel's expansive decision intensifies the pressure on districts to engage in this unfortunate calculation.  Where parents are guided by an attorney whose fees may be shifted without a requirement that they prevail on the merits, their decisions to pursue costly litigation may also be influenced by factors other than their child's educational needs.  When legal costs become such a potent force affecting parent-school discussions, the purpose and

---

[6] S. Pudelski, RETHINKING SPECIAL EDUCATION DUE PROCESS (AASA The Superintendents Organization, 2016), at 11 available at http://www.aasa.org/ uploadedFiles/Policy_and_Advocacy/Public_Policy_Resources/Special_Education /AASARethinkingSpecialEdDueProcess.pdf

effectiveness of the IEP process is drastically diminished to the detriment of the child.

## CONCLUSION

For the reasons set forth above, *amicus* urges the Court to grant rehearing en banc.

Respectfully submitted this 12th day of September 2017,

/**S**/ Francisco M. Negrón, Jr.
Francisco M. Negrón, Jr.
National School Boards Association
1680 Duke Street, FL 2
Alexandria, VA 22314
Phone:  (703) 838-6722
Email:  fnegron@nsba.org

# CERTIFICATIONS

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am a member of the Bar of the United States Court of Appeals

for the Third Circuit.

## CERTIFICATE OF SERVICE

I certify that this day I served two copies of the foregoing Amicus Curiae

Brief in support of the Petition for Rehearing En Banc via First Class Mail and via

this Court's ECF system to the persons below:

Alan L. Yatvin                          Pratik A. Shah
Popper & Yatvin                         Akin Gump Strauss Hauer & Feld LLP
230 S. Broad Street, Suite 503          1333 New Hampshire Avenue, NW
Philadelphia, PA 19102                  Washington, D.C. 20036-1564


John F.X. Reilly
Ridley School District
230 N. Monroe Street
Media, PA 19063-2905

## CERTIFICATION OF COMPLIANCE

I certify that:  (i) this brief complies with the type-volume limitation of Federal

Rule of Appellate Procedure 35(b)(2)(A) because it contains 2454 words, excluding

the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

(ii) this brief complies with the typeface requirements of Federal Rule of Appellate

Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate

Procedure 32(a)(6) because this brief has been prepared using Microsoft Word in 14-point Times New Roman.

## CERTIFICATION OF IDENTICAL PAPER COPIES

I hereby certify that the text of the PDF file and hard copies of the brief are identical.

## CERTIFICATION OF VIRUS CHECK

I hereby certify that a virus check was performed on the PDF of this brief using Symantec Cloud.Endpoint Protection NIS 22.9.3.13 and that no virus was indicated.

Dated: September 12, 2017              /s/Francisco M. Negrón, Jr.
                                       Francisco M. Negrón, Jr.